# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| E.T., by and through her parents and next friends; D.D., by and through her parents and next friends; E.R., by and through her parents and next friends; J.R., by and through her parents and next friends; H.M., by and through her parents and next friends; N.C., by and through her parents and next friends; J.G., by and through her parents and next friends; E.S., by and through her parents and next friends; M.P., by and through her parents and next friends; S.P., by and through her parents and next friends; R.S., by and through her parents and next friends; J.V., by and through her parents and next friends; H.P., by and through her parents and next friends; and A.M., by and through her parents and next friends. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No.    1:21-cv-717 |

      Plaintiffs,

      v.

GOVERNOR GREG ABBOTT, in his official capacity as GOVERNOR OF TEXAS; MIKE MORATH, in his official capacity as the COMMISSIONER of the TEXAS EDUCATION AGENCY; and the TEXAS EDUCATION AGENCY,

      Defendants.

## COMPLAINT

     Plaintiffs, by and through their parents and next friends, bring this action for declaratory and injunctive relief, and allege as follows:

## INTRODUCTION

1.     As COVID-19 infection rates rise in Texas, so do the lawsuits filed against Defendant Governor Texas Greg Abbott over his July 29, 2021 Executive Order GA-38[1] prohibiting governmental entities from imposing a mask requirement. Those lawsuits—asserted by various school districts, municipalities, and counties—wrestle with the statutory division of state and local authority under the Texas Disaster Act of 1975 to respond to the COVID-19 health crisis.

2.     The instant lawsuit, in contrast, challenges the Executive Order on entirely different grounds by asserting violations of federal antidiscrimination law under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504"), which prohibit the exclusion of students with disabilities from public educational programs and activities. Plaintiffs are students with disabilities and underlying medical conditions which carry an increased risk of serious complications or death in the event that they contract COVID-19.  These conditions include Down syndrome, moderate to severe asthma, chronic lung and heart conditions, cerebral palsy, and weakened immune systems and have been identified by the Centers for Disease Control ("CDC") as risk factors for severe COVID-19 infection.  Plaintiffs further are under the age of 12 years old, rendering them ineligible to receive the vaccine under current Food and Drug Administration ("FDA") regulations. Under Executive Order GA-38 and Public Health Guidance issued by the Texas Education Agency ("TEA"),[2] school districts are prohibited from considering, on a district-by-district basis, whether to implement basic COVID-19 prevention strategies and thus have been unable to fulfill their obligations under the ADA and Section 504 to these students.

---

[1]     Governor Abbott's Executive Order is attached as Exhibit A.
[2]     The Public Health Guidance issued by the TEA is attached as Exhibit B.

3.     Governor Abbott's Executive Order is further preempted by federal law that specifically authorizes school districts to implement safety measures as classes begin for the 2021-2022 school year. The American Rescue Plan Act of 2021 ("ARP Act") has allocated billions of dollars in emergency relief funding to school districts and explicitly authorizes using these funds for "developing strategies and implementing public health protocols including, to the greatest extent practicable, policies in line with guidance from the Centers for Disease Control and Prevention." Pub. L. No. 117-2, 135 Stat. 4 § 2001(e)(2)(Q).   As the Department of Education's Interim Final Requirement makes clear, this specifically includes the CDC's recommendation for universal indoor masking in K-12 schools.  86 Fed. Reg. 21195-01, 21200 (Apr. 22, 2021) (to be codified at 34 C.F.R. ch. II).  Thus, Governor Abbott's Executive Order is in irreconcilable conflict with federal law because it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress as set forth in the ARP Act and the Department of Education's Requirement.

4.     In response to rising infections caused by the hyper-contagious Delta variant, the CDC updated its "Guidance for COVID-19 Prevention in K-12 Schools" to recommend "universal indoor masking for all students, staff, teachers, and visitors to K-12 schools, regardless of vaccination status," noting that "protection against exposure remains essential in school settings." The Texas Medical Association, Texas Pediatric Society, and Texas Public Health Coalition have also called for universal masking in schools.

5.     Governor Abbott has indicated that he too recognizes the benefits of mask-wearing. Executive Order GA-38 exempts government-owned hospitals and correctional facilities from its reach by permitting these entities to "continue to use appropriate policies regarding the wearing of face coverings." And, in a previous Executive Order GA-29 issued in July 2020, Governor Abbott

required Texans to wear masks inside commercial buildings or public spaces in counties that exceeded certain thresholds of positive cases.[3]

6.     Most Texas public schools begin in-person classes over the next two weeks, with many districts starting sometime between Monday, August 16 and Monday, August 23.[4] Some districts such as San Antonio Independent School District ("SAISD") have already commenced classes.[5] But the excitement of the school year beginning—especially after a long, challenging period of virtual learning—has been clouded by national reports of increasing pediatric infections and hospitalizations, with child infections increasing from 12,000 cases nationwide in the first week of July, up to 96,000 in the first week of August, with the latest figure representing about

---

[3] Indeed, Governor Abbott emphasized at that time that wearing masks "is the best strategy you can use to make sure that you and others do not contract COVID-19," citing a Texas A&M study on face masks. SBG San Antonio, *Gov. Abbott: 'Masks are our best option' against COVID-19 spike*, June 24, 2020, https://news4sanantonio.com/news/local/gov-abbott-masks-are-our-best-option-against-COVID-19-spike; *see also* Keith Randall, Texas A&M Study: Face Masks Critical In Preventing Spread Of COVID-19, Texas A&M Today, June 12, 2020 ("A study by a team of researchers led by a Texas A&M University professor has found that not wearing a face mask dramatically increases a person's chances of being infected by the COVID-19 virus."). https://today.tamu.edu/2020/06/12/texas-am-study-face-masks-critical-in-preventing-spread-of-COVID-19/.

[4] E.g., Dallas ISD and Fort Worth ISD began classes on August 16, 2021 (https://thehub.dallasisd.org/2021/04/20/see-the-dallas-isd-2021-2022-school-year-calendars/) (https://www.fwisd.org/calendar#calendar1/20210814/month); Austin ISD begins on August 17, 2021 (https://www.austinisd.org/calendar). Houston ISD and Waco ISD begin on August 23, 2021 (https://www.houstonisd.org/2021AcademicCalendar); (https://www.wacoisd.org/Page/2#calendar1/20210814/month).

[5] E.g., San Antonio began classes on August 9, 2021 (https://www.saisd.net/upload/page/0456/docs/SAISD_2021-22_InstructionalCalendar.pdf); Fort Bend ISD began classes on August 11, 2021 (https://www.fortbendisd.com/calendar#calendar1/20210811/day).

