# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| E.T., by and through her parents and next friends; D.D., by and through her parents and next friends; E.R., by and through her parents and next friends; J.R., by and through her parents and next friends; H.M., by and through her parents and next friends; N.C., by and through her parents and next friends; J.G., by and through her parents and next friends; E.S., by and through her parents and next friends; M.P., by and through her parents and next friends; S.P., by and through her parents and next friends; R.S., by and through her parents and next friends; J.V., by and through her parents and next friends; H.P., by and through her parents and next friends; and A.M., by and through her parents and next friends, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:21-cv-00717-LY |
| | ) | |
| v. | ) | |
| GOVERNOR GREG ABBOTT, in his official capacity as GOVERNOR OF TEXAS; MIKE MORATH, in his official capacity as the COMMISSIONER of the TEXAS EDUCATION AGENCY; and the TEXAS EDUCATION AGENCY, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

# PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION AND BACKGROUND FACTS ....................................................... 1

II.    ARGUMENT ................................................................................................................. 8

     A.      Standard for Temporary Restraining Order and Preliminary Injunction .............. 8

     B.      Plaintiffs Have a Strong Likelihood of Success on The Merits ........................... 9

           i.        Counts I and II: Violations of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act ...................................................... 9

           ii.       Count III: Federal Preemption ............................................................. 13

     C.      Plaintiffs Will Be Irreparably Harmed Without a Temporary Restraining Order or Preliminary Injunction .................................................................................... 15

     D.      The Irreparable Harm Caused to Plaintiffs Outweighs the Hardship to Defendants, and a Temporary Restraining Order and Preliminary Injunction Will Not Disserve the Public Interest .............................................................................................. 16

     E.      Plaintiffs Will Suffer Irreparable Harm if a Temporary Restraining Order is Not Entered Before the Preliminary Injunction Hearing ......................................... 17

III.   CONCLUSION ............................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Basank v. Decker*,
    2020 WL 1953847 (S.D.N.Y. Apr. 23, 2020)................................................................. 16

*Felder v. Casey*,
    487 U.S. 131 (1988)........................................................................................................ 13

*Greyhound Lines, Inc. v. City of New Orleans ex rel. Dep't of Pub. Utils.*,
    29 F. Supp. 2d 339 (E.D. La. 1998)............................................................................... 16

*Helling v. McKinney*,
    509 U.S. 25 (1993)......................................................................................................... 15

*Jackson Women's Health Org. v. Currier*,
    760 F.3d 448 (5th Cir. 2014)............................................................................................ 9

*D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*,
    629 F.3d 450 (5th Cir.2010)........................................................................................9, 10

*Lindsay v. City of San Antonio*,
    821 F.2d 1103 (5th Cir. 1987).......................................................................................... 9

*Melton v. Dallas Area Rapid Transit*,
    391 F.3d 669 (5th Cir. 2004).......................................................................................... 10

*Miraglia v. Bd. of Supervisors of La. State Museum*,
    901 F.3d 565 (5th Cir. 2018).......................................................................................... 10

*Pac. Gas & Elec. Co. v. State Energy Res. Cons. & Dev. Comm'n*,
    461 U.S. 190 (1983)....................................................................................................... 13

*Parks v. Dunlop*,
    517 F.2d 785 (5th Cir. 1975).......................................................................................... 15

*Peregrino Guevara v. Witte*,
    2020 WL 6940814 (W.D. La. Nov. 17, 2020)................................................................. 15

*Sierra Club, Lone Star Ch. v. F.D.I.C.*,
    992 F.2d 545 (5th Cir. 1993)............................................................................................ 9

*Thakker v. Doll*,
    451 F. Supp. 3d 358 (M.D. Pa. 2020)............................................................................ 15

*Wilson v. City of Southlake*,
  936 F.3d 326 (5th Cir. 2019).................................................................. 10

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ................................................................................... 15

**Statutes**

29 U.S.C. § 794(a) ......................................................................................... 9

42 U.S.C. § 12132 .....................................................................................9, 11

American Rescue Plan Act.......................................................................8, 13, 14

American Rescue Plan Act of 2021 ................................................................. 7

American Rescue Plan Act of 2021 § 2001(i) ................................................ 13

American Rescue Plan Act of 2021 § 2001(e)(2)(Q).................................13, 14

Americans with Disabilities Act.................................................................1, 9

Americans with Disability Act § 504, Title II ................................................ 9

Rehabilitation Act........................................................................................... 10

Rehabilitation Act § 504 .........................................................................1, 2, 9, 10

**Other Authorities**

28 C.F.R. § 35.130 ......................................................................................... 11

28 C.F.R. § 35.130(b)(3).............................................................................. 11

28 C.F.R. § 35.130(b)(7).............................................................................. 11

28 C.F.R. § 35.150 ......................................................................................... 11

34 C.F.R. § 104.4(b)(1)(i)............................................................................. 11

34 C.F.R. § 104.4(b)(4)................................................................................. 11

86 Fed. Reg. 21195, 21200 (Apr. 22, 2021)............................................8, 14

Austin ISD School Calendar Page,
  https://www.austinisd.org/calendar/events/2021/08/17/first-day-classes (last
  visited Aug. 17, 2021)............................................................................... 1

