UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| E.T., by and through her parents and next friends; J.R., by and through her parents and next friends; H.M., by and through her parents and next friends; E.S., by and through her parents and next friends; M.P., by and through her parents and next friends; S.P., by and through her parents and next friends; and A.M., by and through her parents and next friends. | ) ) ) ) ) ) ) ) | |
| | ) ) | Civil Action No. 1:21-CV-00717-LY |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| MIKE MORATH, in his official capacity as the COMMISSIONER of the TEXAS EDUCATION AGENCY; the TEXAS EDUCATION AGENCY; and ATTORNEY GENERAL KENNETH PAXTON, in his official capacity as ATTORNEY GENERAL OF TEXAS, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

SECOND AMENDED COMPLAINT

Plaintiffs, by and through their parents and next friends, bring this action for declaratory and injunctive relief, and allege as follows:

INTRODUCTION

1.     As COVID-19 infection rates rise in Texas, so do the enforcement actions of Defendant Attorney General Paxton and Defendant TEA Commissioner Morath to enforce Governor Texas Greg Abbott's Executive Order GA-38[1] prohibiting governmental entities from imposing a mask requirement, including lawsuits against school districts.  These enforcement

---

[1]     Governor Abbott's Executive Order is attached as Exhibit A.

actions are to prevent school districts from adopting universal masking requirements as a safety measure to address local spread of COVID-19 to ensure safe in-person education of students.

2.      Plaintiffs bring this suit because the Executive Order violates federal antidiscrimination law under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504"), which prohibit the exclusion of students with disabilities from public educational programs and activities. Plaintiffs are students with disabilities and underlying medical conditions that carry an increased risk of serious complications or death in the event that they contract COVID-19.  These conditions include Down syndrome, moderate to severe asthma, chronic lung and heart conditions, cerebral palsy, and weakened immune systems and have been identified by the Centers for Disease Control ("CDC") as risk factors for severe COVID-19 infection.  Six plaintiffs are under the age of 12 years old, rendering them ineligible to receive the vaccine under current Food and Drug Administration ("FDA") regulations; one plaintiff is unlikely to benefit from the vaccine due to an immunosuppressed condition.  Under Executive Order GA-38 and Public Health Guidance issued by the Texas Education Agency ("TEA"),[2] school districts are prohibited from implementing basic COVID-19 prevention strategies based on individual needs, and thus have been unable to fulfill their obligations under the ADA and Section 504 to these students.

3.      GA-38 is thus preempted by the above federal laws. It is further preempted by federal law that specifically authorizes school districts to implement safety measures as classes begin for the 2021-2022 school year.  The American Rescue Plan Act of 2021 ("ARP Act") has allocated billions of dollars in emergency relief funding to school districts and explicitly authorizes using these funds for "developing strategies and implementing public health protocols including,

_____

[2]      The Public Health Guidance issued by the TEA is attached as Exhibit B.

to the greatest extent practicable, policies in line with guidance from the Centers for Disease Control and Prevention." Pub. L. No. 117-2, 135 Stat. 4 § 2001(e)(2)(Q). As the Department of Education's Interim Final Requirement makes clear, this specifically includes the CDC's recommendation for universal indoor masking in K-12 schools. 86 Fed. Reg. 21195-01, 21200 (Apr. 22, 2021) (to be codified at 34 C.F.R. ch. II). Thus, Executive Order GA-38 is in irreconcilable conflict with federal law because it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress as set forth in the ARP Act and the Department of Education's Requirement.

4.      In response to rising infections caused by the hyper-contagious Delta variant, the CDC updated its "Guidance for COVID-19 Prevention in K-12 Schools" to recommend "universal indoor masking for all students, staff, teachers, and visitors to K-12 schools, regardless of vaccination status," noting that "protection against exposure remains essential in school settings." The Texas Medical Association, Texas Pediatric Society, and Texas Public Health Coalition have also called for universal masking in schools.

5.      Governor Abbott has indicated that he too recognizes the benefits of mask-wearing. Executive Order GA-38 exempts government-owned hospitals and correctional facilities from its reach by permitting these entities to "continue to use appropriate policies regarding the wearing of face coverings." And, in a previous Executive Order GA-29 issued in July 2020, Governor Abbott required Texans to wear masks inside commercial buildings or public spaces in counties that exceeded certain thresholds of positive cases.[3]

---

[3] Indeed, Governor Abbott emphasized at that time that wearing masks "is the best strategy you can use to make sure that you and others do not contract COVID-19," citing a Texas A&M study on face masks. SBG San Antonio, *Gov. Abbott: 'Masks are our best option' against COVID-19 spike*, June 24, 2020, https://news4sanantonio.com/news/local/gov-abbott-masks-are-our-best-option-against-COVID-19-spike; *see also* Keith Randall, Texas A&M Study: Face Masks Critical

6.   Most Texas public schools began in-person classes in August.[4] But the excitement of the school year beginning—especially after a long, challenging period of virtual learning—has been clouded by national reports of increasing pediatric infections and hospitalizations, with child infections increasing from 12,000 cases nationwide in the first week of July, up to 96,000 in the first week of August, with the latest figure representing about 15% of all new infections, according to the American Academy of Pediatrics.[5] As noted by one publication, "child hospitalizations have now reached an all-time pandemic high."[6]

7.   In spite of national and local guidance urging precaution, GA-38 prohibits local school districts from even considering whether to implement the most basic and effective COVID-19 prevention strategy in school settings.  Following the Governor's order, the TEA which has legal authority to publish requirements for public schools, announced in its "Public Health

---

In Preventing Spread Of COVID-19, Texas A&M Today, June 12, 2020 ("A study by a team of researchers led by a Texas A&M University professor has found that not wearing a face mask dramatically increases a person's chances of being infected by the COVID-19 virus."). https://today.tamu.edu/2020/06/12/texas-am-study-face-masks-critical-in-preventing-spread-of-COVID-19/.

[4]   E.g., San Antonio ISD began classes on August 9, 2021 (https://www.saisd.net/upload/page/0456/docs/SAISD_2021-22_InstructionalCalendar.pdf); Fort Bend ISD began classes on August 11, 2021 (https://www.fortbendisd.com/calendar#calendar1/20210811/day); Dallas ISD and Fort Worth ISD began classes on August 16, 2021 (https://thehub.dallasisd.org/2021/04/20/see-the-dallas-isd-2021-2022-school-year-calendars/) (https://www.fwisd.org/calendar#calendar1/20210814/month); Austin ISD began on August 17, 2021 (https://www.austinisd.org/calendar). Houston ISD and Waco ISD began on August 23, 2021 (https://www.houstonisd.org/2021AcademicCalendar); (https://www.wacoisd.org/Page/2#calendar1/20210814/month).

[5]   https://services.aap.org/en/pages/2019-novel-coronavirus-COVID-19-infections/children-and-COVID-19-state-level-data-report/

[6]   Katherine J. Wu, *Delta Is Bad News for Kids*, The Atlantic, Aug. 10, 2021, https://www.theatlantic.com/health/archive/2021/08/delta-variant-COVID-children/619712/.

Guidance" that, "[p]er GA-38, school systems cannot require students or staff to wear a mask." Therefore, the Executive Order has the perverse effect of prohibiting local school district leaders from addressing this pandemic as they deem appropriate for their respective school districts.

