# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| E.T., by and through her parents and next friends; J.R., by and through her parents and next friends; H.M., by and through her parents and next friends; E.S., by and through her parents and next friends; M.P., by and through her parents and next Friends; S.P., by and through her parents and next friends; and A.M., by and through her parents and next friends, | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No.1:21-CV-00717-LY |
| v. | ) ) | |
| MIKE MORATH, in his official capacity as the COMMISSIONER of the TEXAS EDUCATION AGENCY; the TEXAS EDUCATION AGENCY; and ATTORNEY GENERAL KENNETH PAXTON, in his official capacity as ATTORNEY GENERAL OF TEXAS, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA

# I.   INTRODUCTION

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517[1] to address the interpretation and application of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-12134, and its implementing regulations, 28 C.F.R. pt. 35, to Texas Executive Order GA-38, which prohibits school districts from imposing mask requirements in their facilities or programs.  The order was issued against the backdrop of the continuing and evolving public health crisis presented by COVID-19.

The Delta variant of COVID-19 has proven to be more aggressive and to spread more easily than previous strains, infecting more children and putting infected persons at higher risk of hospitalization than other variants.[2]  And it is well-settled that children with certain medical conditions, such as cerebral palsy, Down syndrome, and compromised immune systems are at higher risk for severe illness from COVID-19.[3]  So, too, are children with more common disabilities like asthma and diabetes.[4]  To help ensure the safe return of students to school, the Centers for Disease Control has recommended "universal indoor masking by all students (age 2 and older), staff, teachers, and visitors to K-12 schools, regardless of vaccination status."[5]

---

[1] The Attorney General is authorized "to attend to the interests of the United States" in any case pending in federal court.  28 U.S.C. § 517.

[2] Texas Health and Human Services, *Delta Variant FAQs*, updated Sept. 20, 2021, https://www.dshs.state.tx.us/coronavirus/variant-faqs.aspx; Yale Medicine, Five Things To Know About the Delta Variant, updated Sept. 24, 2021, https://www.yalemedicine.org/news/5-things-to-know-delta-variant-covid.

[3] Centers for Disease Control, *People with Certain Medical Conditions*, updated Aug. 20, 2021, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[4] *Id*.

[5] CDC, *Guidance for COVID-19 Prevention in K-12 Schools*, updated Aug. 5, 2021, https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html.

The issue in this case is the impact of Executive Order GA-38 on the plaintiffs—students who allege that their disabilities place them at heightened risk of COVID-19 infection and severe illness from the disease.  As alleged by the plaintiffs, the Executive Order puts them, their parents, and school districts in an untenable position.  Plaintiffs allege that under Executive Order GA-38, Texas school districts have no discretion (without violating the order) to require any students or staff to wear a mask—whether district-wide, school-wide, in a single classroom, or in interacting with a single student—even if doing so meant that students at heightened COVID-19 risk could safely return to the classroom.  *See* Second Amended Complaint (SAC) (ECF 45), ¶¶ 2, 27.  Plaintiffs further allege that the Executive Order requires them to choose between returning to in-person learning, which involves heightened health risks to them as students with disabilities, and leaving the public school system.

The serious adverse consequences on students with certain disabilities is readily foreseeable.  Some parents of children at heightened COVID-19 risk will likely keep their children at home—even though the children could safely attend school if mask protocols could be put in place.  Other parents of children at heightened COVID-19 risk—such as parents who cannot be at home during the day—may have no choice but to send their children to school each day, knowing that their children's health, and even their lives, may be at risk because those in close contact with their children may not be wearing masks and there is nothing the school can do about it.