15% of all new infections, according to the American Academy of Pediatrics.[6] As noted by one publication, "child hospitalizations have now reached an all-time pandemic high."[7]

7.      In spite of national and local guidance urging precaution, Governor Abbott's Executive Order prohibits local school districts from even considering whether to implement the most basic and effective COVID-19 prevention strategy in school settings. Following the Governor's order, the TEA which has legal authority to publish requirements for public schools, announced in its "Public Health Guidance" that, "[p]er GA-38, school systems cannot require students or staff to wear a mask."  Therefore, the Executive Order has the perverse effect of prohibiting local school district leaders from addressing this pandemic as they deem appropriate for their respective school districts.

8.      If school districts are unable to implement COVID-19 protocol as they each deem appropriate, parents of medically vulnerable students will have to decide whether to keep their children at home or risk placing them in an environment that presents a serious risk to their health and safety. In this regard, the Governor's Executive Order and TEA's Public Health Guidance unlawfully prevent school districts from complying with the ADA and Section 504's requirement to provide students with disabilities access to a public school education.  They also conflict with and are preempted by the ARP Act because they frustrate the intention of Congress that local school districts be able to use emergency relief funding to develop public health policies, including universal masking, that are consistent to the greatest extent practicable with CDC guidance.

---

[6] https://services.aap.org/en/pages/2019-novel-coronavirus-COVID-19-infections/children-and-COVID-19-state-level-data-report/

[7] Katherine J. Wu, *Delta Is Bad News for Kids*, The Atlantic, Aug. 10, 2021, https://www.theatlantic.com/health/archive/2021/08/delta-variant-COVID-children/619712/.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and 28 U.S.C. §§ 2201–2022.

10.     Venue is proper in the United States District Court for the Western District of Texas, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred and continue to occur in this district.

## PARTIES

### A.      Plaintiffs

11.     E.T.'s parents and next friends, A.T. and A.T., bring this action on her behalf.  E.T. is an eleven-year-old girl with Down syndrome, moderate to severe asthma, hypogammaglobulinemia, a CD19 deficiency, a severe B-cell lymphocyte deficiency, and a compromised immune system.  E.T. resides with her parents in Williamson County.  E.T. has been identified by her school as a student with a disability.

12.     Plaintiff A.M.'s parents and next friends, C.M. and B.M., bring this action on his behalf.  A.M. is an eight-year-old boy with cerebral palsy.  A.M. resides with his parents in Bexar County.  A.M. has been identified by his school as a student with a disability.

13.     E.S.'s parent and next friend, M.M., brings this action on her behalf.  E.S. is a seven-year-old girl with moderate to severe asthma.  E.S. resides with her parent in Bell County.

14.     J.R.'s parents and next friends, J.R. and J.R., bring this action on her behalf.  J.R. is an eight-year-old girl with moderate to severe asthma.  J.R. resides with her parents in Bexar County.  J.R. has been identified by her school as a student with a disability.

15.     D.D.'s parent and next friend, J.A., brings this action on his behalf.  D.D. is a nine-year-old, nonverbal, medically fragile boy with a developmental delay, an intellectual disability,

attention deficit hyperactivity disorder, and a visual impairment.  D.D. resides with his parent in Medina County.  D.D. has been identified by his school as a student with a disability.

16.     E.R.'s parents and next friends, A.R. and G.R. bring this action on his behalf.  E.R. is a seven-year-old boy with a chronic lung condition and moderate to severe asthma.  E.R. resides with his parents in Hays County.  E.R. has been identified by his school as a student with a disability.

17.     H.M.'s parents and next friends, R.M. and S.M., bring this action on his behalf. H.M. is an eight-year-old boy with Down syndrome, a heart defect, and a history of bronchomalacia.  H.M. resides with his parents in Travis County.  H.M. has been identified by his school as a student with a disability.

18.     N.C.'s parents and next friends, D.C. and S.C., bring this action on her behalf.  N.C. is an eight-year-old girl with Sanfilippo syndrome.  N.C. resides with her parents in Galveston County.  N.C. has been identified by her school as a student with a disability.

19.     J.G.'s parents and next friends, R.G. and C.G., bring this action on her behalf.  J.G. is a seven-year-old girl who has received a heart transplant and has a weakened immune system. J.G. resides with her parents in Fort Bend County.  J.G. has been identified by her school as a student with a disability.

20.     M.P.'s parents and next friends, K.P. and J.P., bring this action on her behalf.  M.P. is an eleven-year-old girl with Down syndrome.  M.P. resides with her parents in Fort Bend County.  M.P. has been identified by her school as a student with a disability.

21.     H.P.'s parents and next friends, K.P. and D.P., bring this action on her behalf.  H.P. is an eleven-year-old girl with epilepsy, autism, and a SCN2A genetic-related disorder.  H.P.

resides with her parents in Fort Bend County.  H.P. has been identified by her school as a student with a disability.

22.     S.P.'s parents and next friends, S.P. and M.P., bring this action on his behalf.  S.P. is a eight-year-old boy with bronchiectasis, spina bifida, attention deficit hyperactivity disorder, and epilepsy.  S.P. resides with his parents in Dallas County.  S.P. has been identified by his school as a student with a disability.

23.     R.S.'s parent and next friend, A.S., brings this action on her behalf.  R.S. is an eleven-year-old girl with Down syndrome.  R.S. resides with her parent in Tarrant County.  R.S. has been identified by her school as a student with a disability.

24.     J.P.V.'s parent and next friend, Y.V., brings this action on his behalf.  J.P.V. is an eleven-year-old boy with muscular disorders and moderate to severe asthma.  J.P.V. resides with his parent in Hidalgo County.  J.P.V. has been identified by his school as a student with a disability.

**B.     Defendants**

25.     Defendant Greg Abbott is the Governor of the state of Texas and is the head of the Office of the Governor.  Defendant Abbott enacted the executive order at issue in this action. Defendant Abbott is sued in his official capacity as the Governor of the State of Texas and as head of the Office of the Governor, and he may be served at 1100 San Jacinto Blvd., Austin, Texas 78701.  The state of Texas and the Office of the Governor are public entities within the meaning of the Americans with Disabilities Act, 28 C.F.R. § 35.104, and recipients of federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. § 794(a).

26.     Defendant Mike Morath is the Commissioner of the TEA, and as such is responsible for the acts and omissions of the TEA.  Defendant Morath is sued in his official capacity, and he may be served at 1701 North Congress Ave., Austin, Texas 78701.  The TEA is a public entity

within the meaning of the Americans with Disabilities Act, 28 C.F.R. § 35.104, and a recipient of federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. § 794(a).

27.     Defendant Texas Education Agency is an agency of the state of Texas and is responsible for issuing requirements for the operation of public school systems in Texas during the COVID-19 pandemic.  TEA will be served through its Commissioner, Mike Morath, at 1701 North Congress Avenue, Austin, Texas 78701.  TEA is a public entity within the meaning of the Americans with Disabilities Act, 28 C.F.R. § 35.104, and a recipient of federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. § 794(a).