*Certain Medical Conditions*, May 13, 2021,
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html ................................................................................ 5

Clarion Ledger (Aug. 17, 2021),
https://www.clarionledger.com/story/news/local/2021/08/17/covid-mississippi-children-20-000-students-quarantine/8171250002/ ................................ 7

COVID-19 List of Government Entities Unlawfully Imposing Mask Mandates,
Attorney General of Texas,
https://www.texasattorneygeneral.gov/covid-governmental-entity-compliance
(last visited Aug. 17, 2021) ................................................................................ 2

Dallas ISD and Fort Worth ISD begin classes on August 16, 2021. Dallas ISD
school calendar page,
https://thehub.dallasisd.org/2021/04/20/see-the-dallas-isd-2021-2022-school-year-calendars/ (last visited on Aug. 17, 2021) ............................................... 1

*The Delta Variant Is Sending More Children to the Hospital. Are They Sicker,*
*Too?*, The N.Y. Times, Aug. 9, 2021,
https://www.nytimes.com/2021/08/09/health/coronavirus-children-delta.html ..................... 3

Disease Control, *Guidance for COVID-19 Prevention in K-12 Schools*,
https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html ....................................................................................... 3

Disease Control, *Key Things to Know About COVID-19 Vaccines*,
https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html ..................... 4

*Emergency Relief Fund – Methodology for Calculating Allocations* (last revised
June 25, 2021) at 3,
https://oese.ed.gov/files/2021/06/Revised-ARP-ESSER-Methodology-and-Allocation-Table_6.25.21_FINAL.pdf ................................................................ 7

Executive Order GA-38 ............................................................... 2, 8, 15, 17

Executive Order No. GA-38, § 3(b) .......................................................... 18

Executive Order No. GA-38, § 3(e) .......................................................... 18

Executive Order No. GA-38, § 3(g) .......................................................... 18

Executive Order No. GA-38, § 4 .............................................................. 18

Fed. R. Civ. P. 65(a) ....................................................................... 1, 18

Fort Bend ISD School Calendar Page,
https://www.fortbendisd.com/calendar#calendar1/20210811/day (last visited
Aug. 17, 2021)................................................................................................. 1

Houston ISD school calendar page
https://www.houstonisd.org/2021AcademicCalendar (last visited Aug. 17,
2021)................................................................................................................. 1

Juan A. Lozano, *Virus outbreaks temporarily close 4 Texas school districts*, AP
News (Aug. 18, 2021),
https://apnews.com/article/health-texas-education-coronavirus-pandemic-
8e78f68e2c0f118a3cc0c7.............................................................................6, 7

*Kids*, The Atlantic, Aug. 10, 2021,
https://www.theatlantic.com/health/archive/2021/08/delta-variant-covid-
children/619712/.............................................................................................3, 4

Round Rock ISD School Calendar Page,
https://roundrockisd.org/about-rrisd/calendars/ (last visited Aug. 17, 2021)......... 1

San Antonio ISD School Calendar Page,
https://www.saisd.net/upload/page/0456/docs/SAISD_2021-
22_InstructionalCalendar.pdf (last visited Aug. 17, 2021) .................................. 1

U.S. CONST. art. VI, cl. 2 ................................................................................ 13

Waco ISD school calendar page,
https://www.wacoisd.org/Page/2#calendar1/20210814/month ............................. 1

Plaintiffs respectfully move under Federal Rule of Civil Procedure 65(a) and Local Rule CV-65 for a temporary restraining order and preliminary injunction enjoining Defendants from prohibiting local school districts from requiring masks for their students and staff, and allege as follows:

## I.     INTRODUCTION AND BACKGROUND FACTS

Plaintiffs incorporate the facts described in their Original Complaint and repeat the following relevant facts in support of their Emergency Motion for Temporary Restraining Order and Preliminary Injunction.

Most Texas public schools began or will begin in-person classes for the 2021-22 school year during the two-week span between August 9 and 23.[1]  While the start of school is an annual occurrence this time of year, this school year is unlike any other.

Plaintiffs are students enrolled in the Texas public schools who have disabilities as defined under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504"). *See* Exs. F–R (declarations of Plaintiffs' respective parents). Plaintiffs'