8.      If school districts are unable to implement COVID-19 protocol as they each deem appropriate, parents of medically vulnerable students will have to decide whether to keep their children at home or risk placing them in an environment that presents a serious risk to their health and safety. In this regard, the Attorney General and TEA's active enforcement of GA-38 and TEA's Public Health Guidance unlawfully prevent school districts from complying with the ADA and Section 504's requirement to provide students with disabilities access to a public-school education.  They also conflict with and are preempted by the ARP Act because they frustrate the intention of Congress that local school districts be able to use emergency relief funding to develop public health policies, including universal masking, that are consistent to the greatest extent practicable with CDC guidance.

9.      Attorney General Paxton first threatened to enforce the mask provisions of GA-38 against specific school districts, and his filing of a lawsuit to enforce against San Antonio Independent School District the vaccine-related provisions of GA-38 shows that Attorney General Paxton is enforcing the mask-related provisions of GA-38 against school districts.   Indeed, Attorney General Paxton sent to certain school districts who wish to require masks for their students' safety letters threatening to file lawsuits to enforce GA-38's mask provision by enjoining such school districts from implementing mask requirements.[7]   Attorney General Paxton has also

---

[7] Ex. B.

published a list of school districts he views as out of compliance with GA-38's mask requirements[8] and has solicited parents to email his office information about school districts that attempt to implement mask requirements.[9]

10. Attorney General Paxton also tweeted his willingness to sue to enforce GA-38:[10]



11. Moreover, in Attorney General Paxton's lawsuit against San Antonio Independent School District, which Attorney General Paxton filed to enforce GA-38's vaccine-related

---

[8] Attorney General Paxton, COVID -19: List of Government Entities Unlawfully Imposing Mask Mandates, https://www.texasattorneygeneral.gov/covid-governmental-entity-compliance (last Updated: 8/31/2021, 9:22am CT).

[9] Ex. C.

[10] Ex. D., ¶ 27.

provisions by preventing San Antonio Independent School District from requiring its employees to be vaccinated against COVID 19, Attorney General Paxton purports to have the authority to enforce GA-38's provisions via civil lawsuit.  For example, the Attorney General's lawsuit posits that "[t]he State is the guardian and protector of all public rights and has authority to sue to redress any violations of those rights."[11]  The lawsuit states also that San Antonio Independent School District's challenged policy is "preempted and otherwise barred by GA-38,"[12] and the lawsuit requests prospective relief enjoining San Antonio Independent School District from implementing a vaccine requirement in violation of GA-38.[13]  In short, Attorney General Paxton purports to have the authority to enforce GA-38 via at least civil lawsuit and has demonstrated his willingness to do so.

12.     When not all districts caved to his threats, Defendant Paxton filed lawsuits against fifteen school districts (including two attended by plaintiffs): Richardson ISD, Round Rock ISD, Diboll ISD, Elgin ISD, Galveston ISD, Honey Grove ISD, La Vega ISD, Longview ISD, Lufkin ISD, McGregor ISD, Midway ISD, Paris ISD, Sherman ISD, Spring ISD, and Waco ISD to enforce GA-38.[14]

13.     Defendant Paxton's recent tweets also indicate his intent to continue his lawsuits seeking to enforce GA-38: "I filed suit against 9 more Texas schools in violation of GA-38. We will continue until we have law and order."[15]

---

[11] *Id.* ¶ 34.
[13] *Id.* "Prayer," ¶¶ A, B.
[13] *Id.* "Prayer," ¶¶ A, B.
[14] *E.g.*, Ex. E.
[15] https://twitter.com/KenPaxtonTX/status/1437822407700533250?s=20.

14.     In addition to publishing the Public Health Guidance, TEA is working with Defendant Paxton to enforce GA-38 by regularly providing his office with list of school districts that are reported to TEA as mandating masks.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and 28 U.S.C. §§ 2201–2022.

16.     Venue is proper in the United States District Court for the Western District of Texas, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred and continue to occur in this district.

## PARTIES

### A.     Plaintiffs

17.     E.T.'s parents and next friends, A.T. and A.T., bring this action on her behalf. E.T. is an eleven-year-old girl with Down syndrome, moderate to severe asthma, hypogammaglobulinemia, a CD19 deficiency, a severe B-cell lymphocyte deficiency, and a compromised immune system. E.T. resides with her parents in Williamson County. E.T. has been identified by her school as a student with a disability.

18.     Plaintiff A.M.'s parents and next friends, C.M. and B.M., bring this action on his behalf. A.M. is an eight-year-old boy with cerebral palsy. A.M. resides with his parents in Bexar County. A.M. has been identified by his school as a student with a disability.

19.     E.S.'s parent and next friend, M.M., brings this action on her behalf. E.S. is a seven-year-old girl with moderate to severe asthma. E.S. resides with her parent in Bell County.

20.     J.R.'s parents and next friends, J.R. and J.R., bring this action on her behalf.  J.R. is an eight-year-old girl with moderate to severe asthma.  J.R. resides with her parents in Bexar County.  J.R. has been identified by her school as a student with a disability.

21.     H.M.'s parents and next friends, R.M. and S.M., bring this action on his behalf. H.M. is an eight-year-old boy with Down syndrome, a heart defect, and a history of bronchomalacia.  H.M. resides with his parents in Travis County.  H.M. has been identified by his school as a student with a disability.

22.     M.P.'s parents and next friends, K.P. and J.P., bring this action on her behalf.  M.P. is an eleven-year-old girl with Down syndrome.  M.P. resides with her parents in Fort Bend County.  M.P. has been identified by her school as a student with a disability.

23.     S.P.'s parents and next friends, S.P. and M.P., bring this action on his behalf.  S.P. is a eight-year-old boy with bronchiectasis, spina bifida, attention deficit hyperactivity disorder, and epilepsy.  S.P. resides with his parents in Dallas County.  S.P. has been identified by his school as a student with a disability.

**B.     Defendants**

24.     Defendant Mike Morath is the Commissioner of the TEA, and as such is responsible for the acts and omissions of the TEA.  Defendant Morath is sued in his official capacity, and he may be served at 1701 North Congress Ave., Austin, Texas 78701.  The TEA is a public entity within the meaning of the Americans with Disabilities Act, 28 C.F.R. § 35.104, and a recipient of federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. § 794(a).

25.     Defendant Texas Education Agency is an agency of the state of Texas and is responsible for issuing requirements for the operation of public-school systems in Texas during the COVID-19 pandemic.  TEA will be served through its Commissioner, Mike Morath, at 1701 North Congress Avenue, Austin, Texas 78701.  TEA is a public entity within the meaning of the

Americans with Disabilities Act, 28 C.F.R. § 35.104, and a recipient of federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. § 794(a).

26.     Defendant Kenneth Paxton is the Attorney General of the state of Texas and is the head of the Office of the Attorney General.  As discussed in this Second Amended Complaint, Defendant Paxton has been enforcing the executive order at issue in this action, including by filing lawsuits against multiple school districts to enjoin violations of the order.  Defendant Paxton is sued in his official capacity as Attorney General of the state of Texas and as head of the Office of the Attorney General, and he may be served at 300 W 15th Street, Austin, Texas 78701.  The state of Texas and the Office of the Attorney General are public entities within the meaning of the Americans with Disabilities Act, 28 C.F.R. § 35.104, and recipients of federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. § 794(a).