The plaintiffs' allegations go to the heart of the protections afforded by the ADA to individuals with disabilities.  As the agency charged by Congress with administering and

enforcing the ADA,[6] the United States Department of Justice has a vital interest in ensuring that

the requirements of the ADA and its implementing regulations are correctly interpreted and

enforced, and that students with disabilities have a full and equal opportunity to participate in

and benefit from all that public education can offer and that they are not unnecessarily

segregated from their nondisabled peers.  Accordingly, as the Court considers the parties'

pending motions, the United States respectfully submits this Statement to explain the ADA's

legal framework as applied to Executive Order GA-38.[7]

## II.  BACKGROUND

The Texas state constitution establishes that "it shall be the duty of the Legislature of the

State to establish and make suitable provision for the support and maintenance of an efficient

system of public free schools."  TEX. CONST. art. 7.  The ADA ensures that state and local

governments, in fulfilling this constitutional function, include children with disabilities equally

within its ambit.  Specifically, Title II of the ADA prohibits disability discrimination by state and

local governments, including in "[a]ll programs, services, and regulatory activities relating to the

operation of elementary and secondary education systems[.]"  28 C.F.R. § 35.190(b)(2).

Safeguarding access to education for students with disabilities is of particular concern

this year as COVID-19 continues to present an evolving public health crisis.  As state and local

---

[6] The Department of Justice has designated the Department of Education as an agency responsible for investigating possible violations of Title II of the ADA involving public schools.  *See* 28 C.F.R. § 35.190(b)(2); 28 C.F.R. § 35.170-35.173.  On September 21, 2021, the Department of Education's Office for Civil Rights opened an investigation in Texas to determine whether, in light of Executive Order GA-38, the Texas Education Agency is discriminating against students with disabilities who are at heightened risk for severe illness from COVID-19 by preventing their safe return to in-person learning.  That investigation is ongoing.
[7] Before the Court are the plaintiffs' motion for preliminary injunction and the defendants' motion to dismiss the complaint.  ECF 7 and 34.  In this Statement, the United States addresses only the plaintiffs' ADA claim and takes no position on other asserted bases for relief.

governments across the country work to bring students safely back to school and into classrooms, they must comply with federal civil rights obligations to students with disabilities. Thus, where educators have determined that students can safely return to the classroom, the ADA guarantees students with disabilities a full and equal opportunity to do the same and to learn alongside their nondisabled peers, with all the benefits that accompany in-person learning.

Recognizing the importance of returning to in-person learning, the Centers for Disease Control and Prevention (CDC) have made recommendations for how to safely re-open schools. To make schools safe for all students, the CDC recommends implementing layered prevention measures.[8]  Masking is a critical component of these measures.  "Due to the circulating and highly contagious Delta variant, the CDC recommends universal indoor masking by all students (age 2 and older), staff, teachers, and visitors to K-12 schools, regardless of vaccination status."[9] Public health guidelines such as these offer critical information to educators as they consider and implement their ADA obligations.

Governor Greg Abbott issued Executive Order GA-38, on July 29, 2021.  The Executive Order specifically states that "no person may be required by any jurisdiction to wear or to mandate the wearing of a face covering" and further provides that "[n]o governmental entity, including a . . . school district . . . may require any person to wear a face covering or to mandate that another person wear a face covering."[10]  The Executive Order provides for fines of up to

---

[8] CDC, *Guidance for COVID-19 Prevention in K-12 Schools*, updated Aug. 5, 2021, https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html.
[9] *Id*.
[10] Exec. Order GA-38, ¶¶ 3-4 (July 29, 2021), https://gov.texas.gov/uploads/files/press/EO-GA-38_continued_response_to_the_COVID-19_disaster_IMAGE_07-29-2021.pdf.

$1,000 for any local government entity or official that imposes a mask mandate.[11]  The Executive Order provides an exception to the ban on mask mandates for state supported living centers, government owned or operated hospitals, and state, county and local jails.[12]

On its face, Executive Order GA-38 does not provide an exception even where a local school decides, based on an individualized assessment, that a mask mandate is necessary to comply with its ADA obligations.  And none of defendants' filings in this Court indicate that the State will interpret the Executive Order to allow such an exception.

School districts in Texas have not reacted uniformly to Executive Order GA-38.  A number of school districts in Texas that had previously imposed mask requirements reversed course and made masking in school optional.[13]  Some school districts in Texas have implemented masking measures in schools despite the ban.[14]  The latter school districts have been identified as potential or actual enforcement targets by the Attorney General of the State of

---

[11] *Id*. at ¶ 4(b).

[12] *Id*. at ¶ 4(a).