## FACTS

28.     Governor Abbott's Executive Order GA-38 and TEA's Public Health Guidance prohibit local school districts and public health authorities from assessing the risks that students and children in their communities currently face from COVID-19.  By preventing local entities from adopting mask requirements for their students and staff in line with current CDC guidance, Governor Abbott's and TEA's actions will prevent and have prevented Plaintiffs and other students with disabilities from safely returning to school for in-person instruction without serious risk to their health and safety, in violation of the ADA and Section 504 and in irreconcilable conflict with the purposes and objectives of Congress as set forth in the American Rescue Plan Act of 2021.  As a result, Governor Abbott and TEA have erected an unlawful barrier, which will impact many students with disabilities and prevent local school districts and communities from providing a safe learning environment for their most vulnerable students.

A.      **The Current State of the COVID-19 Pandemic**

29.      The history of the COVID-19 pandemic is well-known,[8] and an extensive body of evidence shows that COVID-19 is a highly communicable respiratory virus that spreads through close contact.[9]

30.      Since the inception of the pandemic, more than three million positive cases of COVID-19 in Texas have been logged, and more than 50,000 Texans have died. COVID-19 hospitalizations peaked in Texas in January 2021 when almost 15,000 Texans were lying in hospital beds due to COVID-19 complications. The number of deaths, hospitalizations, and infections began declining in early 2021 once vaccines became available in Texas. And by June 2021, the number of COVID-19 hospitalizations had decreased to fewer than 1,500 Texans.

---

[8] The World Health Organization officially adopted the name COVID-19 for the novel coronavirus that causes Coronavirus Disease 2019 on February 11, 2020, WHO Twitter Post (Feb. 11, 2020), https://twitter.com/WHO/status/1227248333871173632?s=20.

[9] CDC, Scientific Brief: SARS-CoV-2 Transmission, May 7, 2021, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/sars-cov-2-transmission.html ("The principal mode by which people are infected with [COVID-19] is through exposure to respiratory fluids carrying infectious virus. Exposure occurs in three principal ways: (1) inhalation of very fine respiratory droplets and aerosol particles, (2) deposition of respiratory droplets and particles on exposed mucous membranes in the mouth, nose, or eye by direct splashes and sprays, and (3) touching mucous membranes with hands that have been soiled either directly by virus-containing respiratory fluids or indirectly by touching surfaces with virus on them.").

31.     The medical landscape drastically changed last month with the arrival of the highly contagious and virulent Delta variant of COVID-19.[10]   The number of newly reported cases, hospitalizations, and deaths due to COVID-19 have all increased sharply.[11]

32.     The state's medical system is at an unprecedented and unfortunate tipping point. Multiple municipalities, including the Cities of San Antonio and Houston, have experienced extended intervals with no available EMS units to respond to emergency calls or prolonged wait times.[12]   The surging hospitalization rate has created an ICU bed shortage throughout the state of Texas with some cities having zero available beds and patients in critical condition having to wait hours for beds.[13]   Notably, a lack of pediatric ICU beds has forced young patients to be transported across the state or to out-of-state hospitals to receive medical care.[14]

---

[10] CDC, Delta Variant: What We Know About the Science, Aug. 6, 2021, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (noting that the Delta variant is "more than 2x as contagious as previous variants" and studies indicated that "patients infected with the Delta variant were more likely to be hospitalized").

[11] NY Times, Tracking Coronavirus in Texas: Latest Map and Case Count (Aug. 13, 2021), https://www.nytimes.com/interactive/2021/us/texas-COVID-cases.html (showing increases of 72% of positive cases, 94% of hospitalizations, and 128% in deaths due to COVID-19 over the 14-day period prior to August 13, 2021).

[12] Kathleen Creedon, "For 26 Minutes Thursday, No EMS Units Were Available in San Antonio," Texas Public Radio, August 13, 2021, https://www.tpr.org/san-antonio/2021-08-13/for-26-minutes-thursday-no-ems-units-were-available-in-san-antonio; Travis Caldwell, "'I am frightened by what is coming': The struggle to keep Texas hospitals staffed as COVID-19 surges," CNN, August 12, 2021, https://www.wvtm13.com/article/i-am-frightened-by-what-is-coming-the-struggle-to-keep-texas-hospitals-staffed-as-COVID-19-surges/37291263#; Juan A. Lozano, "COVID cases pushing Houston hospitals to near breaking point," Associated Press, August 6, 2021, https://apnews.com/article/business-health-coronavirus-pandemic-houston-93ba953777111d602dced45dc1d7725b.

[13] "Dozens of Texas hospitals are out of ICU beds as COVID-19 cases again overwhelm the state's capacity," Reese Oxner, Aug. 10, 2021, Texas Tribune, https://www.texastribune.org/2021/08/10/coronavirus-texas-hospitals-icu-beds/.

[14] *Id.*  For example, as of August 10, 2021, only two pediatric beds were available for all of North Texas. Dallas Morning News, Aug. 10, 2021, https://www.dallasnews.com/news/public-

33.     This data is particularly troubling for students and school districts because the Delta variant and the ongoing exponential growth in cases are threatening the fast-approaching school year.  Texas schoolchildren under the age of 12 cannot currently receive COVID-19 vaccinations, and 99.5% of the COVID-19 deaths since February 2021 have been people who were unvaccinated.  At the same time, currently less than 50% of the Texas population is fully vaccinated against the virus.

34.     Data also shows children are infected with the Delta variant at much higher rates than previous virus strains, especially those who are unvaccinated (including those 5 to 12 years old who are not yet eligible to receive a vaccine).[15]  According to the American Academy of Pediatrics, "the Delta variant has created a new and pressing risk to children and adolescents across this country."[16]  Pediatric cases of COVID-19 have been "skyrocketing alongside cases among unimmunized adults."[17]  For the week ending July 29, 2021, "nearly 72,000 new coronavirus cases were reported in kids—almost a fifth of all total known infections in the U.S., and a rough doubling of the previous week's stats."[18] The next week the number of new coronavirus cases in children

---

health/2021/08/10/in-north-texas-intensive-care-bed-space-is-running-out-only-2-pediatric-icu-spots-remain-in-region/ ("In North Texas, intensive care bed space is running out[.]")

[15] Yale Medicine, Five Things to Know About the Delta Variant, updated Aug. 9, 2021, *available at* https://www.yalemedicine.org/news/5-things-to-know-delta-variant-COVID (noting that a recent study "showed that children and adults under 50 were 2.5 times more likely to become infected with Delta").

[16] AAP President's Letter to Acting Commissioner of the FDA, August 5, 2021, https://downloads.aap.org/DOFA/AAP%20Letter%20to%20FDA%20on%20Timeline%20for%20Authorization%20of%20COVID-19%20Vaccine%20for%20Children_08_05_21.pdf.

[17] Katherine J. Wu, Delta Is Bad News for Kids, The Atlantic, Aug. 10, 2021, https://www.theatlantic.com/health/archive/2021/08/delta-variant-COVID-children/619712/.