---

[1] *See, e.g.*, Dallas ISD and Fort Worth ISD begin classes on August 16, 2021. Dallas ISD school calendar page, https://thehub.dallasisd.org/2021/04/20/see-the-dallas-isd-2021-2022-school-year-calendars/ (last visited on Aug. 17, 2021). Fort Worth ISD school calendar page, https://www.fwisd.org/calendar#calendar1/20210814/month) (last visited Aug. 17, 2021). Houston ISD and Waco ISD begin on August 23, 2021; Houston ISD school calendar page. https://www.houstonisd.org/2021AcademicCalendar (last visited Aug. 17, 2021); Waco ISD school calendar page, https://www.wacoisd.org/Page/2#calendar1/20210814/month (last visited Aug. 17, 2021. San Antonio began classes on August 9, 2021. San Antonio ISD School Calendar Page, https://www.saisd.net/upload/page/0456/docs/SAISD_2021-22_InstructionalCalendar.pdf (last visited Aug. 17, 2021). Fort Bend ISD began classes on August 11, 2021. Fort Bend ISD School Calendar Page, https://www.fortbendisd.com/calendar#calendar1/20210811/day (last visited Aug. 17, 2021). Austin ISD began classes on August 17, 2021. Austin ISD School Calendar Page, https://www.austinisd.org/calendar/events/2021/08/17/first-day-classes (last visited Aug. 17, 2021). Round Rock ISD began classes on August 18, 2021.  Round Rock ISD School Calendar Page, https://roundrockisd.org/about-rrisd/calendars/ (last visited Aug. 17, 2021).

disabilities—which include Down syndrome, asthma, chronic lung and heart conditions, cerebral palsy, and weakened immune systems, among others—place them at greater risk of serious illness or death should they contract COVID-19. *Id.* In addition, Plaintiffs are under the age of 12 and thus not eligible to receive any of the currently authorized COVID-19 vaccines. *Id.* The ADA and Section 504 prohibit the exclusion of students with disabilities from public educational programs and activities. At this critical stage of the pandemic when the Delta variant threatens to increase exposure and contagion among children, school districts must implement basic COVID-19 prevention strategies in schools to comply with their obligations under the ADA and Section 504 to provide integrated and accessible environment for their most medically vulnerable students.

Governor Abbott's Executive Order GA-38, attached hereto as Exhibit A, issued on July 29, 2021, prevents school districts from being able to comply with these federal requirements. Executive Order GA-38 specifically prohibits governmental entities from imposing a mask mandate. In addition, the Texas Education Agency ("TEA") has issued Public Health Guidance, attached hereto as Exhibit B, requiring school districts to comply with the Executive Order. Most recently, the Office of the Attorney General ("OAG") has written letters to 43 school districts, including at least five school districts in which one of the Plaintiffs attends school, attached hereto as Exhibit C, threatening to "pursue further legal action, including any available injunctive relief, costs and attorney's fees, penalties, and sanctions—including contempt of court—available at law" against the districts if they do not comply with the Executive Order's prohibition on mask requirements.[2]

---

[2] COVID-19 List of Government Entities Unlawfully Imposing Mask Mandates, Attorney General of Texas, https://www.texasattorneygeneral.gov/covid-governmental-entity-compliance (last visited Aug. 17, 2021) (noting that a total 51 governmental entities were reported as not in compliance with Executive Order GA-38 and were sent letters by the Texas Attorney General's Office).

Governor Abbott's order was issued only days before the Centers for Disease Control ("CDC") updated its "Guidance for COVID-19 Prevention in K-12 Schools" to recommend "universal indoor masking for all students, staff, teachers, and visitors to K-12 schools, regardless of vaccination status," noting that "protection against exposure remains essential in school settings."[3] The CDC explained that the "universal mask" recommendation was motivated by "the circulating and highly contagious Delta variant." Indeed, as reported by the American Academy of Pediatrics, there has been a nearly sevenfold increase in new child COVID-19 infections in the last month, with 12,000 cases reported nationwide in the first week of July and up to 96,000 in the first week of August.[4] As noted by one publication, "child hospitalizations have now reached an all-time pandemic high."[5]

"These outbreaks are . . . devastating local pediatric hospitals," observes Dr. Dona Kim Murphey, a neurologist and neuroscientist and Director of Scientific Affairs of an EEG Diagnostics company. Ex. D (Murphey Declaration) ¶ 11. According to Dr. Murphey, the University of Texas has projected that, factoring in known community transmission rates, at least five to ten people will be infected on the first day of school in the average Texas elementary school given the highly virulent Delta variant. *Id*. ¶ 9. Dr. Murphey further indicates that each infected individual will infect an average of seven others and that the COVID-19 viral load develops quicker, which she projects will result in "very rapid dissemination and hyperlocal outbreaks." *Id.*

---

[3] Centers for Disease Control, *Guidance for COVID-19 Prevention in K-12 Schools*, https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html (last updated Aug. 5, 2021).

[4] Emily Anthes, *The Delta Variant Is Sending More Children to the Hospital. Are They Sicker, Too?*, The N.Y. Times, Aug. 9, 2021, https://www.nytimes.com/2021/08/09/health/coronavirus-children-delta.html.

[5] Katherine J. Wu, *Delta Is Bad News for Kids*, The Atlantic, Aug. 10, 2021, https://www.theatlantic.com/health/archive/2021/08/delta-variant-covid-children/619712/.

¶ 10; *see also* Ex. E (Yudovich Declaration) ¶ 29 (noting COVID-19's "current exponential spread").