## FACTS

27.     Governor Abbott's Executive Order GA-38 and TEA's Public Health Guidance prohibit local school districts and public health authorities from assessing the risks that students and children in their communities currently face from COVID-19.  By preventing local entities from adopting mask requirements for their students and staff in line with current CDC guidance, Defendant Paxton and TEA's enforcement of GA-38 and the Public Health Guidance will prevent and has prevented Plaintiffs and other students with disabilities from safely returning to school for in-person instruction without serious risk to their health and safety, in violation of the ADA and Section 504 and in irreconcilable conflict with the purposes and objectives of Congress as set forth in the American Rescue Plan Act of 2021.  As a result, Defendant Paxton and Commissioner Morath have erected an unlawful barrier, which will impact many students with disabilities and prevent local school districts and communities from providing a safe learning environment for their most vulnerable students.

A.     **The Current State of the COVID-19 Pandemic**

28.     The history of the COVID-19 pandemic is well-known,[16] and an extensive body of evidence shows that COVID-19 is a highly communicable respiratory virus that spreads through close contact.[17]

29.     Since the inception of the pandemic, more than three million positive cases of COVID-19 in Texas have been logged, and more than 50,000 Texans have died.  COVID-19 hospitalizations peaked in Texas in January 2021 when almost 15,000 Texans were lying in hospital beds due to COVID-19 complications.  The number of deaths, hospitalizations, and infections began declining in early 2021 once vaccines became available in Texas. And by June 2021, the number of COVID-19 hospitalizations had decreased to fewer than 1,500 Texans.

30.     The medical landscape drastically changed in late summer with the arrival of the highly contagious and virulent Delta variant of COVID-19.[18]  The number of newly reported cases, hospitalizations, and deaths due to COVID-19 have all increased sharply.[19]

---

[16] The World Health Organization officially adopted the name COVID-19 for the novel coronavirus that causes Coronavirus Disease 2019 on February 11, 2020, WHO Twitter Post (Feb. 11, 2020), https://twitter.com/WHO/status/1227248333871173632?s=20.

[17] CDC, Scientific Brief: SARS-CoV-2 Transmission, May 7, 2021, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/sars-cov-2-transmission.html ("The principal mode by which people are infected with [COVID-19] is through exposure to respiratory fluids carrying infectious virus. Exposure occurs in three principal ways: (1) inhalation of very fine respiratory droplets and aerosol particles, (2) deposition of respiratory droplets and particles on exposed mucous membranes in the mouth, nose, or eye by direct splashes and sprays, and (3) touching mucous membranes with hands that have been soiled either directly by virus-containing respiratory fluids or indirectly by touching surfaces with virus on them.").

[18] CDC, Delta Variant: What We Know About the Science, Aug. 6, 2021, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (noting that the Delta variant is "more than 2x as contagious as previous variants" and studies indicated that "patients infected with the Delta variant were more likely to be hospitalized").

[19] NY Times, Tracking Coronavirus in Texas: Latest Map and Case Count (Aug. 13, 2021), https://www.nytimes.com/interactive/2021/us/texas-COVID-cases.html (showing increases of

31.     The state's medical system is at an unprecedented and unfortunate tipping point. Multiple municipalities, including the Cities of San Antonio and Houston, have experienced extended intervals with no available EMS units to respond to emergency calls or prolonged wait times.[20]  The surging hospitalization rate has created an ICU bed shortage throughout the state of Texas with some cities having zero available beds and patients in critical condition having to wait hours for beds.[21]  Notably, a lack of pediatric ICU beds has forced young patients to be transported across the state or to out-of-state hospitals to receive medical care.[22]

32.     This data is particularly troubling for students and school districts because the Delta variant and the ongoing exponential growth in cases are threatening the fast-approaching school year.  Texas schoolchildren under the age of 12 cannot currently receive COVID-19 vaccinations, and 99.5% of the COVID-19 deaths since February 2021 were people who were unvaccinated.  At the same time, currently less than 50% of the Texas population is fully vaccinated against the virus.

---

72% of positive cases, 94% of hospitalizations, and 128% in deaths due to COVID-19 over the 14-day period prior to August 13, 2021).

[20] Kathleen Creedon, "For 26 Minutes Thursday, No EMS Units Were Available in San Antonio," Texas Public Radio, August 13, 2021, https://www.tpr.org/san-antonio/2021-08-13/for-26-minutes-thursday-no-ems-units-were-available-in-san-antonio; Travis Caldwell, "'I am frightened by what is coming': The struggle to keep Texas hospitals staffed as COVID-19 surges," CNN, August 12, 2021, https://www.wvtm13.com/article/i-am-frightened-by-what-is-coming-the-struggle-to-keep-texas-hospitals-staffed-as-COVID-19-surges/37291263#; Juan A. Lozano, "COVID cases pushing Houston hospitals to near breaking point," Associated Press, August 6, 2021, https://apnews.com/article/business-health-coronavirus-pandemic-houston-93ba953777111d602dced45dc1d7725b.

[21] "Dozens of Texas hospitals are out of ICU beds as COVID-19 cases again overwhelm the state's capacity," Reese Oxner, Aug. 10, 2021, Texas Tribune, https://www.texastribune.org/2021/08/10/coronavirus-texas-hospitals-icu-beds/.

[22] *Id.*  For example, as of August 10, 2021, only two pediatric beds were available for all of North Texas. Dallas Morning News, Aug. 10, 2021, https://www.dallasnews.com/news/public-health/2021/08/10/in-north-texas-intensive-care-bed-space-is-running-out-only-2-pediatric-icu-spots-remain-in-region/ ("In North Texas, intensive care bed space is running out[.]")

33.     Data also shows children are infected with the Delta variant at much higher rates than previous virus strains, especially those who are unvaccinated (including those 5 to 12 years old who are not yet eligible to receive a vaccine).[23]   According to the American Academy of Pediatrics, "the Delta variant has created a new and pressing risk to children and adolescents across this country."[24]   Pediatric cases of COVID-19 have been "skyrocketing alongside cases among unimmunized adults."[25]   For the week ending July 29, 2021, "nearly 72,000 new coronavirus cases were reported in kids—almost a fifth of all total known infections in the U.S., and a rough doubling of the previous week's stats."[26] The next week the number of new coronavirus cases in children jumped to almost 94,000.[27]   As the American Academy of Pediatrics explained: "The higher proportion of cases in this population means this age group could be contributing in driving continued spread of COVID-19.  Sadly, over 350 children have died of COVID since the start of pandemic and millions of children have been negatively impacted by missed schooling, social isolation, and in too many cases, the death of parents, family members, and other caregivers."[28]

---

[23] Yale Medicine, Five Things to Know About the Delta Variant, updated Aug. 9, 2021, *available at* https://www.yalemedicine.org/news/5-things-to-know-delta-variant-COVID (noting that a recent study "showed that children and adults under 50 were 2.5 times more likely to become infected with Delta").