[13] Nicole Cobler and Maria Mendez, *Tex. Gov. Greg Abbott bans public schools, local officials from requiring masks*, AUSTIN AMERICAN-STATESMAN, updated May 19, 2021, https://www.statesman.com/story/news/coronavirus/2021/05/18/texas-governor-abbott-bans-public-schools-local-officials-requiring-masks/5149412001/; *see, e.g.*, Matt DeGrood, *Masks optional again in FBISD*, THE FORT BEND STAR, updated Aug. 30, 2021, https://www.fortbendstar.com/schoolnews/masks-optional-again-in-fbisd/article_415bdfd6-09c4-11ec-b3f5-7fda1b534ece.html.

[14] *See* Ken Paxton, Texas Attorney General, "List of Government Entities Unlawfully Imposing Mask Mandates" (updated Sept. 10, 2021), https://www.texasattorneygeneral.gov/covid-governmental-entity-compliance (identifying school districts in contravention of the ban, those that have received suit notice letters from AG Paxton, and those that have been sued by him); Ken Paxton, Texas Attorney General, Press Release: "Paxton Files Multiple Lawsuits Against School Districts Defying State Law" (Sept. 10, 2021), https://www.texasattorneygeneral.gov/news/releases/paxton-files-multiple-lawsuits-against-school-districts-defying-state-law (AG Paxton filed lawsuits against six school districts regarding their masking policies on Sept. 10, 2021).

Texas for their failure to comply with Executive Order GA-38.[15]

The plaintiffs in this action allege that they are students with disabilities whose medical conditions carry an increased risk of serious complications or death in the event that they contract COVID-19; these conditions include Down syndrome, moderate to severe asthma, chronic lung and heart conditions, cerebral palsy, and weakened immune systems.  SAC (ECF 45), ¶¶ 2, 17-23.  The plaintiffs further allege that, because of these conditions, Executive Order GA-38 has or will prevent them from returning to in-person classes without serious risk to their health and safety.  *See id*. at ¶ 27.  According to plaintiffs, there are no practicable education alternatives for students with disabilities who cannot safely return to school in person.  *Id*. at ¶ 50.  Consequently, plaintiffs allege, the Executive Order will have the effect of "placing children with disabilities in imminent danger or unlawfully forcing those children out of the public school system."  *Id*.

## III.  DISCUSSION

**Plaintiffs' Factual Allegations, if Proved, Would Establish that Executive Order GA-38 Violates Title II of the ADA By Prohibiting School Districts from Implementing Mask Requirements Where Necessary to Provide a Safe and Integrated Learning Environment For Students with Disabilities.**

For the reasons explained in greater detail below, the plaintiffs' factual allegations, if proved, would demonstrate that Executive Order GA-38 violates Title II of the ADA and its implementing regulations.  Plaintiffs' second amended complaint alleges facts adequate to prove that the Executive Order has the effect of excluding plaintiffs from participation in, and denies them the benefits of, the services, programs or activities of a public entity, 42 U.S.C. § 12132—namely, the in-person instruction offered by their public schools.  Plaintiffs' factual allegations,

---

[15] *Id*.

if proved, would further show that the Executive Order violates the Department of Justice's Title II regulations because it has "the effect of subjecting" plaintiffs "to discrimination on the basis of disability," 28 C.F.R. § 35.130(b)(3), by preventing local school districts from complying with their ADA obligations to students with disabilities.

### A.  Statutory and Regulatory Requirements

As the Fifth Circuit has held, "[t]he ADA is a 'broad mandate' of 'comprehensive character' and 'sweeping purpose' intended 'to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American life.'" *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011) (citations omitted).  Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).  An individual with a disability is "qualified" if, with or without reasonable modifications to rules, policies, or practices, the individual meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by the public entity.  42 U.S.C. § 12131(2).  Public education is a quintessential governmental service, program, or activity, and the plaintiffs, all enrolled or eligible for Texas's public education system, are qualified to participate in and receive the benefits of that service, program, or activity.