[18] *Id.*

jumped to almost 94,000.[19]   As the American Academy of Pediatrics explained: "The higher proportion of cases in this population means this age group could be contributing in driving continued spread of COVID-19.  Sadly, over 350 children have died of COVID since the start of pandemic and millions of children have been negatively impacted by missed schooling, social isolation, and in too many cases, the death of parents, family members, and other caregivers."[20]

**B.      COVID-19 Poses an Extreme Risk to a Large Number of Young Students with Disabilities**

35.      School-aged children with certain disabilities, including a range of underlying medical conditions, face a higher rate of severe illness from COVID-19 as compared to other children without those underlying medical conditions. According to the CDC, "children with medical complexity, with genetic, neurologic, metabolic conditions, or with congenital heart disease can be at increased risk for severe illness from COVID-19."[21]   And as with adults who face increased risks, "children with obesity, diabetes, asthma or chronic lung disease, sickle cell disease, or immunosuppression can also be at increased risk for severe illness from COVID-19."[22] Texas school districts regularly serve students with these exact disabilities—moderate to severe

---

[19] *Id.*

[20] AAP President's Letter to Acting Commissioner of the FDA, August 5, 2021, https://downloads.aap.org/DOFA/AAP%20Letter%20to%20FDA%20on%20Timeline%20for%20Authorization%20of%20COVID-19%20Vaccine%20for%20Children_08_05_21.pdf ("[T]he Delta variant has created a new and pressing risk to children and adolescents across this country.").

[21] Centers for Disease Control, *COVID-19: People with Certain Medical Conditions*, May 13, 2021, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[22] *Id.*

asthma, chronic lung and heart conditions, cerebral palsy, Down syndrome, obesity, and weakened immune systems are common.  Asthma alone impacts ten percent of school-age children.[23]

C.      **COVID-19 Prevention in K-12 Schools**

36.      The COVID-19 pandemic has dramatically affected students with disabilities, beginning with the closure of the public school system in the spring of 2020.  While school districts across Texas have been on the front lines this pandemic, many students lost critical instruction and services, which has persisted into the 2020-21 school year.

37.      The American Academy of Pediatrics has explained that "remote learning highlighted inequities in education, was detrimental to the educational attainment of students of all ages, and exacerbated the mental health crisis among children and adolescents."[24]

38.      The detrimental impact on education from the COVID-19 pandemic has been especially alarming for students with disabilities.[25]  As detailed by the Department of Education, COVID-19 has significantly disrupted the education and related aids and services needed to

---

[23] *Percentage of ever having asthma for children under age 18 years, United States, 2019*, Nat'l Ctr. for Health Stat., Aug. 14, 2021, https://wwwn.cdc.gov/NHISDataQueryTool/SHS_child/index.html.

[24] AAP, COVID-19 Guidance for Safe Schools, https://services.aap.org/en/pages/2019-novel-coronavirus-COVID-19-infections/clinical-guidance/COVID-19-planning-considerations-return-to-in-person-education-in-schools/ ("Opening schools generally does not significantly increase community transmission, particularly when guidance outlined by the World Health Organization (WHO), United Nations Children's Fund (UNICEF), and *Centers for Disease Control and Prevention (CDC) is followed*.") (emphasis added).

[25] "How America failed students with disabilities during the pandemic," The Washington Post, May 20, 2021, https://www.washingtonpost.com/education/2021/05/20/students-disabilities-virtual-learning-failure/ ("[O]fficials in school districts across the country concede they failed during the crisis to deliver the quality of education that students with disabilities are legally entitled to receive.")

support their academic progress and prevent regression."[26]  Students with disabilities have not only

lost critical in-class instruction, they have lost services such as speech and occupational therapy as

well as behavioral support and counseling.   Many parents have reported regression.[27]   And there

is evidence that the disruption in services and instruction "may be exacerbating longstanding

disability-based disparities in academic achievement."[28]

39.   It is undisputed that "[s]tudents benefit from in-person learning, and safely

returning to in-person instruction in the fall 2021 is a priority."[29]   And students with disabilities

need in-person schooling more than other student groups, but they must be able to receive their

instruction and services safely.[30] Many of these students have underlying health conditions and

are at high risk for illness and even death due to COVID-19.

---

[26] DOE Office of Civil Rights, Education in a Pandemic: The Disparate Impacts of COVID-19 on America's Students, https://www2.ed.gov/about/offices/list/ocr/docs/20210608-impacts-of-covid19.pdf.

[27] E.g., "How America failed students with disabilities during the pandemic," The Washington Post, May 20, 2021, https://www.washingtonpost.com/education/2021/05/20/students-disabilities-virtual-learning-failure//.

[28] DOE Office of Civil Rights, Education in a Pandemic: The Disparate Impacts of COVID-19 on America's Students, https://www2.ed.gov/about/offices/list/ocr/docs/20210608-impacts-of-COVID19.pdf.

[29] CDC, Guidance for COVID-19 Prevention in K-12 Schools, updated Aug. 5, 2021, https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html.

[30] GAO-21-43, Distance Learning: Challenges Providing Services to K-12 English Learners and Students With Disabilities During COVID-19, at 16 (Nov. 2020), https://www.gao.gov/products/gao-21-43 (reporting that "[s]chool officials told [GAO] that delivering related services—such as occupational therapy, physical therapy, or speech therapy—for students with complex needs was particularly difficult in a virtual setting," and that other officials "raised concerns about students not receiving services in the same manner as they did prior to distance learning, including occupational and physical therapy that involved hands-on instruction from therapists or required specialized equipment unavailable in students' homes").

40.     While full vaccination is the "leading public health prevention strategy to end the COVID-19 pandemic" and "promoting vaccination can help schools safely return to in-person learning," every school district in this state "serve[s] children under the age of 12 who are not eligible for vaccination at this time."[31] Based on current FDA estimates, a vaccine for students under 12 is not likely to be given emergency authorization until late into the coming school semester at the earliest.[32]

41.     Based on the unavailability of vaccines for a large portion of students and the currently "circulating and highly contagious Delta variant," the CDC currently "recommends universal indoor masking by all students (age 2 and older), staff, teachers, and visitors to K-12 schools, regardless of vaccination status."[33]  And while in general, people "do not need to wear masks in outdoor settings," the CDC also  recommends "recommends that people who are not fully vaccinated wear a mask in crowded outdoor settings or during activities that involve sustained close contact with other people."[34]

42.     The Texas Medical Association, the Texas Pediatric Society, and the Texas Public Health Coalition have all called for universal masking in schools: "Let's face it; if we don't take action, the more infectious COVID-19 delta variant will spread among students when they gather together in schools.  We urge use of every tool in our toolkit to protect our children and their

---

[31] CDC, Guidance for COVID-19 Prevention in K-12 Schools, updated Aug. 5, 2021, https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html.