According to reports, medical professionals in part attribute the increase in COVID-19 pediatric infections to the latest variants in the virus and the fact that children under 12 years old are ineligible to receive the vaccines.[6] COVID-19 vaccines have been shown to be effective at helping protect against severe disease and death from variants of the virus currently circulating, including the Delta variant.[7] Unfortunately, accordingly to Dr. Murphey, only 45% of Texans are fully vaccinated. Ex. D ¶8. Even more alarming, Dr. Murphey notes that Texas is "among 20 states considered 'high' risk for the unvaccinated" given recorded COVID-19 cases and positivity test rates. *Id.* ¶7. Plaintiffs are all under the age of 12 and thus do not qualify for COVID-19 vaccination at this time. To make matters worse, according to Dr. Alexander Yudovich, a board-certified pediatrician, fellow of the American Academy of Pediatrics ("AAP"), member of the medical advisory team of a Houston private school, and former chief resident at Children's Hospital Los Angeles, both COVID-19 and respiratory syncytial virus ("RSV") are circulating throughout the country, and if a child contracts both viruses, it can lead to a "higher likelihood of respiratory failure [and] necessity for ICU care." Ex. E ¶ 22. Texas is a state included in the CDC's June 2021 RSV health advisory. *Id.* ¶ 23.

Dr. Yudovich further states that the combination of the Delta Variant and the unvaccinated status of children under 12 years old will mean, "schools without mitigation strategies will be an epidemiological disaster and a lesson in statistics." Ex. E ¶¶ 1, 2, 4, 26. Because of our current

---

[6] *Id.*

[7] Centers for Disease Control, *Key Things to Know About COVID-19 Vaccines*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html (last updated Aug. 16, 2021).

grim reality, Dr. Murphey notes that the American Academy of Neurology has strongly recommended that regulatory approval of COVID-19 vaccines be expedited for children under 12 years of age. Ex. D ¶ 16. Until that happens, however, Plaintiffs face an imminent threat of harmful and potentially life-altering and life-threatening consequences if exposed to an environment bereft of universal masking. *Id*. at ¶ 19; Ex. E ¶ 18 (noting that those who are high risk for severe COVID-19 illness may need hospitalization, intensive care, and support from a ventilator or may die). Though parents of all children have cause for concern, those with children who have disabilities that compromise immune responses or impair respiratory or neurological function have heightened reasons to be anxious about returning to school without a mask mandate in place. According to the CDC, "children with medical complexity, with genetic, neurologic, metabolic conditions, or with congenital heart disease can be at increased risk for severe illness from COVID-19." Ex. D ¶ 19.[8]

Dr. Murphey notes that all Plaintiffs qualify as "high risk" for COVID-19 complications, per CDC guidelines. Ex. D ¶¶ 13, 14. It is her expert opinion that any child who is medically complex and/or has Down syndrome, a weakened immune system, chronic lung or heart disease, or a neurological diagnosis will face a higher likelihood of a negative outcome from a COVID-19 infection. *Id*. These outcomes include severe illness, death, and a nascent condition called Long COVID. *Id*. ¶ 15. The latter may result in a long-term impairment with symptoms including but not limited to chronically disabling fatigue, headache, difficulty concentrating, and insomnia. *Id*. ¶ 17. Currently available and preliminary data suggests that up to ten percent of children who contract COVID-19 will also receive a Long COVID diagnosis. *Id*. ¶ 18.

---

[8] Centers for Disease Control, *COVID-19: People with Certain Medical Conditions*, May 13, 2021, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

Universal masking, a simple mitigation measure, can help prevent many of these distressing and avoidable outcomes. Dr. Yudovich and the American Academy of Pediatrics are advocates of the "'Swiss cheese model' of prevention," namely "the more layers of prevention the less likely the spread" in schools, which includes face masks. Ex. E ¶¶ 5, 17. Dr. Yudovich's experience as a member of the Medical Advisory Team of a Houston private school confirms the efficacy of this model. Students and staff at the Shlenker School followed CDC recommendations and mandated masking last year. The school did not once have to pause in-person instruction and/or quarantine last school year. *Id.* ¶¶ 4-6. Notably, not a single class had to be shut down. *Id.* at 8.

Dr. Yudovich has seen his experience in Houston corroborated by study after study. Each one has shown that mitigation strategies such as mandatory masking result in significant reductions of COVID-19 spread among school age-children. *Id.* ¶ 10-12. Conversely, the opposite is also true. Dr. Yudovich notes that ten days after an Israeli high school began its school year and failed to mandate COVID safety procedures such as universal masking, two positive COVID cases metastasized into 176 cases. *Id.* ¶ 12.

Texas schools face similar risks. Indeed, "at least four Texas school districts have already closed campuses due to COVID-19 outbreaks."[9] The elementary school campus in Waskom ISD where school had started on August 11 "was closed due to the 'number of staff members out with COVID.'"[10] And all of Gorman ISD closed for at least a week *before* school has even started "due

---

[9] Juan A. Lozano, *Virus outbreaks temporarily close 4 Texas school districts*, AP News (Aug. 18, 2021), https://apnews.com/article/health-texas-education-coronavirus-pandemic-8e78f68e2c0f118a3cc0c7. *See also* Exs. S–V.