[24] AAP President's Letter to Acting Commissioner of the FDA, August 5, 2021, https://downloads.aap.org/DOFA/AAP%20Letter%20to%20FDA%20on%20Timeline%20for%20Authorization%20of%20COVID-19%20Vaccine%20for%20Children_08_05_21.pdf.

[25] Katherine J. Wu, Delta Is Bad News for Kids, The Atlantic, Aug. 10, 2021, https://www.theatlantic.com/health/archive/2021/08/delta-variant-COVID-children/619712/.

[26] *Id.*

[27] *Id.*

[28] AAP President's Letter to Acting Commissioner of the FDA, August 5, 2021, https://downloads.aap.org/DOFA/AAP%20Letter%20to%20FDA%20on%20Timeline%20for%20Authorization%20of%20COVID-19%20Vaccine%20for%20Children_08_05_21.pdf ("[T]he Delta variant has created a new and pressing risk to children and adolescents across this country.").

**B.     COVID-19 Poses an Extreme Risk to a Large Number of Young Students with Disabilities**

34.     School-aged children with certain disabilities, including a range of underlying medical conditions, face a higher rate of severe illness from COVID-19 as compared to other children without those underlying medical conditions. According to the CDC, "children with medical complexity, with genetic, neurologic, metabolic conditions, or with congenital heart disease can be at increased risk for severe illness from COVID-19."[29]  And as with adults who face increased risks, "children with obesity, diabetes, asthma or chronic lung disease, sickle cell disease, or immunosuppression can also be at increased risk for severe illness from COVID-19."[30] Texas school districts regularly serve students with these exact disabilities—moderate to severe asthma, chronic lung and heart conditions, cerebral palsy, Down syndrome, obesity, and weakened immune systems are common.  Asthma alone impacts ten percent of school-age children.[31]

**C.     COVID-19 Prevention in K-12 Schools**

35.     The COVID-19 pandemic has dramatically affected students with disabilities, beginning with the closure of the public school system in the spring of 2020.  While school districts across Texas have been on the front lines this pandemic, many students lost critical instruction and services, which has persisted into the 2020-21 school year.

---

[29] Centers for Disease Control, *COVID-19: People with Certain Medical Conditions*, May 13, 2021, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[30] *Id*.

[31] *Percentage of ever having asthma for children under age 18 years, United States, 2019*, Nat'l Ctr. for Health Stat., Aug. 14, 2021, https://wwwn.cdc.gov/NHISDataQueryTool/SHS_child/index.html.

36.     The American Academy of Pediatrics has explained that "remote learning highlighted inequities in education, was detrimental to the educational attainment of students of all ages, and exacerbated the mental health crisis among children and adolescents."[32]

37.     The detrimental impact on education from the COVID-19 pandemic has been especially alarming for students with disabilities.[33]  As detailed by the Department of Education, COVID-19 has significantly disrupted the education and related aids and services needed to support their academic progress and prevent regression."[34]  Students with disabilities have not only lost critical in-class instruction, they have lost services such as speech and occupational therapy as well as behavioral support and counseling.  Many parents have reported regression.[35]  And there is evidence that the disruption in services and instruction "may be exacerbating longstanding disability-based disparities in academic achievement."[36]

---

[32] AAP, COVID-19 Guidance for Safe Schools, https://services.aap.org/en/pages/2019-novel-coronavirus-COVID-19-infections/clinical-guidance/COVID-19-planning-considerations-return-to-in-person-education-in-schools/ ("Opening schools generally does not significantly increase community transmission, particularly when guidance outlined by the World Health Organization (WHO), United Nations Children's Fund (UNICEF), and **Centers for Disease Control and Prevention (CDC) is followed**.") (emphasis added).

[33] "How America failed students with disabilities during the pandemic," The Washington Post, May 20, 2021, https://www.washingtonpost.com/education/2021/05/20/students-disabilities-virtual-learning-failure/ ("[O]fficials in school districts across the country concede they failed during the crisis to deliver the quality of education that students with disabilities are legally entitled to receive.")

[34] DOE Office of Civil Rights, Education in a Pandemic: The Disparate Impacts of COVID-19 on America's Students, https://www2.ed.gov/about/offices/list/ocr/docs/20210608-impacts-of-covid19.pdf.

[35] E.g., "How America failed students with disabilities during the pandemic," The Washington Post, May 20, 2021, https://www.washingtonpost.com/education/2021/05/20/students-disabilities-virtual-learning-failure//.

[36] DOE Office of Civil Rights, Education in a Pandemic: The Disparate Impacts of COVID-19 on America's Students, https://www2.ed.gov/about/offices/list/ocr/docs/20210608-impacts-of-COVID19.pdf.

38.     It is undisputed that "[s]tudents benefit from in-person learning, and safely returning to in-person instruction in the fall 2021 is a priority."[37]  And students with disabilities need in-person schooling more than other student groups, but they must be able to receive their instruction and services safely.[38]  Many of these students have underlying health conditions and are at high risk for illness and even death due to COVID-19.

39.     While full vaccination is the "leading public health prevention strategy to end the COVID-19 pandemic" and "promoting vaccination can help schools safely return to in-person learning," every school district in this state "serve[s] children under the age of 12 who are not eligible for vaccination at this time."[39] Based on current FDA estimates, a vaccine for students under 12 is not likely to be given emergency authorization until late into the coming school semester at the earliest.[40]

40.     Based on the unavailability of vaccines for a large portion of students and the currently "circulating and highly contagious Delta variant," the CDC currently "recommends universal indoor masking by all students (age 2 and older), staff, teachers, and visitors to K-12

---

[37] CDC, Guidance for COVID-19 Prevention in K-12 Schools, updated Aug. 5, 2021, https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html.

[38] GAO-21-43, Distance Learning: Challenges Providing Services to K-12 English Learners and Students With Disabilities During COVID-19, at 16 (Nov. 2020), https://www.gao.gov/products/gao-21-43 (reporting that "[s]chool officials told [GAO] that delivering related services—such as occupational therapy, physical therapy, or speech therapy—for students with complex needs was particularly difficult in a virtual setting," and that other officials "raised concerns about students not receiving services in the same manner as they did prior to distance learning, including occupational and physical therapy that involved hands-on instruction from therapists or required specialized equipment unavailable in students' homes").

[39] CDC, Guidance for COVID-19 Prevention in K-12 Schools, updated Aug. 5, 2021, https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html.

[40] Erika Edwards, COVID vaccines for kids under 12 expected midwinter, FDA official says, NBC News, https://www.nbcnews.com/health/health-news/vaccines-kids-under-age-12-expected-mid-winter-fda-official-n1274057.

schools, regardless of vaccination status."[41]  And while in general, people "do not need to wear masks in outdoor settings," the CDC also  "recommends that people who are not fully vaccinated wear a mask in crowded outdoor settings or during activities that involve sustained close contact with other people."[42]

41.     The Texas Medical Association, the Texas Pediatric Society, and the Texas Public Health Coalition have all called for universal masking in schools: "Let's face it; if we don't take action, the more infectious COVID-19 delta variant will spread among students when they gather together in schools.  We urge use of every tool in our toolkit to protect our children and their families from COVID-19."[43]  One hundred and twenty-five physicians from Cook Children's Medical Center in Fort Worth wrote to Fort Worth ISD asking for a mask requirement, noting the increase in COVID-19 infections and hospitalizations.[44]

42.     Masking works.  The ABC Science Collaborative, led by top physicians on the staff of Duke University, studied data from 100 school districts in North Carolina, and found that "[w]hen masking is in place, COVID-19 transmission in schools is low."[45]  And "when teachers,

---

[41] CDC, Guidance for COVID-19 Prevention in K-12 Schools, updated Aug. 5, 2021, https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html.