As directed by Congress, the Department of Justice has issued regulations to implement Title II's mandate.  *See* 42 U.S.C. § 12134 (charging Attorney General to issue implementing regulations).  These regulations, codified at 28 C.F.R. Part 35, are entitled to deference.  *See*

*Frame v. City of Arlington*, 657 F.3d 215, 225 (5th Cir. 2011).[16]  They address the many different forms that disability discrimination can take, including, as relevant here, discrimination that results from a public entity's implementation of facially neutral policies.  *See generally* 28 C.F.R. § 35.130.  In this way, the regulations effectuate Congress's recognition—made explicit in its statutory findings—that discrimination against individuals with disabilities results not just from outright intentional exclusion, but also from segregation, the discriminatory effects of facially neutral rules and policies, the failure to make modifications to existing practices, and relegation to lesser services, programs, activities, benefits, or other opportunities.  *See* 42 U.S.C. § 12101(a)(5) (Findings and purpose).

The Department's Title II regulations prohibit public entities from utilizing "criteria or methods of administration" that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability or that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities.  28 C.F.R. § 35.130(b)(3)(i) and (ii).  In this context, "[t]he phrase 'criteria or methods of administration' refers to official written policies of the public entity and to the actual practices of the public entity."  28 C.F.R. pt. 35, app. B, § 35.130.  Governor Abbott's Executive Order is an official policy of a public entity and is thus subject to the prohibitions of 28 C.F.R. § 35.130(b)(3)(i) and (ii).

---

[16] Concurrent with the Title II regulations, the Department also issued regulatory guidance, which reflects the "agency's authoritative, expertise-based, fair [and] considered judgment."  *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019) (quoting *Auer v. Robbins*, 519 U.S. 452, 462 (1997)).  Under these circumstances, the Supreme Court has held that courts should defer to the Department's interpretation of its own regulation.  *See id.*; *see also id.* at 2410, 2413 (using the Department's regulatory guidance to the ADA as an example of where *Auer* deference applies).  "When it applies, *Auer* deference gives an agency significant leeway to say what its own rules mean."  *Id.* at 2418.

Prohibited discrimination under Title II can take multiple forms, three of which are particularly relevant here.  First, Title II prohibits denying students with disabilities the "opportunity to participate in or benefit from" a school's aid, benefits, or services that is "equal to that afforded others."  28 C.F.R. § 35.130(b)(1)(i) and (ii).  Second, it prohibits denying them "the opportunity to participate in services, programs, or activities that are not separate or different" from those provided to non-disabled students.  28 C.F.R. § 35.130(b)(2).  Third, it prohibits denying them the opportunity to receive a school's "services, programs, and activities in the most integrated setting appropriate to the needs" of students with disabilities. 28 C.F.R. § 35.130(d).  In-person learning at a public school can implicate all three of these regulatory provisions.

Moreover, public entities also have an affirmative obligation to make reasonable modifications in their policies, practices, or procedures when necessary to avoid discrimination on the basis of disability, unless they can show that so doing would fundamentally alter the nature of the service, program, or activity.  28 C.F.R. § 35.130(b)(7)(i).

These civil rights protections and responsibilities apply even during emergencies.  As one court observed, the COVID-19 pandemic does not "relieve[] the government of its duty to abide by the ADA," and "[i]f anything, the pandemic presents a situation in which the state must be *more* sensitive, not less, to what are ultimately the heightened public health needs of [individuals]."  *Valentine v. Collier*, 490 F. Supp. 3d 1121, 1170-1171 (S.D. Tex. 2020), *rev'd on other grounds*, 993 F.3d 270 (5th Cir. 2021).

### B.  Plaintiff's Factual Allegations, if Proved, Would Establish that the Executive Order Violates 42 U.S.C. § 12132 and 28 C.F.R. § 35.130

Plaintiffs allege that because their disabilities put them at heightened risk of serious complications or even death in the event they contract COVID-19, they cannot safely participate

in in-person learning unless their schools can implement mask requirements.  They further allege

that the Executive Order categorically forbids school districts from adopting any kind of mask

mandate, even if those districts determine after an individualized assessment that mask wearing

is necessary to allow plaintiffs to have equal access to the benefits that in-person learning

provides to other students.