[32] Erika Edwards, COVID vaccines for kids under 12 expected midwinter, FDA official says, NBC News, https://www.nbcnews.com/health/health-news/vaccines-kids-under-age-12-expected-mid-winter-fda-official-n1274057.

[33] CDC, Guidance for COVID-19 Prevention in K-12 Schools, updated Aug. 5, 2021, https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html.

[34] Id.

families from COVID-19."[35]   One hundred and twenty-five physicians from Cook Children's Medical Center in Fort Worth wrote to Fort Worth ISD asking for a mask requirement, noting the increase in COVID-19 infections and hospitalizations.[36]

43.   Masking works.  The ABC Science Collaborative, led by top physicians on the staff of Duke University, studied data from 100 school districts in North Carolina, and found that "[w]hen masking is in place, COVID-19 transmission in schools is low."[37]  And "when teachers, staff, and students consistently and correctly wear a mask, they protect others as well as themselves."[38]

**D.     Governor Abbott's Order and TEA's Guidance Prevent Local Schools from Adopting Protections Appropriate for Local Students**

44.   Since March 13, 2020, Governor Abbott has recognized by proclamation the "imminent threat" posed by the COVID-19 pandemic for all counties across the State of Texas. He has renewed that proclamation each month with successive executive orders, and each recognizes that the threat caused by the pandemic remains in place today.

---

[35] Physicians Encourage Masking and Vaccination of Students, July 28, 2021, https://txpeds.org/physicians-encourage-masking-and-vaccination-students.

[36] Anna Caplan, *"Fort Worth ISD will require masks in schools,"* Dall. Morning News, Aug. 11, 2021, https://www.dallasnews.com/news/2021/08/11/letter-from-125-cook-childrens-physicians-prompts-fwisd-to-mandate-masks-for-school-year/.

[37] The ABC Science Collaborative, Press Conference, Aug. 5, release and recording https://abcsciencecollaborative.org/zimmerman-benjamin-urge-mask-wearing-in-press-conference/.

[38] *See also* CDC, Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html ("Experimental and epidemiological data support community masking to reduce the spread of SARS-CoV-2. The prevention benefit of masking is derived from the combination of source control and wearer protection for the mask wearer.").

45.     Among his executive orders, Governor Abbott issued Executive Order GA-29 in July 2020, which required all Texans to "wear a face covering over the nose and mouth when inside a commercial entity or other building or space open to the public" in counties that exceeded certain thresholds of positive cases unless those counties affirmatively opted out of the mask requirement.   Thus, Governor Abbott has previously recognized the importance of both using masks to help limit and control the spread of COVID-19 and the differences across Texas communities that may require a variety of different approaches with respect to masking.

46.     Despite his prior endorsement of masking as a means of protection from the threat and despite the real threat of COVID-19 that Texans now face from the Delta variant, Governor Abbott issued Executive Order GA-38 on July 29, 2021, which prohibits any requirement by "any jurisdiction to wear or to mandate the wearing of a face covering" and further provides that "the imposition of any such face-covering requirement by a local government entity or official constitutes a 'failure to comply with' this executive order that is subject to a fine up to $1,000."[39]

47.     Consistent with Governor Abbott's Executive Order, the TEA, which has legal authority to publish requirements for public schools, has announced in its Public Health Guidance that, "[p]er GA-38, school systems cannot require students or staff to wear a mask."

48.     Governor Abbott's Executive Order and TEA's Public Health Guidance prohibit school districts from mandating the use of masks for students and staff, thereby preventing Plaintiffs and other students with disabilities from safely returning to school in-person, in violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

---

[39] Exec. Order GA 38, https://gov.texas.gov/uploads/files/press/EO-GA-38_continued_response_to_the_COVID-19_disaster_IMAGE_07-29-2021.pdf (July 29, 2021).

49.     By refusing to allow school districts or local public health authorities to even consider whether to implement mask requirements as needed to protect the health and safety of the children they serve, Defendants have placed an unlawful barrier for students with disabilities that is preventing our state's most vulnerable students from returning to public schools.

50.     The Governor's Executive Order GA-38 and TEA's corresponding Public Health Guidance, which forbid local school districts and public health authorities from having the freedom to respond to the ongoing COVID-19 crisis and to require masks for their students and staff, have made it impossible for school districts to provide students with disabilities a safe learning environment.

51.     There are no viable alternatives for students with disabilities who cannot safely return to school in-person due to the Governor's Executive Order and TEA's Guidance. Defendants' actions have put parents in the impossible situation of having to choose between the health and life of their child and educating their child.   Thus, Defendants' actions will have the perverse effect of either placing children with disabilities in imminent danger or unlawfully forcing those children out of the public school system.

**E.     Harm to the Named Plaintiffs**

52.     The Governor's Order and TEA's Guidance have directly harmed each of the named Plaintiffs who now have to risk their health and safety in order to obtain desperately needed in-person instruction and services.

53.     E.T. in the Round Rock Independent School District:

            a.   E.T. is eleven years old, and she has been diagnosed with Down syndrome, moderate to severe asthma, hypogammaglobulinemia, a CD19 deficiency,

and a severe B-cell lymphocyte deficiency, which has resulted in a suppressed immune system.

b.  E.T. attends a Williamson County public school, and the school has identified her as a child with a disability.

c.  Children with Down syndrome, a weakened immune system, and asthma like E.T. are at a higher risk of hospitalization, severe illness, or death should they contract COVID-19.

d.  Because Defendants are preventing Williamson County public schools from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant—it is simply too dangerous to E.T.'s health and safety for her to return to school without the protections deemed necessary by local and national authorities, which includes universal masking for all persons at K-12 schools.

e.  Defendants' actions have forced E.T.'s parents to decide whether to return E.T. to school and risk her life or to leave the public school system.

54.   A.M. in the Edgewood Independent School District ("EISD").

a.  A.M. is eight years old and was born with cerebral palsy, which is a neurological disorder.

b.  A.M. attends a Bexar County public school, and the school has identified him as a child with a disability.

    c.   Children with neurological disorders, including cerebral palsy, like A.M., are at a higher risk of hospitalization, severe illness, or death should they contract COVID-19.

    d.   Because Defendants seek to prevent all Texas public schools from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant—it is simply too dangerous to A.M.'s health and safety for him to return to school without the protections deemed necessary by local and national authorities, which includes universal masking for all persons at K-12 schools. Notably, Governor Abbott has threatened to file litigation against any Texas school district which issues a mask mandate in its jurisdiction.[40]

    e.   Defendants' actions have forced A.M.'s parents to decide whether to return A.M. to school and risk his life or to leave the public school system.

55.    J.R. in the San Antonio Independent School District:

    a.   J.R. is eight years old and lives with attention deficit hyperactivity disorder, a growth hormone deficiency, and moderate to severe asthma.

    b.   J.R. attends a Bexar County public school, and the school has identified her as a child with a disability.

    c.   Children with severe or moderate asthma like J.R. are at a higher risk of hospitalization, severe illness, or death should they contract COVID-19.