[10] *Id.*

to positive COVID cases within the school community of both faculty and students."[11] Each of these districts followed Governor Abbott's Executive Order and TEA Guidance and did not have an indoor mask requirement for students and staff.[12] Should this remain the case, Texas is likely to follow other states that have seen major outbreaks among student populations, significant numbers of students needing to quarantine, and school shutdowns in their first few weeks of the school year. For example, Mississippi State Epidemiologist Dr. Paul Byers explained on August 17 that among the states 800 schools "about 20,000 students are currently quarantined for COVID-19 exposure in the state — 4.5% of the public school population."[13] These schools also started "the academic year without restrictions such as mask mandates."[14] Dr. Byers also added, "These disruptions . . . are going to continue for a while."[15]

Congress has recognized the importance of implementing COVID-19 prevention measures in schools by its passage of the American Rescue Plan Act of 2021 ("ARP") that allocated over $11 billion in Elementary and Secondary School Emergency Relief ("ESSER") funding so that local school districts in Texas can adopt plans for a safe return to in-person instruction.[16] As a condition of receiving those funds, local school districts are required to adopt a plan for in-person

---

[11] *Id.*

[12] *Id.*

[13] Leah Willingham, About 20,000 Mississippi students in quarantine for COVID-19 exposure, health official says, Clarion Ledger (Aug. 17, 2021), https://www.clarionledger.com/story/news/local/2021/08/17/covid-mississippi-children-20-000-students-quarantine/8171250002/.

[14] *Id.*

[15] *Id.* (alteration in original).

[16] *See* U.S. Dep't of Educ., *American Rescue Plan Elementary and Secondary School Emergency Relief Fund – Methodology for Calculating Allocations* (last revised June 25, 2021) at 3, https://oese.ed.gov/files/2021/06/Revised-ARP-ESSER-Methodology-and-Allocation-Table_6.25.21_FINAL.pdf.

instruction that describes "the extent to which it has adopted policies, and a description of any such policies, on each of the following safety recommendations established by the CDC . . ." specifically including "universal and correct wearing of masks."[17] It is clear that Congress intended, through passing the ARP, to authorize local school districts to use their discretion in implementing safety measures that may include mask mandates. By preventing local school districts from being able to consider their full range of options—particularly an option that is arguably the easiest to implement and is most effective—Executive Order GA-38 and the TEA's Public Health Guidance impermissibly conflict with and are preempted by this federal law.

With the school year fast approaching, and the serious risk posed to Plaintiffs upon their return to school in the absence of a mask mandate, Plaintiffs respectfully urge this Court to issue a temporary restraining order and preliminary injunction and enjoin enforcement of Executive Order GA-38 and the TEA's Public Health Guidance against local school districts, as well as enjoin Defendants from retaliating against local school districts local school districts which elect to require students and staff to wear masks. As Dr. Yudovich soberly concludes, otherwise "a state order prohibiting districts from adopting mask requirements in accordance with CDC and AAP guidance will result in additional COVID-19 spread and serious illness, hospitalizations and deaths of children with high-risk disabilities and health conditions." Ex. E ¶ 32.

## II.    ARGUMENT

### A.    Standard for Temporary Restraining Order and Preliminary Injunction

A plaintiff seeking a temporary restraining order or preliminary injunction must show the following: (1) a substantial likelihood of success on the merits; (2) a substantial threat of

---

[17] *See* American Rescue Plan Act Elementary and Secondary School Emergency Relief Fund, 86 Fed. Reg. 21195, 21200 (Apr. 22, 2021).

irreparable harm to the plaintiff if the temporary restraining order or preliminary injunction is not granted; (3) that the threatened injury outweighs any harm that may result to the defendant from the temporary restraining order or preliminary injunction; and 4) that the temporary restraining order or permanent injunction will not undermine the public interest. *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 452 (5th Cir. 2014); *Lindsay v. City of San Antonio*, 821 F.2d 1103, 1107 (5th Cir. 1987). At the preliminary injunction stage, the procedures for the district court are less formal, and the court may rely on otherwise inadmissible evidence. *Sierra Club, Lone Star Ch. v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993).

      **B.**      **Plaintiffs Have a Strong Likelihood of Success on The Merits.**

          **i.**      **Counts I and II: Violations of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.**

Section 504 of the Rehabilitation Act is an antidiscrimination statute that provides: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). This provision "broadly prohibit[s] discrimination against disabled persons in federally assisted programs or activities." *D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir.2010).

Like Section 504, Title II of the Americans with Disability Act ("ADA") is also an antidiscrimination statute and provides: "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Excluding children from the public-school classroom on the basis of their

disability is precisely the type of discrimination and segregation the ADA and its amendments aim to prevent and specifically prohibit.

Aside from the element of causation, Rehabilitation Act claims are analyzed under the same standard applicable to ADA claims. *See, e.g.*, *Wilson v. City of Southlake*, 936 F.3d 326, 330 (5th Cir. 2019); *D.A., ex rel. Latasha A.*, 629 F.3d at 453–54. Both the ADA and the Rehabilitation Act require Plaintiffs to establish that: (1) Plaintiffs are qualified individuals with a disability within the meaning of Section 504 of the Rehabilitation Act or the ADA; (2) Plaintiffs will be "excluded from participation in, or will be denied benefits of, services, programs, or activities for which the school district is responsible, or [are] otherwise being discriminated by the public entity," and (3) Plaintiffs' exclusion, denial of benefits, or discrimination will be by reason of their disability. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004). Evidence of intentional discrimination is not necessary when a plaintiff is only seeking equitable relief. *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 574 (5th Cir. 2018).