[42] *Id*.

[43] Physicians Encourage Masking and Vaccination of Students, July 28, 2021, https://txpeds.org/physicians-encourage-masking-and-vaccination-students.

[44] Anna Caplan, *"Fort Worth ISD will require masks in schools,"* Dall. Morning News, Aug. 11, 2021, https://www.dallasnews.com/news/2021/08/11/letter-from-125-cook-childrens-physicians-prompts-fwisd-to-mandate-masks-for-school-year/.

[45] The ABC Science Collaborative, Press Conference, Aug. 5, release and recording https://abcsciencecollaborative.org/zimmerman-benjamin-urge-mask-wearing-in-press-conference/.

staff, and students consistently and correctly wear a mask, they protect others as well as themselves."[46]

**D.      Defendant Paxton's Enforcement of Governor Abbott's Order and TEA's Guidance Prevent Local Schools from Adopting Protections Appropriate for Local Students**

43.      Since March 13, 2020, Governor Abbott has recognized by proclamation the "imminent threat" posed by the COVID-19 pandemic for all counties across the State of Texas. He has renewed that proclamation each month with successive executive orders, and each recognizes that the threat caused by the pandemic remains in place today.

44.      Among his executive orders, Governor Abbott issued Executive Order GA-29 in July 2020, which required all Texans to "wear a face covering over the nose and mouth when inside a commercial entity or other building or space open to the public" in counties that exceeded certain thresholds of positive cases unless those counties affirmatively opted out of the mask requirement.   Thus, Governor Abbott has previously recognized the importance of both using masks to help limit and control the spread of COVID-19 and the differences across Texas communities that may require a variety of different approaches with respect to masking.

45.      Despite his prior endorsement of masking as a means of protection from the threat and despite the real threat of COVID-19 that Texans now face from the Delta variant, Governor Abbott issued Executive Order GA-38 on July 29, 2021, which prohibits any requirement by "any jurisdiction to wear or to mandate the wearing of a face covering" and further provides that "the

---

[46] *See also* CDC, Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html ("Experimental and epidemiological data support community masking to reduce the spread of SARS-CoV-2. The prevention benefit of masking is derived from the combination of source control and wearer protection for the mask wearer.").

imposition of any such face-covering requirement by a local government entity or official constitutes a 'failure to comply with' this executive order that is subject to a fine up to $1,000."[47]

46.    Consistent with GA-38, the TEA, which has legal authority to publish requirements for public schools, announced in its August 5, 2021 guidance that, "[p]er GA-38, school systems cannot require students or staff to wear a mask." Then, following a number of lawsuits filed across the State challenging Governor Abbott's authority to issue Executive Order GA-38's prohibition on mask requirements, TEA published guidance on September 2, 2021 stating: "Please note, mask provisions of GA-38 are not being enforced as the result of ongoing litigation." On September 17, with litigation still pending, TEA again reversed course and announced: "Per GA-38, school systems cannot require students or staff to wear a mask. GA-38 addresses government-mandated face coverings in response to the COVID-19 pandemic."

47.    Enforcement of GA-38 and TEA's Public Health Guidance prohibit school districts from requiring the use of masks for students and staff, thereby preventing Plaintiffs and other students with disabilities from safely returning to school in-person, in violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

48.    By refusing to allow school districts or local public health authorities to even consider whether to implement mask requirements as needed to protect the health and safety of the children they serve, Defendants have placed an unlawful barrier for students with disabilities that is preventing our state's most vulnerable students from returning to public schools.

49.    Enforcement of  Order GA-38 and TEA's corresponding Public Health Guidance, which forbid local school districts and public health authorities from having the freedom to

---

[47] Exec. Order GA 38, https://gov.texas.gov/uploads/files/press/EO-GA-38_continued_response_to_the_COVID-19_disaster_IMAGE_07-29-2021.pdf (July 29, 2021).

respond to the ongoing COVID-19 crisis and to require masks for their students and staff, has made it impossible for school districts to provide a safe learning environment for students with disabilities.

50.     There are no viable alternatives for students with disabilities who cannot safely return to school in-person due to GA-38 and TEA's Guidance.  Defendant Paxton and Commissioner Morath's enforcement of GA-38 puts parents in the impossible situation of having to choose between the health and life of their child and educating their child.  Thus, Defendants' actions will have the perverse effect of either placing children with disabilities in imminent danger or unlawfully forcing those children out of the public school system.

**E.     Attorney General Paxton's Enforcement Campaign in Concert with TEA**

51.     Attorney General Paxton is enforcing —and has indicated he will continue to enforce—GA-38's mask provisions.

52.     Attorney General Paxton has sent to school districts that intended to implement mask requirements letters explicitly threatening such school districts with civil suits in which the Attorney General will seek to enjoin the school districts' alleged violations of GA-38's mask provision.[48]

53.     Attorney General Paxton has published a "List of Government Entities Unlawfully Imposing Mask Mandates" that includes the school districts he views as out of compliance with GA-38's mask provisions.[49]  Certain school districts on the Attorney General's list bear an asterisk,

---

[48] *E.g.*, Ex. F.

[49] Attorney General Paxton, COVID -19: List of Government Entities Unlawfully Imposing Mask Mandates, https://www.texasattorneygeneral.gov/covid-governmental-entity-compliance (last Updated: 8/31/2021, 9:22am CT).

which indicates that the Attorney General has sent a letter to such school districts.[50] The list also

lists school districts that are "[n]ow in compliance," which indicates that these "[n]ow in

compliance" school districts have abandoned their plans to implement mask requirements because

of the Attorney General's enforcement activities.[51]

54.     Additionally, Attorney General Paxton has tweeted about his willingness to sue to

enforce GA-38:[52]



_____

[50] *See id.* ("* indicates currently not in compliance; letter sent by the Texas Attorney General's Office.").

[51] *Id.*

[52] https://twitter.com/KenPaxtonTX/status/1437822407700533250?s=20

 **Texas Attorney General** ✔
@TXAG

The #TXLege gave the governor, not a hodgepodge of local officials, the authority to guide #Texas through an emergency.

If government entities continue to blatantly disregard state law, I will sue every single one of them.



Paxton Sues San Antonio ISD and Superintendent Pedro Martinez for Employe...
Attorney General Ken Paxton filed a complaint asking for a temporary restraining order against San Antonio ISD after it refused to follow Executive Order GA-38.
🔗 texasattorneygeneral.gov



55.     The Attorney General has also instructed parents to inform his office via email of

school districts that attempt to implement mask requirements:[53]

---

[57] E.g., Ex. D, ¶65.