If proved, these factual allegations would establish that the Executive Order violates Title

II and its implementing regulations.  Denying students with disabilities the equal opportunity to

participate in in-person learning with their non-disabled peers means that they are being

"excluded from participation in or be[ing] denied the benefits of the services, programs, or

activities of a public entity," 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).  A policy that results in

such a denial is unlawful because it "ha[s] the effect of subjecting qualified individuals with

disabilities to discrimination on the basis of disability."  28 C.F.R. § 35.130(b)(3).  Such

prohibited discrimination occurs if, as plaintiffs allege here, the policy prevents local school

districts from satisfying their ADA obligations to provide students with disabilities the

"opportunity to participate in or benefit from" in-person instruction that is "equal to that afforded

others," that is "not separate or different" from that provided to non-disabled students, and that is

"in the most integrated setting appropriate."  28 C.F.R. § 35.130(b)(1), 35.130(b)(2), and

35.130(d).

In addition, the Executive Order could interfere with local school districts' ability to

comply with their duty under the ADA to make reasonable modifications in rules or policies to

avoid discrimination against students with disabilities.  28 C.F.R. § 35.130(b)(7)(i).  Plaintiffs

allege that even where a school determines, based on an individualized assessment, that requiring

masks is a reasonable modification necessary to enable a student with disabilities to have equal

access to a safe, integrated, in-person learning environment, the school would be prohibited from providing that accommodation under the Order.  Indeed, the Executive Order—which prohibits a school district from requiring "*any* person to wear a face covering," Exec. Order GA-38 at 4 ¶ 4.a. (emphasis added)—appears to forbid such a reasonable modification no matter the scope of a local school's mask mandate.  The Executive Order thus appears not only to prohibit school districts from implementing universal masking in schools in accordance with CDC guidelines, but also from imposing limited mask requirements—such as in one wing of a school building or in one classroom.  And because the Executive Order on its face provides no mechanism for exceptions in the school context, the Order appears to prohibit a school from requiring an individual aide to wear a mask while working one-on-one with a student who is at heightened risk of serious illness or death from COVID-19 and may need that measure to remain safe in school.

Although a public entity may avoid having to modify its program, service, or activity if it "can demonstrate that making the modifications would fundamentally alter the nature of the program, service, or activity," 28 C.F.R. § 35.130(b)(7)(i), the United States is unaware of any evidence in the record that would support a claim by defendants that mask requirements fundamentally alter the educational programs of local school districts.  And any such claim would be contrary to the experiences of schools across the country—including in Texas[17]—that have

---

[17] Maria Méndez, *Central Texas school districts with mask requirements report fewer COVID-19 cases*, AUSTIN AMERICAN-STATESMAN, Sept. 27, 2021, https://www.statesman.com/story/news/2021/09/27/central-texas-schools-mask-mandates-report-fewer-covid-19-cases/5827873001/ (reporting that "[c]entral Texas school districts with mask mandates in place since the start of the school year have seen a lower rate of COVID-19 cases than districts without mask mandates").

been successfully providing in-person learning for their students while also requiring universal masking in accordance with CDC guidelines to promote the safety of unvaccinated children, including children with disabilities.[18]

   C. **Title II of the ADA Guarantees More Than Mere Access to In-Person Learning**

   Although the Executive Order does not ban plaintiffs from attending in-person, classroom instruction, Title II of the ADA requires more than mere access to programs, services, or activities.  It also prohibits denying individuals with disabilities the *benefits* of services, programs, or activities on the basis of their disability.  42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).  Even where an individual "is not wholly precluded from participating in [a] service, if he is at risk of incurring serious injuries each time he attempts to take advantage of [the service], surely he is being denied the *benefits* of this service."  *Allah v. Goord*, 405 F. Supp. 2d 265, 280-81 (S.D.N.Y. 2005) (emphasis in original).