---

[40] "Governor Abbott threatens to sue school districts who enforce mask mandates," KVEO, Aug. 11, 2021, https://www.valleycentral.com/news/local-news/gov-abbott-threatens-to-sue-schools-who-enforce-mask-mandates/.

d.   Because Defendants seek to prevent Bexar County public schools from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant—it is simply too dangerous to J.R.'s health and safety for her to return to school without the protections deemed necessary by local and national authorities, which includes universal masking for all persons at K-12 schools.

e.   Defendants' actions have forced J.R.'s parents to decide whether to return J.R. to school and risk her life or to leave the public school system.

56.   D.D. in the Medina Valley Independent School District:

a.   D.D. is nine years old and has a visual impairment, a developmental delay, an intellectual disability, attention deficit hyperactivity disorder, and is nonverbal. Due to his panoply of medical diagnoses, he requires constant supervision by a private duty nurse to assist with all aspects of daily living and to keep him safe from possible COVID-19 transmission.

b.   D.D. attends a Medina County public school, and the school has identified him as a child with a disability.

c.   Medically fragile children such as D.D. are at a higher risk of hospitalization, severe illness, or death should they contract COVID-19.

d.   Because Defendants are preventing Medina County public schools from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant—it is simply too dangerous to D.D.'s health and safety for him

to return to school without the protections deemed necessary by local and national authorities, which includes universal masking for all persons at K-12 schools.

e. Defendants' actions have forced D.D.'s parents to decide whether to return D.D. to school and risk his life or to leave the public school system.

57.    E.R. in the Hays Consolidated Independent School District:

a. E.R. is seven years old and lives with moderate to severe asthma, a chronic lung condition, and a speech impairment.

b. E.R. attends a Hays County public school, and the school has identified him as a child with a disability.

c. Children with severe or moderate asthma and a chronic lung condition like E.R. are at a higher risk of hospitalization, severe illness, or death should they contract COVID-19.

d. Because Defendants are preventing Hays County public schools from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant—it is simply too dangerous to E.R.'s health and safety for him to return to school without the protections deemed necessary by local and national authorities, which includes universal masking for all persons at K-12 schools.

e. Defendants' actions have forced E.R.'s parents to decide whether to return E.R. to school and risk his life or to leave the public school system.

58.    E.S. is a student in the Killeen Independent School District:

    a. E.S. is seven years old and lives with moderate to severe asthma.

    b. E.S. attends a Bell County public school.

    c. Children with moderate to severe asthma like E.S. are at a higher risk of hospitalization, severe illness, or death should they contract COVID-19.

    d. Because Defendants are preventing Bell County public schools from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant—it is simply too dangerous to E.S.'s health and safety for her to return to school without the protections deemed necessary by local and national authorities, which includes universal masking for all persons at K-12 schools.

    e. Defendants' actions have forced E.S.'s parents to decide whether to return E.S. to school and risk her life or to leave the public school system.

59.    J.P.V. in the IDEA Public Schools School District

    a. J.P.V. is eleven years old and has muscular disorders and moderate to severe asthma.

    b. J.P.V. attends a Hidalgo County public school.

    c. Children with moderate to severe asthma like J.P.V. are at a higher risk of hospitalization, severe illness, or death should they contract COVID-19.

    d. Because Defendants are preventing Hidalgo County public schools from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant—it is simply too dangerous to J.P.V.'s health and safety for her

to return to school without the protections deemed necessary by local and national authorities, which includes universal masking for all persons at K-12 schools.

e.  Defendants' actions have forced J.P.V.'s parents to decide whether to return J.P.V. to school and risk her life or to leave the public school system.

60.  H.M. in the Leander Independent School District:

a.  H.M. is eight years old and has Down syndrome, a heart defect, and a history of bronchomalacia.

b.  H.M. attends a Travis County public school, and the school has identified him as a child with a disability.

c.  Children with Down syndrome, heart conditions, and chronic respiratory conditions like H.M. are at a higher risk of hospitalization, severe illness, or death should they contract COVID-19.

d.  Because Defendants are preventing Travis County public schools from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant—it is simply too dangerous to H.M.'s health and safety for him to return to school without the protections deemed necessary by local and national authorities, which includes universal masking for all persons at K-12 schools.

e.  Defendants' actions have forced H.M.'s parents to decide whether to return H.M. to school and risk his life or to leave the public school system.

61.  N.C. in the Friendswood Independent School District:

a. N.C. is eight years old and has Sanfilippo syndrome type A, which is a type of childhood dementia and a neurological disorder.

b. N.C. attends a Galveston County public school, and the school has identified her as a child with a disability.

c. Children with neurological conditions such as N.C. are at a higher risk of hospitalization, severe illness, or death should they contract COVID-19.

d. Because Defendants are preventing Galveston County public schools from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant—it is simply too dangerous to N.C.'s health and safety for her to return to school without the protections deemed necessary by local and national authorities, which includes universal masking for all persons at K-12 schools.

e. Defendants' actions have forced N.C.'s parents to decide whether to return N.C. to school and risk her life or to leave the public school system.

62. J.G. in the Lamar Consolidated Independent School District:

a. J.G. is seven years old and is immunocompromised due to having received a heart transplant. Prior to the COVID-19 pandemic, J.G. was hospitalized approximately 20 times for contracting various infectious diseases due to her immunodeficiency.

b. J.G. attends a Fort Bend County public school, and the school has identified her as a child with a disability.

c.  Children with heart conditions and a weakened immune system like J.G. are at a higher risk of hospitalization, severe illness, or death should they contract COVID-19.

d.  Because Defendants are preventing Fort Bend County public schools from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant—it is simply too dangerous to J.G.'s health and safety for her to return to school without the protections deemed necessary by local and national authorities, which includes universal masking for all persons at K-12 schools.

e.  Defendants' actions have forced J.G.'s parents to decide whether to return J.G. to school and risk her life or to leave the public school system.

63.  M.P. in the Fort Bend Independent School District:

a.  M.P. is eleven years old and was born with Down syndrome.

b.  M.P. attends a Fort Bend County public school, and the school has identified her as a child with a disability.

c.  Children with severe or moderate asthma like M.P. are at a higher risk of hospitalization, severe illness, or death should they contract COVID-19.

d.  Because Defendants are seeking to prevent Fort Bend County public schools from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant—it is simply too dangerous to M.P.'s health and safety for her to return to school without the protections deemed necessary

by local and national authorities, which includes universal masking for all persons at K-12 schools.

    e.  Defendants' actions have forced M.P.'s parents to decide whether to return M.P. to school and risk her life or to leave the public school system.