Plaintiffs will likely prevail on the merits because they are qualified individuals with disabilities under the ADA and Section 504, and a mask-optional policy will have the effect of excluding these children from school activities with other children, or otherwise denying them the opportunity to participate in the services of the school district because they will either have to stay at home to guarantee their health and safety, or expose themselves to serious risk of illness or death by appearing for in-person classes in the absence of basic COVID-19 prevention strategies.

Governor Abbott's Executive Order and TEA's Public Health Guidance specifically violate the regulations and provisions of the ADA and Section 504, and/or cause Plaintiffs' School Districts to violate the regulations and provisions of the ADA and Section 504, as follows:

- Defendants are failing to make a reasonable modification, and/or are preventing Plaintiffs' School Districts from making a reasonable modification, under circumstances where it is required, in violation of 28 C.F.R. § 35.130(b)(7);

- Defendants are excluding, and/or are causing Plaintiffs' School Districts to exclude, Plaintiffs from participation in public education, in violation of 42 U.S.C. § 12132; 28 C.F.R. § 35.130; 29 U.S.C. § 794(a) and 34 C.F.R. § 104.4(b)(1)(i);

- Defendants are failing to make, and/or causing Plaintiffs' School Districts to fail to make, their services, programs, and activities "readily accessible" to disabled individuals, in violation of 28 C.F.R. § 35.150;

- Defendants are administering a policy that has the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability and that has the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities, in violation of 28 C.F.R. § 35.130(b)(3)) and 34 C.F.R. § 104.4(b)(4).

- Defendants are using methods of administration that have the effect of subjecting Plaintiffs to discrimination on the basis of disability, in violation of 34 C.F.R. § 104.4(b)(4);

Although all school children, particularly those under age 12 who are ineligible to receive the vaccine, face an increased risk of contracting COVID-19 in the absence of a mask mandate, students with certain medical disabilities will be significantly more impacted without this basic protection. Plaintiffs have the following medical disabilities that have been shown to put them at greater risk for being hospitalized, becoming severely ill, or dying as a result of COVID-19:

- J.V. is eleven years old and has muscular disorders and moderate to severe asthma. Ex. R.

- E.T. is eleven years old and has been diagnosed with Down syndrome, asthma, hypogammaglobulinemia, and a severe B-cell lymphocyte deficiency, which has resulted in a suppressed immune system. Ex. H.

- H.M. is eight years old and has Down syndrome, a heart defect, and a history of bronchomalacia. Ex. P.

- N.C. is eight years old and has Sanfilippo Syndrome type A, which is a type of childhood dementia and a neurological disorder. Ex. J.

- J.G. is seven years old and is immunocompromised due to having received a heart transplant. Prior to the COVID-19 pandemic, J.G. has been hospitalized approximately 20 times for contracting various infectious diseases due to her immunodeficiency. Ex. O.

- M.P. is eleven years old and was born with Down syndrome. Ex. M.

- H.P. is eleven years old and has been diagnosed with epilepsy, autism, and a SCN2A genetic-related disorder, which causes a wide range of neurological conditions. Ex. L.

- S.P. is eight years old and has bronchiectasis, attention deficit hyperactivity disorder, spina bifida and epilepsy. Ex. Q.

- R.S. is eleven years old and was born with Down syndrome. Ex. G.

- J.R. is eight years old and has attention deficit hyperactivity disorder, a growth hormone deficiency, and moderate to severe asthma. Ex. K.

- E.S. is seven years old and has moderate to severe asthma. Ex. N.

- E.R. is seven years old and has a chronic lung condition and moderate to severe asthma. Ex. F.

- A.M. is eight years old and has cerebral palsy. Ex. I.

If they contract COVID-19, each of these Plaintiffs are at a high risk of significant complications such as severe illness, long-lasting disability, and death. Ex. D ¶¶ 7, 13-18.

### ii.    Count III: Federal Preemption

Plaintiffs are also likely to succeed on the merits of their claim based on federal preemption law. The Supremacy Clause of the United States Constitution renders federal law the "supreme Law of the Land." U.S. CONST. art. VI, cl. 2. The doctrine of federal preemption that arises out of the Supremacy Clause requires that "any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Felder v. Casey*, 487 U.S. 131, 138 (1988) (quoting *Free v. Bland*, 369 U.S. 663, 666, 82 S. Ct. 1089, 8 L.Ed.2d 180 (1962)).  State law is preempted when, among other things, it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Pac. Gas & Elec. Co. v. State Energy Res. Cons. & Dev. Comm'n*, 461 U.S. 190, 204 (1983).