56.     Next, Attorney General Paxton has demonstrated his willingness to enforce GA-38 via a civil lawsuit in which the Attorney General sought to enjoin San Antonio ISD from violating GA-38's vaccine provisions.  The Attorney General's lawsuit posits, for instance, that "[t]he State is the guardian and protector of all public rights and has authority to sue to redress any violations of those rights."[54]  The lawsuit states also that San Antonio Independent School District's challenged policy is "preempted and otherwise barred by GA-38,"[55] the lawsuit requests prospective relief enjoining San Antonio Independent School District from implementing a

---

[57] E.g., Ex. D, ¶65.
[57] E.g., Ex. D, ¶65.

vaccine requirement in violation of GA-38.[56]  In short, Attorney General Paxton purports to have the authority to enforce GA-38 via civil lawsuit, has demonstrated his willingness to do so, and has threatened to do so in the future.

57.     Defendant Paxton followed through on his threats on Sept. 10, 2021, when he sued six school districts: Richardson ISD, Round Rock ISD, Galveston ISD, Elgin ISD, Spring ISD, and Sherman ISD.  Plaintiff E.T. attends Round Rock ISD, and Plaintiff S.P. attends Richardson ISD.

58.     In the complaints, Defendant Paxton, on behalf of the State of Texas, seeks an order declaring the district's mask mandates "invalid and unlawful" and injunctive relief for rescission of the mask mandates.[57]

59.     Defendant Paxton tweeted his intent to continue filing lawsuits: "Today, I filed suit against 6 Texas ISD's and this is just the beginning.  I will put an end to these unconstitutional mask mandates."[58]

60.     On Sept. 14, 2021, Defendant Paxton sued nine additional school districts: La Vega ISD, McGregor ISD, Midway ISD, Waco ISD, Diboll ISD, Lufkin ISD, Longview ISD, Paris ISD, and Honey Grove ISD.  The lawsuits have the same claims and seek the relief as the first six lawsuit filed on Sept. 10, 2021.

61.     Defendant Paxton again tweeted that he would continue to enforce GA-38 through lawsuits: "I filed suit against 9 more Texas schools in violation of GA-38. We will continue until we have law and order."[59]

---

[57] E.g., Ex. D, ¶65.
[57] E.g., Ex. D, ¶65.
[58] https://twitter.com/KenPaxtonTX/status/1436446560586539009?s=20

[59] https://twitter.com/KenPaxtonTX/status/1437822407700533250?s=20

62.     Due to Defendant Paxton's enforcement of GA-38, school districts are not enforcing or have rescinded mask mandates.  Defendant Paxton tweeted on Sept. 21, 2021: "Great news! @ShermanISD has decided to obey the rule of law and drop the mask mandate" and citing to an article that notes the decision came on the heels of the lawsuit brought by Paxton against the school district. [60]

63.     Districts threatened with lawsuits have also reacted to the filing of the lawsuits. Defendant Paxton tweeted on Sept. 21, 2021 that Denton ISD informed his office that the district ended its mandatory mask policy. [61]

64.     Defendant Morath and the TEA have worked in concert with Defendant Paxton.  In addition to publishing the Public Health Guidance to instruct district to comply with GA-38 and dissuade any mask requirement, TEA provides Defendant Paxton with the names of districts whom the agency learns are implementing mask mandates twice each week.

**F.      Harm to the Named Plaintiffs**

65.     The Governor's Order and TEA's Guidance have directly harmed each of the named Plaintiffs who now must risk their health and safety in order to obtain desperately needed in-person instruction and services.

66.     E.T. in the Round Rock Independent School District:

a.  E.T. is eleven years old, and she has been diagnosed with Down syndrome, moderate to severe asthma, hypogammaglobulinemia, a CD19 deficiency, and a severe B-cell lymphocyte deficiency, which has resulted in a suppressed immune system.

---

[60] https://twitter.com/KenPaxtonTX/status/1440350480559788054?s=20.
[61] https://twitter.com/KenPaxtonTX/status/1440349159161090064?s=20.

b. E.T. attends a Williamson County public school, and the school has identified her as a child with a disability.

c. Children with Down syndrome, a weakened immune system, and asthma like E.T. are at a higher risk of hospitalization, severe illness, or death should they contract COVID-19.

d. Because Defendants are preventing Williamson County public schools from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant—it is simply too dangerous to E.T.'s health and safety for her to return to school without the protections deemed necessary by local and national authorities, which includes universal masking for all persons at K-12 schools.

e. Defendants' actions have forced E.T.'s parents to decide whether to return E.T. to school and risk her life or to leave the public school system.

67. A.M. in the Edgewood Independent School District ("EISD").

a. A.M. is eight years old and was born with cerebral palsy, which is a neurological disorder.

b. A.M. attends a Bexar County public school, and the school has identified him as a child with a disability.

c. Children with neurological disorders, including cerebral palsy, like A.M., are at a higher risk of hospitalization, severe illness, or death should they contract COVID-19.

d.  Because Defendants seek to prevent all Texas public schools from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant—it is simply too dangerous to A.M.'s health and safety for him to return to school without the protections deemed necessary by local and national authorities, which includes universal masking for all persons at K-12 schools.  Notably, Governor Abbott has threatened to file litigation against any Texas school district which issues a mask mandate in its jurisdiction.[62]

e.  Defendants' actions have forced A.M.'s parents to decide whether to return A.M. to school and risk his life or to leave the public school system.

68.  J.R. in the San Antonio Independent School District:

a.  J.R. is eight years old and lives with attention deficit hyperactivity disorder, a growth hormone deficiency, and moderate to severe asthma.

b.  J.R. attends a Bexar County public school, and the school has identified her as a child with a disability.

c.  Children with severe or moderate asthma like J.R. are at a higher risk of hospitalization, severe illness, or death should they contract COVID-19.

d.   Because Defendants seek to prevent Bexar County public schools from requiring masks for their students and staff—despite the surging number of

---

[62] "Governor Abbott threatens to sue school districts who enforce mask mandates," KVEO, Aug. 11, 2021, https://www.valleycentral.com/news/local-news/gov-abbott-threatens-to-sue-schools-who-enforce-mask-mandates/.

infections, positivity rates, and hospitalizations due to the hyper-contagious

Delta variant—it is simply too dangerous to J.R.'s health and safety for her

to return to school without the protections deemed necessary by local and

national authorities, which includes universal masking for all persons at K-

12 schools.

e.  Defendants' actions have forced J.R.'s parents to decide whether to return

J.R. to school and risk her life or to leave the public school system.

69.  E.S. is a student in the Killeen Independent School District:

a.  E.S. is seven years old and lives with moderate to severe asthma.

b.  E.S. attends a Bell County public school.

c.  Children with moderate to severe asthma like E.S. are at a higher risk of

hospitalization, severe illness, or death should they contract COVID-19.

d.  Because Defendants are preventing Bell County public schools from

requiring masks for their students and staff—despite the surging number of

infections, positivity rates, and hospitalizations due to the hyper-contagious

Delta variant—it is simply too dangerous to E.S.'s health and safety for her

to return to school without the protections deemed necessary by local and

national authorities, which includes universal masking for all persons at K-

12 schools.

e.  Defendants' actions have forced E.S.'s parents to decide whether to return

E.S. to school and risk her life or to leave the public school system.