   Several federal courts have recently enjoined state-level bans on mask mandates, based in large part on the increased risk of harm to students with disabilities if exposed to unmasked individuals in their schools.[19]  For example, a federal court granted a temporary restraining order against Iowa's ban on mask requirements in schools because that ban exposed students with

---

[18] *See* Jacqueline Howard, *School openings so far reveal science is right – masking works*, CNN, updated Aug. 12, 2021, https://www.cnn.com/2021/08/12/health/covid-19-schools-openings-masks-wellness/index.html ("public health experts notice what happens when schools follow the science: classes go on without disruption as long [as] staff and students wear masks"); *cf.* CDC, *Scientific Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2*, May 7, 2021, https://stacks.cdc.gov/view/cdc/105951 ("mask wearing has no significant adverse health effects for wearers").

[19] *See Arc of Iowa v. Reynolds*, No. 4:21-CV-00264, 2021 U.S. Dist. LEXIS 172685 (S.D. Iowa Sept. 13, 2021); *G.S. v. Lee*, No. 21-CV-02552, 2021 WL 4268285 (W.D. Tenn. Sept. 17, 2021); *R.K. v. Lee*, No. 3:21-CV-00725, 2021 WL 4391640 (M.D. Tenn. Sept. 24, 2021); *S.B. v. Lee*, No. 3:21-CV-00317, 2021 WL 4346232 (E.D. Tenn. Sept. 24, 2021); *Disability Rights South Carolina v. McMaster*, No. 3:21-CV-02728 (D.S.C. Sept. 28, 2021).

disabilities to heightened risks to their health.  *See Arc of Iowa v. Reynolds*, No. 4:21-CV-00264,

2021 U.S. Dist. LEXIS 172685, at \*3-4 (S.D. Iowa. Sept. 13, 2021).  The court concluded that

the plaintiffs had shown a likelihood of success on the merits of their ADA claim by

demonstrating that the state order effectively excluded them from an equal opportunity to benefit

from their schools' programs, services, or activities because, unlike their nondisabled peers, they

could not attend in-person classes without serious and unnecessary risk of harm or death.  *Id.* at

\*34-38.  In granting the TRO, the court agreed with the plaintiffs that the state executive order

"substantially increase[d]" the plaintiff children's risk of contracting COVID-19," which in turn

"substantially increase[d] Plaintiff children's risk of severe illness or death."  *Id.* at \*28.  The

court found that enjoining the ban would remedy the discriminatory treatment in that

"[p]ermitting schools to institute universal mask mandates would allow disabled children who

are at an increased risk of severe illness or death from COVID-19 to participate in their school's

programs, services, and activities with a like experience to their nondisabled peers."  *Id.* at \*\*37-

38 (internal quotation and citation omitted); *see also id.* ("[S]chools are required to start by

considering how their educational programs are used by non-disabled students and then take

reasonable steps to provide disabled students with a like experience.") (internal quotations and

citations omitted).

   For similar reasons, another court recently granted a preliminary injunction prohibiting

enforcement of Tennessee's ban on mask mandates as applied to one county's public schools.

*See S.B. v. Lee*, No. 3:21-CV-00317, 2021 WL 4346232 (E.D. Tenn. Sept. 24, 2021).  The court

posed the question at issue as whether, "in light of the heightened lethality that COVID-19 poses

to Plaintiffs because of their disabilities," the county had made reasonable modifications "so that

Plaintiffs [could] safely access [the] public schools."  *Id*. at \*15.  According to the court, access

alone would not suffice and any modification must provide "meaningful access" that would allow students with disabilities to "participate *equally* to all others." *See id.* at **14, 18 (emphasis in original). In granting the injunction, the court concluded that the plaintiffs had shown a strong likelihood of success on the merits of their ADA claim by demonstrating that the "accommodations currently in place against COVID-19" in the county's schools were "too hazardously ineffective to address Plaintiffs' unique needs." *Id.* at **11, 17. Two other federal courts recently used similar reasoning in issuing injunctions against Tennessee's prohibitions on mask mandates in public schools. *See G.S. v. Lee,* No. 21-CV-02552, 2021 WL 4268285 (W.D. Tenn. Sept. 17, 2021); *R.K. v. Lee*, No. 3:21-CV-00725, 2021 WL 4391640 (M.D. Tenn. Sept. 24, 2021).[20]