64.    H.P. in the Katy Independent School District:

    a.  H.P. is eleven years old and has been diagnosed with epilepsy, autism, and SCN2A genetic-related disorder, which causes a wide range of neurological conditions.

    b.  H.P. attends a Fort Bend County public school, and the school has identified her as a child with a disability.

    c.  Children with a neurological condition like H.P. are at a higher risk of hospitalization, severe illness, or death should they contract COVID-19.

    d.  Because Defendants are seeking to prevent Fort Bend County public schools from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant—it is simply too dangerous to H.P.'s health and safety for her to return to school without the protections deemed necessary by local and national authorities, which includes universal masking for all persons at K-12 schools.

    e.  Defendants' actions have forced H.P.'s parents to decide whether to return H.P. to school and risk her life or to leave the public school system.

65.    S.P. in the Richardson Independent School District:

    a.  S.P. is eight years old and has bronchiectasis, attention deficit hyperactivity disorder, spina bifida and epilepsy.

    b.  S.P. attends a Dallas County public school, and the school has identified him as a child with a disability.

    c.  Children with chronic lung and neurological conditions like S.P. are at a higher risk of hospitalization, severe illness, or death should they contract COVID-19.

    d.  Because Defendants seek to prevent Dallas County public schools from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant—it is simply too dangerous to S.P.'s health and safety for him to return to school without the protections deemed necessary by local and national authorities, which includes universal masking for all persons at K-12 schools.

    e.  Defendants' actions have forced S.P.'s parents to decide whether to return S.P. to school and risk his life or to leave the public school system.

66.    R.S. in the Keller Independent School District:

    a.  R.S. is eleven years old and was born with Down syndrome.

    b.  R.S. attends a Tarrant County public school, and the school has identified her as a child with a disability.

    c.  Children with Down syndrome like R.S. are at a higher risk of hospitalization, severe illness, or death should they contract COVID-19.

d. Because Defendants are preventing Tarrant County public schools from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant—it is simply too dangerous to R.S.'s health and safety for her to return to school without the protections deemed necessary by local and national authorities, which includes universal masking for all persons at K-12 schools.

e. Defendants' actions have forced R.S.'s parents to decide whether to return R.S. to school and risk her life or to leave the public school system.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION:
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### AGAINST ABBOTT AND MORATH IN THEIR OFFICIAL CAPACITIES

67.     Plaintiffs repeat and re-allege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

68.     The ADA provides a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. 42 U.S.C. §§ 12101(b)(1) & (2).

69.     Enactment of the ADA reflected deeply held American ideals that treasure the contributions that individuals can make when free from arbitrary, unjust, or outmoded societal attitudes and practices that prevent the realization of their full potential.

70.     The ADA embodies a public policy committed to the removal of a broad range of impediments to the integration of people with disabilities into society and strengthening the federal government's role in enforcing the standards established by Congress.

71.     The ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

72.     Governor Abbott's Executive Order and TEA's Public Health Guidance are denying local school districts and public health authorities the ability to provide the children in the instant matter with the protections they need to attend school safely. In so doing, Defendants Abbott and Morath, acting in their official capacities, have violated the regulations and provisions of the ADA, and/or have caused Plaintiffs' School Districts to violate the regulations and provisions of the ADA, as follows:

    a. Defendants are failing to make a reasonable modification, and/or are preventing Plaintiffs' School Districts from making a reasonable modification, under circumstances where it is required, in violation of 28 C.F.R. § 35.130(b)(7);

    b. Defendants are excluding, and/or are causing Plaintiffs' School Districts to exclude, Plaintiffs from participation in public education, in violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130;

    c. Defendants are failing to make, and/or causing Plaintiffs' School Districts to fail to make, their services, programs, and activities "readily accessible" to disabled individuals, in violation of 28 C.F.R. § 35.150;

    d. Defendants are administering a policy that has the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability and that has the purpose or effect of defeating or substantially

impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities, in violation of 28 C.F.R. § 35.130(b)(3).

73.     The ADA further prohibits any public entity from, either directly or through contractual or other arrangements, using any criteria or methods of administration that (a) have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability and/or (b) perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State.  28 C.F.R. §§ 35.130 (b)(3)(i) & (iii).

74.     Neither Defendant Abbott or Defendant Morath have the authority to circumvent the ADA and its protections for students with disabilities through executive order or guidance requirements.

75.     Excluding children from the public school classroom because of a disability is precisely the type of discrimination and segregation that the ADA and its amendments aim to prevent and specifically prohibit.

### SECOND CAUSE OF ACTION:
### VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973
### AGAINST ALL DEFENDANTS

76.     Plaintiffs repeat and re-allege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

77.     Plaintiffs are children with disabilities that substantially limit one or more major life activity, and therefore, are considered to be persons with a disability under Section 504 of the Rehabilitation Act, as amended. *See* 29 U.S.C. § 705(9)(B), as amended by the ADA Amendments Act, Pub. L. 110-325, Sec. 7, 122 Stat. 3553 (Sept. 25, 2008).

78.     Plaintiffs are otherwise qualified under Section 504 of the Rehabilitation Act because they meet the essential eligibility requirements for public education in the state of Texas.

79.     Defendant Morath, in his official capacity, the state of Texas, and the Defendant TEA are the recipients of federal financial assistance, to include funding from Title I of the Elementary and Secondary Education Act and from the Elementary and Secondary School Emergency Relief of the American Rescue Plan Act of 2021.

80.     Defendant Abbott, in his official capacity, is the recipient of federal financial assistance, including over $287 million from the Coronavirus Response and Relief Supplemental Appropriations Act.  Governor Abbott's Executive Order and TEA's Public Health Guidance are denying local school districts and public health authorities the ability to provide these children with the accommodations they need to attend school safely.

81.     Defendants have violated the regulations and provisions of Section 504, and/or caused Plaintiffs' School Districts to violate the regulations and provisions of Section 504, as follows:

  a.  Defendants are excluding, and/or are causing Plaintiffs' School Districts to exclude, Plaintiffs from participation in public education, in violation of 29 U.S.C. § 794(a) and 34 C.F.R. § 104.4(b)(1)(i);

  b.  Defendants are using methods of administration that have the effect of subjecting Plaintiffs to discrimination on the basis of disability, in violation of 34 C.F.R. § 104.4(b)(4);

  c.  Defendants are using methods of administration that have the effect or purpose of defeating or substantially impairing accomplishment of the

objectives of the public education provided by Plaintiffs' School Districts,

in violation of 34 C.F.R. § 104.4(b)(4).

82.     Defendants do not have the authority to circumvent Section 504 and its protections for students with disabilities through executive order or guidance requirements.

83.     Excluding children from the public school classroom because of a disability is precisely the type of discrimination and segregation that Section 504 aims to prevent and specifically prohibit.