Governor Abbott's Executive Order and TEA's Public Health Guidance conflict with federal law because they frustrate Congress' purpose to ensure that local school districts have the authority to adopt public health policies, including mask requirements, to protect students and educators as they develop plans for safe return to in-person instruction.  Under section 2001(i) of the American Rescue Plan Act of 2021 (ARP), local school districts in Texas – including the districts in which Plaintiffs attend school – have been allocated over $11 billion dollars in Elementary and Secondary School Emergency Relief (ESSER) funding so that they can adopt plans for a safe return to in-person instruction.[39] Pub. L. No. 117-2, § 2001(i). Section 2001(e)(2)(Q) of the ARP Act explicitly gives local school districts the authority to use these ARP ESSER funds for "developing strategies and implementing public health protocols ***including, to the greatest extent practicable, policies in line with guidance from the Centers for Disease***

*Control and Prevention* for the reopening and operation of school facilities to effectively maintain the health and safety of students, educators, and other staff." *Id*. § 2001(e)(2)(Q) (emphasis added). As discussed above, the CDC's guidance specifically recommends universal indoor masking in all K-12 schools.

Furthermore, interim final requirements adopted by the U.S. Department of Education specifically require each local school district to adopt a plan for safe return to in-person instruction that describes "the extent to which it has adopted policies, and a description of any such policies, on each of the following safety recommendations established by the CDC…", specifically including "universal and correct wearing of masks." *See* Am. Rescue Plan Act Elementary and Secondary School Emergency Relief Fund, 86 Fed. Reg. 21195, 21200 (April 22, 2021). To be clear, the requirement "does not mandate that [a local educational agency] adopt the CDC guidance, but only requires that [it] describe in its plan the extent to which it has adopted the key prevention and mitigation strategies identified in the guidance," which include both "[u]niversal and correct wearing of masks," and notably "appropriate accommodations for children with disabilities with respect to health and safety policies," among others. *Id*. The interim requirements further provide that a local educational agency must ensure the interventions it implements will respond to the needs of all students, "and particularly those students disproportionately impacted by the COVID-19 pandemic, including . . . children with disabilities." *Id*.

In other words, it is the legislative purpose and intention of Congress, both as set forth in the statute itself and as interpreted by the Department of Education, that local school districts— and not the state—have the authority to decide whether and to what extent they will adopt public health policies, including mask requirements, consistent with CDC guidance. Governor Abbott's

Executive Order and TEA's Public Health Guidance impermissibly conflict with and are preempted by this federal law.

### C. Plaintiffs Will Be Irreparably Harmed Without a Temporary Restraining Order or Preliminary Injunction.

Plaintiffs must show that "irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A harm need not be inevitable or have already happened for it to be irreparable; rather, imminent harm is also cognizable harm that merits an injunction. *See Helling v. McKinney*, 509 U.S. 25, 33 (1993). Plaintiffs are likely to suffer probable, irreparable injury if the Executive Order and Public Health Guidance are enforced because the first day of school has either already begun or is about to begin within the next two weeks, and under Executive Order GA-38 and TEA's Public Health Guidance, schools are prohibited from requiring face coverings. Without the ability for the school districts to implement a mask policy, Plaintiffs will certainly be exposed to an increased risk of infection, hospitalization, or death because of COVID-19, or otherwise be forced to stay home and be denied the benefits of an in-person public education.

Plaintiffs are particularly vulnerable to the virus both because of their medical conditions and the fact that they remain ineligible to receive the vaccine due to being under the age of 12 years old. *See* Exs. F–R. It is inarguable that exposure to a life-threatening virus, or one that may cause lifelong complications, is an irreparable harm incapable of being adequately remedied at law with money damages. *See Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir. 1975); *Peregrino Guevara v. Witte*, No. 6:20-CV-01200, 2020 WL 6940814, at *8 (W.D. La. Nov. 17, 2020) (noting that "[i]t is difficult to dispute that an elevated risk of contracting COVID-19 poses a threat of irreparable harm"); *Thakker v. Doll*, 451 F. Supp. 3d 358, 365 (M.D. Pa. 2020) (in granting an injunction to release petitioners in civil detention who suffered from "chronic medical conditions and face[d]

an imminent risk of death or serious injury if exposed to COVID-19," court determined that "[t]here [could] be no injury more irreparable" than the "very real risk of serious, lasting illness or death"); *Basank v. Decker*, No. 20 CIV. 2518 (AT), 2020 WL 1953847, at *7 (S.D.N.Y. Apr. 23, 2020) (in granting an injunction to prevent placing petitioners in immigration detention, court noted that "[p]etitioners [were] at particular risk for serious illness or death, because their preexisting medical conditions either [made] them more vulnerable to contracting COVID-19, or more likely to develop serious complications due to COVID-19, or both" and the possibility of a severe, and "quite possibly fatal" infection constituted irreparable harm that warranted a preliminary injunction).