70.  H.M. in the Leander Independent School District:

a. H.M. is eight years old and has Down syndrome, a heart defect, and a history of bronchomalacia.

b. H.M. attends a Travis County public school, and the school has identified him as a child with a disability.

c. Children with Down syndrome, heart conditions, and chronic respiratory conditions like H.M. are at a higher risk of hospitalization, severe illness, or death should they contract COVID-19.

d. Because Defendants are preventing Travis County public schools from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant—it is simply too dangerous to H.M.'s health and safety for him to return to school without the protections deemed necessary by local and national authorities, which includes universal masking for all persons at K-12 schools.

e. Defendants' actions have forced H.M.'s parents to decide whether to return H.M. to school and risk his life or to leave the public school system.

71.    M.P. in the Fort Bend Independent School District:

a. M.P. is eleven years old and was born with Down syndrome.

b. M.P. attends a Fort Bend County public school, and the school has identified her as a child with a disability.

c. Children with severe or moderate asthma like M.P. are at a higher risk of hospitalization, severe illness, or death should they contract COVID-19.

d.  Because Defendants are seeking to prevent Fort Bend County public schools from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant—it is simply too dangerous to M.P.'s health and safety for her to return to school without the protections deemed necessary by local and national authorities, which includes universal masking for all persons at K-12 schools.

e.  Defendants' actions have forced M.P.'s parents to decide whether to return M.P. to school and risk her life or to leave the public school system.

72.  S.P. in the Richardson Independent School District:

a.  S.P. is eight years old and has bronchiectasis, attention deficit hyperactivity disorder, spina bifida and epilepsy.

b.  S.P. attends a Dallas County public school, and the school has identified him as a child with a disability.

c.  Children with chronic lung and neurological conditions like S.P. are at a higher risk of hospitalization, severe illness, or death should they contract COVID-19.

d.  Because Defendants seek to prevent Dallas County public schools from requiring masks for their students and staff—despite the surging number of infections, positivity rates, and hospitalizations due to the hyper-contagious Delta variant—it is simply too dangerous to S.P.'s health and safety for him to return to school without the protections deemed necessary by local and

national authorities, which includes universal masking for all persons at K-12 schools.

e.  Defendants' actions have forced S.P.'s parents to decide whether to return S.P. to school and risk his life or to leave the public school system.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION:
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### AGAINST DEFENDANTS MORATH, AND PAXTON
### IN THEIR OFFICIAL CAPACITIES

73.  Plaintiffs repeat and re-allege the allegations in previous paragraphs of this Amended Complaint as if fully alleged herein.

74.  The ADA provides a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. 42 U.S.C. §§ 12101(b)(1) & (2).

75.  Enactment of the ADA reflected deeply held American ideals that treasure the contributions that individuals can make when free from arbitrary, unjust, or outmoded societal attitudes and practices that prevent the realization of their full potential.

76.  The ADA embodies a public policy committed to the removal of a broad range of impediments to the integration of people with disabilities into society and strengthening the federal government's role in enforcing the standards established by Congress.

77.  The ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

78.  Defendants Paxton and Morath's enforcement of GA-38 38 and TEA's Public Health Guidance are denying local school districts and public health authorities the ability to

provide the children in the instant matter with the protections they need to attend school safely. In so doing, Defendants Paxton and Morath, acting in their official capacities, have violated the regulations and provisions of the ADA, and/or have caused Plaintiffs' School Districts to violate the regulations and provisions of the ADA, as follows:

    a. Defendants are failing to make a reasonable modification, and/or are preventing Plaintiffs' School Districts from making a reasonable modification, under circumstances where it is required, in violation of 28 C.F.R. § 35.130(b)(7);

    b. Defendants are excluding, and/or are causing Plaintiffs' School Districts to exclude, Plaintiffs from participation in public education, in violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130;

    c. Defendants are failing to make, and/or causing Plaintiffs' School Districts to fail to make, their services, programs, and activities "readily accessible" to disabled individuals, in violation of 28 C.F.R. § 35.150;

    d. Defendants are administering a policy that has the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability and that has the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities, in violation of 28 C.F.R. § 35.130(b)(3).

79. The ADA further prohibits any public entity from, either directly or through contractual or other arrangements, using any criteria or methods of administration that (a) have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of

disability and/or (b) perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State. 28 C.F.R. §§ 35.130 (b)(3)(i) & (iii).

80.     Neither Defendants Morath nor Paxton have the authority to circumvent the ADA and its protections for students with disabilities through executive order or guidance requirements or the enforcement thereof.

81.     Excluding children from the public-school classroom because of a disability, including by Defendants enforcing of the executive order or guidance requirements at issue, is precisely the type of discrimination and segregation that the ADA and its amendments aim to prevent and specifically prohibit.

### SECOND CAUSE OF ACTION:
### VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973
### AGAINST ALL DEFENDANTS

82.     Plaintiffs repeat and re-allege the allegations in previous paragraphs of this Amended Complaint as if fully alleged herein.

83.     Plaintiffs are children with disabilities that substantially limit one or more major life activity, and therefore, are considered to be persons with a disability under Section 504 of the Rehabilitation Act, as amended. *See* 29 U.S.C. § 705(9)(B), as amended by the ADA Amendments Act, Pub. L. 110-325, Sec. 7, 122 Stat. 3553 (Sept. 25, 2008).

84.     Plaintiffs are otherwise qualified under Section 504 of the Rehabilitation Act because they meet the essential eligibility requirements for public education in the state of Texas.

85.     Defendant Morath, in his official capacity, the state of Texas, and the Defendant TEA are the recipients of federal financial assistance, to include funding from Title I of the Elementary and Secondary Education Act and from the Elementary and Secondary School Emergency Relief of the American Rescue Plan Act of 2021.

86.     Governor Abbott's Executive Order and TEA's Public Health Guidance, as well as Defendants Paxton and Morath's enforcement of the same, are denying local school districts and public health authorities the ability to provide these children with the accommodations they need to attend school safely.

87.     Defendants have violated the regulations and provisions of Section 504, and/or caused Plaintiffs' School Districts to violate the regulations and provisions of Section 504, as follows:

      a.  Defendants are excluding, and/or are causing Plaintiffs' School Districts to exclude, Plaintiffs from participation in public education, in violation of 29 U.S.C. § 794(a) and 34 C.F.R. § 104.4(b)(1)(i);

      b.  Defendants are using methods of administration that have the effect of subjecting Plaintiffs to discrimination on the basis of disability, in violation of 34 C.F.R. § 104.4(b)(4);

      c.  Defendants are using methods of administration that have the effect or purpose of defeating or substantially impairing accomplishment of the objectives of the public education provided by Plaintiffs' School Districts, in violation of 34 C.F.R. § 104.4(b)(4).

88.     Defendants do not have the authority to circumvent Section 504 and its protections for students with disabilities through executive order or guidance requirements.

89.     The Office of the Attorney General is a department or agency that receives federal financial assistance, including but limited to funds for child-support enforcement, and to address Medicaid fraud, missing children, and drug trafficking.  The Attorney General does not have the

authority to circumvent Section 504 and its protections for students with disabilities through enforcement of the executive order or guidance requirements at issue.

90.     Excluding children from the public-school classroom because of a disability is precisely the type of discrimination and segregation that Section 504 aims to prevent and specifically prohibit.