Courts have made similar holdings in non-COVID-19 contexts. For example, in *Allah*, an inmate with partial paralysis brought an ADA claim against prison officials for allegedly providing unsafe transportation to and from medical appointments. *See* 405 F. Supp. 2d at 269-70. The district court denied the prison officials' motion to dismiss, holding that the plaintiff had pled sufficient allegations to establish a violation of the ADA where the plaintiff had alleged that prison officials "knew or should have known of the dangers" that inmates with disabilities are

---

[20] In *G.S.*, the plaintiffs—parents of children at heightened risk of severe illness from COVID-19 infection—sought to enjoin a state executive order giving parents the right to opt their child out of any school district-imposed mask requirements. The court granted the preliminary injunction. Focusing primarily on the defendants' reasonable accommodation and modification obligations, the court emphasized the "untenable and harmful position that the [order] has foisted upon disabled children and their parents." *Id.* at *12 (crediting plaintiff's testimony that "[n]o parent should be put in a position of having to choose . . . between educating their child and the health of their child"). The court in *R.K.* issued a preliminary injunction against the governor's ban on mask mandates on substantially similar grounds, finding that plaintiffs "are unable to enjoy educational services, programs, and activities without placing their lives at risk due to their disability." *Id.* at *6.

"exposed to when they are transported in an unsafe vehicle" but took no steps to make that

environment safe. *Id.* at 279. *Allah* thus illustrates the proposition, equally applicable here, that

an ADA violation can arise where a public entity provides a service or benefit to all participants

but effectively excludes people with disabilities by failing to account for or take steps to remedy

the ways in which that service may place participants with disabilities at increased risk of harm.

*See also Gorman v. Bartch*, 152 F.3d 907, 913 (8th Cir. 1998) (arrestee stated claim where post-

arrest transportation was provided but was unsafe for arrestee using wheelchair).

Likewise, the Fourth Circuit remanded an ADA case to the district court in part because

that court had erred by not considering the increased risk of harm to the plaintiff from the

defendant's actions. *J.D. v. Colonial Williamsburg Found.*, 925 F.3d 663, 673-74 (4th Cir.

2019). In that case, the plaintiff, who had a severe gluten allergy, was on a school trip with

classmates and sought a reasonable modification to the restaurant's rule that patrons could not

bring in their own food. The restaurant argued that, because the menu included a gluten-free

option, the plaintiff could order from the menu like his peers and no accommodation was

necessary or required. The court of appeals reversed the district court's grant of summary

judgment to the restaurant in part because the district court "incorrectly overlooked the testimony

that J.D. repeatedly became sick after eating purportedly gluten-free meals prepared by

commercial kitchens." *Id.* The court of appeals thus held that the district court erred in finding

as a matter of law that J.D. could have an experience "equal to that of his classmates" if not

accommodated. *Id.* at 674.

Plaintiffs here have alleged that the use of masks by those around them is a measure that

would lower their risk of contracting the virus and thus make it safer for them to return to and

remain in an in-person learning environment. But because Executive Order GA-38 precludes

15

mask requirements in schools, plaintiffs allege that they are either forced out of in-person learning altogether or must take on unnecessarily greater health and safety risks than their nondisabled peers.  These allegations, if proved, are sufficient to establish that plaintiffs are being denied the benefits of in-person learning on an equal basis as their peers without disabilities.

### D.  The Availability of Remote Virtual Learning Does Not Undermine Plaintiffs' Claims

The plaintiffs' allegations, if proved, would establish a violation of Title II even if their local school districts offered them the option of virtual learning.  The ADA requires that students with disabilities be given the opportunity to participate in the same school programs that are available to their peers and that they not be educated in separate or different programs or activities, unless doing so is necessary to provide an education that is as effective as that provided to others.  28 C.F.R. § 35.130(b)(1)(iv) and (2).  Although, if requested by a student or parent, a virtual learning program could be an available accommodation under the ADA, a school may not mandate that an individual with disabilities accept such an accommodation if the student or parent chooses not to.  28 C.F.R. § 35.130(e)(1).  Thus, generally, where a school district makes in-person learning available, it must make the program equally accessible to students with disabilities, even if it provides a separate, virtual schooling option.  *See, e.g.*, *Lovejoy v. Eggleston*, 235 F.R.D. 248, 260-61 (S.D.N.Y. 2006) (finding a likelihood of success on the merits of plaintiffs' ADA challenge to a social services program whereby recipients with certain disabilities were able to obtain services only through three hub centers in the city rather than through 29 neighborhood offices as other citizens could).