**THIRD CAUSE OF ACTION:**
**FEDERAL PREEMPTION UNDER AMERICAN RESCUE PLAN ACT OF 2021**
**AGAINST ALL DEFENDANTS**

84.     Plaintiffs repeat and re-allege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

85.     The Supremacy Clause of the United States Constitution renders federal law the "supreme Law of the Land." U.S. CONST. art. VI, cl. 2. The doctrine of federal preemption that arises out of the Supremacy Clause requires that "any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Felder v. Casey*, 487 U.S. 131, 138, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988) (quoting *Free v. Bland*, 369 U.S. 663, 666, 82 S. Ct. 1089, 8 L. Ed. 2d 180 (1962)). State law is preempted when, among other things, it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 204, 103 S. Ct. 1713, 75 L. Ed. 2d 752 (1983).

86.     Governor Abbott's Executive Order and TEA's Public Health Guidance conflict with federal law because they frustrate Congress' purpose that local school districts have the authority to adopt public health policies, including mask requirements, to protect students and

educators as they develop plans for safe return to in-person instruction. Under section 2001(i) of the American Rescue Plan Act of 2021 (ARP), local school districts in Texas – including the districts in which Plaintiffs attend school – have been allocated over $11 billion in Elementary and Secondary School Emergency Relief (ESSER) funding so that they can adopt plans for a safe return to in-person instruction.[41] Pub. L. No. 117-2, § 2001(i). Section 2001(e)(2)(Q) of the ARP Act explicitly gives local school districts the authority to use these ARP ESSER funds for "developing strategies and implementing public health protocols *including, to the greatest extent practicable, policies in line with guidance from the Centers for Disease Control and Prevention* for the reopening and operation of school facilities to effectively maintain the health and safety of students, educators, and other staff." *Id*. § 2001(e)(2)(Q) (emphasis added). As discussed above, the CDC's guidance specifically recommends universal indoor masking in all K-12 schools.

87.     Furthermore, interim final requirements adopted by the U.S. Department of Education specifically require each local school district to adopt a plan for safe return to in-person instruction that describes "the extent to which it has adopted policies, and a description of any such policies, on each of the following safety recommendations established by the CDC…," specifically including "universal and correct wearing of masks." *See* American Rescue Plan Act Elementary and Secondary School Emergency Relief Fund, 86 Fed. Reg. 21195, 21200 (Apr. 22, 2021). To be clear, the requirement "does not mandate that [a local educational agency] adopt the CDC guidance, but only requires that [it] describe in its plan the extent to which it has adopted the key

---

[41] *See* U.S. Dep't of Education, American Rescue Plan Elementary and Secondary School Emergency Relief Fund – Methodology for Calculating Allocations (Revised June 25, 2021) at 3, *available at* https://oese.ed.gov/files/2021/06/Revised-ARP-ESSER-Methodology-and-Allocation-Table_6.25.21_FINAL.pdf.

prevention and mitigation strategies identified in the guidance," which include both "[u]niversal and correct wearing of masks," and notably "appropriate accommodations for children with disabilities with respect to health and safety policies," among others. *Id.* The interim requirements further provide that a local educational agency must ensure the interventions it implements will respond to the needs of all students, "and particularly those students disproportionately impacted by the COVID-19 pandemic, including … children with disabilities." *Id.*

88.     In other words, it is the legislative purpose and intention of Congress, both as set forth in the statute itself and as interpreted by the Department of Education, that local school districts – and not the state – have the authority to decide whether and to what extent they will adopt public health policies, including mask requirements, consistent with CDC guidance. Governor Abbott's Executive Order and TEA's Public Health Guidance impermissibly conflict with and are preempted by this federal law.

## REQUEST FOR TEMPORARY RESTRAINING ORDER

89.     Plaintiffs repeat and re-allege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

90.     Plaintiffs seek a temporary restraining order enjoining Defendants from enforcing Executive Order GA-38 and TEA's Public Health Guidance to the extent that they prevent Texas school districts from implementing a local mask mandate for their public schools and will file a motion seeking injunctive relief pursuant to Local Rule CV-65.

## ATTORNEYS' FEES

91.     Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to and seek an award of their reasonable attorneys' fees, costs, and expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

A.    Assume jurisdiction of this action;

B.    Declare that Defendant Abbott's Executive Order GA-38 and TEA's Public Health Guidance violate Plaintiffs' rights under the Americans with Disabilities Act and Section 504, and are preempted by the American Rescue Plan Act;

C.    Issue a temporary restraining order enjoining Defendants from violating the Americans with Disabilities Act, Section 504, and the American Rescue Plan Act by prohibiting local school districts from requiring masks for their students and staff;

D.    Issue preliminary and permanent injunctive relief enjoining Defendants from violating the Americans with Disabilities Act, Section 504, and the American Rescue Plan Act by prohibiting local school districts from requiring masks for their students and staff;

E.    Issue preliminary and permanent injunctive relief enjoining Defendants from violating the Americans with Disabilities Act, Section 504, and the American Rescue Plan Act by withholding state and federal educational funds from districts which elect to require students and staff to wear masks.

F.    Award Plaintiffs their reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and

G.    Grant such other and further relief as may be just, equitable and proper.

 Dated: August 17, 2021                              Respectfully submitted,


                                                     /s/ Thomas M. Melsheimer
                                                     Thomas M. Melsheimer
                                                     Texas Bar No. 13922550
                                                     tmelsheimer@winston.com
                                                     Scott C. Thomas

Texas Bar No. 24046964
scthomas@winston.com
Alex Wolens
Texas Bar No. 24110546
John Michael Gaddis (*application pending*)
Texas Bar No. 24069747
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500
(214) 453-6400 (fax)

Brandon W. Duke (*application pending*)
Texas Bar No. 240994476
bduke@winston.com
**WINSTON & STRAWN LLP**
800 Capitol St., Suite 2400
Houston, TX 77002
(713) 651-2600
(713) 651-2700 (fax)

Dustin Rynders (*application pending*)
Texas Bar No. 24048005
drynders@drtx.org
**DISABILITY RIGHTS TEXAS**
1500 McGowen, Suite 100
Houston, TX 77004
(713) 974-7691
(713) 974-7695 (fax)

L. Kym Davis Rogers
Texas Bar No. 00796442
krogers@drtx.org
**DISABILITY RIGHTS TEXAS**
1420 W. Mockingbird Lane, Suite 450
Dallas, TX 75247
(214) 845-4045
(214) 630-3472 (fax)

Robert Winterode
Texas Bar No. 24085664
rwinterode@drtx.org
**DISABILITY RIGHTS TEXAS**
2211 E. Missouri, Suite 243
El Paso, TX 79903
(210) 424-9652
(915) 542-2676 (fax)

Peter Hofer
Texas Bar No. 09777275
phofer@drtx.org
Brian East
Texas Bar No. 06360800
beast@disabilityrightstx.org
**DISABILITY RIGHTS TEXAS**
2222 West Braker Lane
Austin, TX 78758
(512) 407-2745
(512) 454-3999 (fax)

**ATTORNEYS FOR PLAINTIFFS**