    **D.**     **The Irreparable Harm Caused to Plaintiffs Outweighs the Hardship to Defendants, and a Temporary Restraining Order and Preliminary Injunction Will Not Disserve the Public Interest.**

The only hardship that Defendants may suffer from a temporary restraining order and preliminary injunction is disappointment by certain constituents who are opposed to mask mandates. Indeed, given that the Executive Order is preempted by federal law for the reasons set forth above, enjoining its enforcement will not subject Defendants to any undue hardship or penalty, because the temporary restraining order and preliminary injunction will require only Defendants' compliance with federal law under the Supremacy Clause. *See Greyhound Lines, Inc. v. City of New Orleans ex rel. Dep't of Pub. Utils.*, 29 F. Supp. 2d 339 (E.D. La. 1998) (*citing Mitchell v. Pidcock*, 299 F.2d 281, 287 (5th Cir. 1962)). Granting a temporary restraining order and preliminary injunction will not only protect Plaintiffs but will protect all students in the Texas public school system. At this stage of the pandemic, the Delta variant has caused a spike in cases among people of all ages, but particularly children, for reasons that are not yet fully understood. As reported widely by the media, local governments are wrestling daily with the complex and politically controversial issue of how to ensure that students can return safely to in-person classes

this year after a challenging period of virtual learning for parents and students alike. It is in the public's best interest for its local government and school boards to have full authority to respond to the needs of its citizenry by taking into account county-wide infection and hospitalization rates, available resources, vaccination rates, public opinion, and the number of other factors that guide public policy during a pandemic. The Executive Order and TEA's Public Health Guidance effectively undermine and handicap this important pillar of governance.

E.     **Plaintiffs Will Suffer Irreparable Harm if a Temporary Restraining Order is Not Entered Before the Preliminary Injunction Hearing.**

As detailed above, four school districts have already temporarily closed due to COVID-19 outbreaks, and other school districts have just begun or will soon begin in-person classes. Plaintiffs, all of whom are considered high risk due to their health conditions described above, will be exposed to a heightened risk of infection, hospitalization, or death because of their respective school district's inability to consider, much less implement, the most basic safety precaution against COVID-19. As shown by the four districts that have closed to-date, extending out the enforcement of Executive Order GA-38 by more than a matter of days can result in further outbreaks and instances of Plaintiffs' exposure to unmasked, unknowingly COVID-19-postive students or staff. Unless the Court enters a Temporary Restraining Order, Plaintiffs will have to choose between their safety and receiving an in-person education. Accordingly, Plaintiffs

respectfully request the Court enter a temporary restraining order until such time that the Court can hold a preliminary injunction hearing.

As noted in the Certificate of Service below, the undersigned counsel for Plaintiffs is simultaneously providing the Defendants and attorneys with the Texas Attorney General's Office notice of this Motion and the relief sought herein by hand delivery and/or email.

## III.   CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that this Court enter a temporary restraining order and preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a), in the form attached hereto as Exhibit G, that enjoins Defendants from enforcing Sections 3(b), 3(e), 3(g) and 4 of Executive Order No. GA-38, as well as TEA's Public Health Guidance, to the extent that they prohibit local school districts from requiring masks for their students and staff.

Dated: August 18, 2021                      Respectfully submitted,

/s/ Thomas M. Melsheimer
Thomas M. Melsheimer
Texas Bar No. 13922550
tmelsheimer@winston.com
Scott C. Thomas
Texas Bar No. 24046964
scthomas@winston.com
Alex Wolens
Texas Bar No. 24110546
John Michael Gaddis (*application pending*)
Texas Bar No. 24069747
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500
(214) 453-6400 (fax)

Brandon W Duke (*application pending*)
Texas Bar No. 240994476

bduke@winston.com
**WINSTON & STRAWN LLP**
800 Capitol St., Suite 2400
Houston, TX 77002
Tel. 713-651-2600
(713) 651-2700 (fax)

Dustin Rynders (*application pending*)
Texas Bar No. 24048005
drynders@drtx.org
**DISABILITY RIGHTS TEXAS**
1500 McGowen, Suite 100
Houston, Texas 77004
(713) 974-7691
(713) 974-7695 (fax)

L. Kym Davis Rogers
Texas Bar No. 00796442
krogers@drtx.org
**DISABILITY RIGHTS TEXAS**
1420 W. Mockingbird Lane, Suite 450
Dallas, Texas 75247
(214) 845-4045
(214) 630-3472 (fax)

Robert Winterode
Texas Bar No. 24085664
rwinterode@drtx.org
**DISABILITY RIGHTS TEXAS**
2211 E. Missouri, Suite 243
El Paso, Texas 79903
(210) 424-9652
(915) 542-2676 (fax)

Brian East
Texas Bar No. 06360800
beast@drtx.org
Peter Hofer
Texas Bar No. 09777275
phofer@drtx.org
**DISABILITY RIGHTS TEXAS**
2222 West Braker Lane
Austin, Texas 78758
(512) 407-2745
(512) 454-3999 (fax)

**ATTORNEYS FOR PLAINTIFFS**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 18, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.  I also certify that the Complaint in this case, this Motion, and the proposed order on were served via hand delivery. I also certify that a copy of the foregoing was provided to attorneys at the Office of the Texas Attorney General who have appeared on behalf of one or more of the Defendants in prior actions.

<u>/s/ Thomas M. Melsheimer</u>
Thomas M. Melsheimer