**THIRD CAUSE OF ACTION:**
**FEDERAL PREEMPTION UNDER AMERICAN RESCUE PLAN ACT OF 2021**
**AGAINST ALL DEFENDANTS**

91.     Plaintiffs repeat and re-allege the allegations in previous paragraphs of this Amended Complaint as if fully alleged herein.

92.     The Supremacy Clause of the United States Constitution renders federal law the "supreme Law of the Land." U.S. CONST. art. VI, cl. 2. The doctrine of federal preemption that arises out of the Supremacy Clause requires that "any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Felder v. Casey*, 487 U.S. 131, 138, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988) (quoting *Free v. Bland*, 369 U.S. 663, 666, 82 S. Ct. 1089, 8 L. Ed. 2d 180 (1962)). State law is preempted when, among other things, it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 204, 103 S. Ct. 1713, 75 L. Ed. 2d 752 (1983).

93.     GA-38 and TEA's Public Health Guidance, as enforced by officials including Defendants Paxton and Morath, conflict with federal law because they frustrate Congress' purpose that local school districts have the authority to adopt public health policies, including mask requirements, to protect students and educators as they develop plans for safe return to in-person instruction. Under section 2001(i) of the American Rescue Plan Act of 2021 (ARP), local school districts in Texas – including the districts in which Plaintiffs attend school – have been allocated

over $11 billion in Elementary and Secondary School Emergency Relief (ESSER) funding so that they can adopt plans for a safe return to in-person instruction.[63]  Pub. L. No.  117-2, § 2001(i). Section 2001(e)(2)(Q) of the ARP Act explicitly gives local school districts the authority to use these ARP ESSER funds for "developing strategies and implementing public health protocols *including, to the greatest extent practicable, policies in line with guidance from the Centers for Disease Control and Prevention* for the reopening and operation of school facilities to effectively maintain the health and safety of students, educators, and other staff."  *Id*. § 2001(e)(2)(Q) (emphasis added).  As discussed above, the CDC's guidance specifically recommends universal indoor masking in all K-12 schools.

94.     Furthermore, interim final requirements adopted by the U.S. Department of Education specifically require each local school district to adopt a plan for safe return to in-person instruction that describes "the extent to which it has adopted policies, and a description of any such policies, on each of the following safety recommendations established by the CDC…," specifically including "universal and correct wearing of masks." *See* American Rescue Plan Act Elementary and Secondary School Emergency Relief Fund, 86 Fed. Reg. 21195, 21200 (Apr. 22, 2021).  To be clear, the requirement "does not mandate that [a local educational agency] adopt the CDC guidance, but only requires that [it] describe in its plan the extent to which it has adopted the key prevention and mitigation strategies identified in the guidance," which include both "[u]niversal and correct wearing of masks," and notably "appropriate accommodations for children with disabilities with respect to health and safety policies," among others.  *Id*.  The interim requirements

---

[63] *See* U.S. Dep't of Education, American Rescue Plan Elementary and Secondary School Emergency Relief Fund – Methodology for Calculating Allocations (Revised June 25, 2021) at 3, *available at* https://oese.ed.gov/files/2021/06/Revised-ARP-ESSER-Methodology-and-Allocation-Table_6.25.21_FINAL.pdf.

further provide that a local educational agency must ensure the interventions it implements will respond to the needs of all students, "and particularly those students disproportionately impacted by the COVID-19 pandemic, including … children with disabilities." *Id*.

95.     In other words, it is the legislative purpose and intention of Congress, both as set forth in the statute itself and as interpreted by the Department of Education, that local school districts – and not the state – have the authority to decide whether and to what extent they will adopt public health policies, including mask requirements, consistent with CDC guidance.  GA-38 and TEA's Public Health Guidance impermissibly conflict with and are preempted by this federal law.

## FOURTH CAUSE OF ACTION:
## FEDERAL PREEMPTION UNDER AMERICANS WITH DISABILITIES ACT AGAINST DEFENDANT PAXTON

96.     Plaintiffs repeat and re-allege the allegations in previous paragraphs of this Amended Complaint as if fully alleged herein.

97.     Because Governor Abbott's order, as enforced by Defendant Paxton, violates the ADA and Section 504 of the Rehabilitation for the reasons described above, it conflicts with federal law and is therefore pre-empted.

## ATTORNEYS' FEES

98.     Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to and seek an award of their reasonable attorneys' fees, costs, and expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

A.     Assume jurisdiction of this action;

B.     Declare that Executive Order GA-38 and TEA's Public Health Guidance violate Plaintiffs' rights under the Americans with Disabilities Act and Section 504, and are preempted by the ADA, Section 504 and the American Rescue Plan Act;

D.     Issue preliminary and permanent injunctive relief enjoining Defendants from violating the Americans with Disabilities Act, Section 504, and the American Rescue Plan Act by prohibiting local school districts from requiring masks for their students and staff;

E.     Issue preliminary and permanent injunctive relief enjoining Defendants from violating the Americans with Disabilities Act, Section 504, and the American Rescue Plan Act by withholding state and federal educational funds from districts that elect to require students and staff to wear masks.

F.     Award Plaintiffs their reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and

G.     Grant such other and further relief as may be just, equitable and proper.

Dated: September 29, 2021                    Respectfully submitted,

Thomas M. Melsheimer
Texas Bar No. 13922550
tmelsheimer@winston.com
Scott C. Thomas
Texas Bar No. 24046964
scthomas@winston.com
Alex Wolens
Texas Bar No. 24110546
John Michael Gaddis (*pro hac vice*)
Texas Bar No. 24069747
William G. Fox, Jr. (*application pending*)
Texas Bar No. 24101766
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500
(214) 453-6400 (fax)

Brandon W. Duke (*pro hac vice*)
Texas Bar No. 240994476
bduke@winston.com
**WINSTON & STRAWN LLP**
800 Capitol St., Suite 2400
Houston, TX 77002
(713) 651-2600
(713) 651-2700 (fax)

Dustin Rynders (*pro hac vice*)
Texas Bar No. 24048005
drynders@drtx.org
**DISABILITY RIGHTS TEXAS**
1500 McGowen, Suite 100
Houston, TX 77004
(713) 974-7691
(713) 974-7695 (fax)

L. Kym Davis Rogers
Texas Bar No. 00796442
krogers@drtx.org

**DISABILITY RIGHTS TEXAS**
1420 W. Mockingbird Lane, Suite 450
Dallas, TX 75247
(214) 845-4045
(214) 630-3472 (fax)

Robert Winterode (*pro hac vice*)
Texas Bar No. 24085664
rwinterode@drtx.org
**DISABILITY RIGHTS TEXAS**
2211 E. Missouri, Suite 243
El Paso, TX 79903
(210) 424-9652
(915) 542-2676 (fax)

Peter Hofer
Texas Bar No. 09777275
phofer@drtx.org
Brian East
Texas Bar No. 06360800
beast@disabilityrightstx.org
**DISABILITY RIGHTS TEXAS**
2222 West Braker Lane
Austin, TX 78758
(512) 407-2745
(512) 454-3999 (fax)

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on September 29, 2021.

/s/Thomas Melsheimer
Thomas Melsheimer