The ADA also requires public entities to provide programs and services in "the most integrated setting appropriate to the needs of qualified individuals with disabilities."  28 C.F.R.

§ 35.130(d).  The "most integrated setting" is "a setting that enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible."  28 C.F.R. § 35.130(d); 28 C.F.R. pt. 35, app. B (§ 35.130); *United States v. Georgia*, 461 F. Supp. 3d 1315, 1321-23 (N.D. Ga. 2020).  Separating students with disabilities into virtual classrooms could violate the ADA's integration requirement by denying those students the ability to interact to the fullest extent with their peers who attend school in person.

### E.  Federal Law Preempts the Executive Order to the Extent it Interferes with Local School Districts' Compliance with Title II of the ADA

To the extent that school districts cannot comply with the Executive Order's ban on mask requirements and at the same time meet their obligations under Title II, the ADA supersedes any conflicting provisions of the Executive Order.  The Supremacy Clause of the U.S. Constitution makes clear that a state statute is preempted to the extent it conflicts with federal law.  *See* U.S. Const. art. VI, cl. 2.  State law conflicts with federal law either (1) when it is impossible to comply with both state and federal law *or* (2) "where 'under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *Crosby* v. *Nat'l Foreign Trade Council*, 530 U.S. 363, 372-373 (2000).

These principles have long been applied to state laws that interfere with the ability to comply with federal prohibitions on disability discrimination.  Thus, a state or local government cannot deny a requested modification for a person with a disability solely on the basis that it would violate a state law.  *See, e.g., Crowder* v. *Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996) (concluding that Hawaii's animal quarantine law, as applied to guide dogs, interfered with the state's compliance with Title II of the ADA); *Barber* v. *Colorado Dep't of Revenue*, 562 F.3d 1222, 1232-133 (10th Cir. 2009) (emphasizing that proposed accommodation under the ADA is

not unreasonable simply because it might require defendants to violate state law); *Astralis Condo. Ass'n* v. *HUD*, 620 F.3d 62, 69-70 (1st Cir. 2010) (defendant could not permissibly rely on Puerto Rico law to refuse to provide an accommodation required under the federal Fair Housing Act for a person with a disability).

If plaintiffs prove their factual allegations, they would establish that the Executive Order conflicts with federal law and is invalid to the extent that it interferes with local school districts' ability to satisfy their obligations under Title II of the ADA and its implementing regulations. Under these circumstances, the State would have an obligation to make "reasonable modifications" to its ban on school masking requirements to avoid subjecting students with disabilities to unlawful discrimination.  28 C.F.R. § 35.130(b)(7)(i).

## IV. CONCLUSION

Plaintiffs' factual allegations, if proved, would establish that the State's implementation of Executive Order GA-38 has the effect of denying them an equal opportunity to participate in and benefit from the in-person instruction offered by their public schools.  To the extent that the Executive Order would result in such discrimination, it is preempted by the requirements of Title II of the ADA and its implementing regulations.

The United States respectfully requests that the Court consider this Statement in this litigation.

For the United States of America:

Date: September 29, 2021

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

REBECCA B. BOND
Chief
ANNE S. RAISH
Principal Deputy Chief
KATHLEEN P. WOLFE
Special Litigation Counsel


/s/ Nabina Sinha
NABINA SINHA (DCBN 492127)
Trial Attorney
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
150 M Street, N.E.
Washington, D.C.  20002
Telephone:  202-616-2730
Fax: 202 307-1197
Email:  Nabina.Sinha@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of September, 2021, a correct copy of the foregoing Statement of Interest of the United States of America was filed via the Court's CM/ECF system to all counsel of record:

By:   /s/ Nabina Sinha
        Nabina Sinha