IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| E.T. by and through her parents and and next friends, et al<br><br>*Plaintiffs*<br><br>v.<br><br>Mike Morath, in his official capacity as the Commissioner of the Texas Education Agency; the Texas Education Agency; And Attorney General Ken Paxton, in is official capacity as Attorney General of Texas<br><br>*Defendants* | § § § § § § § § § § § § § § § § | Civil Action No. 1:21-cv-00717-LY |

**DEFENDANTS' AMENDED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Defendants Mike Morath, in his official capacity as the Commissioner of the Texas Education Agency; the Texas Education Agency; and Attorney General Ken Paxton, in his official capacity as Attorney General of Texas (collectively "*Defendants*") file this Amended Findings of Fact and Conclusions of Law. In support, Defendants offer the following for the Court's consideration:

### I.       FINDINGS OF FACT

FOF #1    Plaintiffs are seven young Texas-based students with disabilities,[1] as defined under the ADA and Section 504 of the Rehabilitation Act. Plaintiffs allege they are at "an increased risk of serious complications or death" from COVID-19 due to their disabilities.[2]

---

[1] ECF 45 ("2d Am. Compl.") at ¶¶ 2, 17–23.
[2] *Id.* at ¶ 2.

| | |
|---|---|
| FOF #2 | Plaintiffs challenge two COVID-19-related orders: Governor Abbott's Executive Order GA-38 ("GA-38") and the Texas Education Agency ("TEA")'s August 5, 2021 Guidance ("August 5th Guidance," collectively, the "Challenged Orders") and complain that the Challenged Orders stop local officials from mandating the wearing of facemasks at the children's schools.[3] |
| FOF #3 | Plaintiffs claim the Challenged Orders: (1) violate the Americans with Disabilities Act ("ADA"); (2) violate Section 505 of the Rehabilitation Act ("Section 504"); and (3) are preempted by those two statutes, as well as the American Rescue Plan Act of 2021 ("ARPA Act").[4] Plaintiffs seek to enjoin Defendants from enforcing the Challenged Orders as well as declaratory relief against them as a group.[5] |
| FOF #4 | Plaintiffs seek only equitable relief in this suit.[6] |
| FOF #5 | Plaintiffs' assert that the Challenged Orders will increase the spread of COVID-19 in schools, resulting in Plaintiffs either (1) becoming infected with COVID-19 if they attend school in-person or (2) being forced to stay home to avoid contracting COVID-19.[7] |
| FOF #6 | None of the Plaintiffs have Section 504 plans in place nor have they have sought Section 504 plans or other accommodations regarding masking. |
| FOF #7 | Plaintiffs have not asserted that they have exhausted remedies set out by the Individuals with Disabilities Education Act. |
| FOF #8 | Plaintiff M.P. attends Fort Settlement Middle School in Fort Bend ISD.[8] Fort Bend |

---

[3] *Id.* at ¶ 2; ECF 21-2.
[4] *Id.* at ¶¶ 2-3, 27, 73–97.
[5] *Id.* at pgs. 38-39 (Prayer for Relief).
[6] *See id.*
[7] *Id.* at ¶¶ 35-42, 66–72.
[8] Stipulated Facts at Exhibit A.

ISD has not had a mask mandate for most of the 2021-22 school year.[9] Despite having no mask mandate in place, Fort Bend ISD's COVID-19 positivity rate is not markedly different from the other school districts at issue in this lawsuit.[10] The current infection rate among students and staff combined in Fort Bend ISD is .23%, and there are only four positive COVID-19 cases in Plaintiff M.P.'s school, out of a combined 1,502 students and staff.[11] Plaintiff M.P. has elected to attend school remotely.[12] The impacts or injuries of which Plaintiff M.P. complains include a loss of speech services and reading support, poor class performance, and loss of reading fluency.[13]

FOF #9  Plaintiff E.T. attends Pearson Ranch Middle School in Round Rock ISD.[14] Round Rock ISD has a mask mandate in place.[15] Despite some activities remaining mask-optional at her school, Plaintiff E.T. has elected to attend school in-person.[16] If Round Rock ISD rescinds its mask mandate, Plaintiff E.T. will elect to attend school remotely. According to DSHS data and Round Rock ISD data, both Plaintiff E.T.'s school and Round Rock ISD have COVID-19 infection rates similar to Fort Bend ISD.[17] The impacts or injuries of which Plaintiff E.T. complains include the "loss of significant educational opportunities," educational supplies, and "extracurriculars."[18]

FOF #10 Plaintiff S.P. attends Canyon Creek Elementary in Richardson ISD.[19] Richardson ISD has a mask mandate in place.[20] Plaintiff S.P. has elected to attend school in person and

---

[9] *Id.*
[10] Exh. 10. For complete Department of State Health Services ("DSHS") COVID-19 school district information for the relevant schools and school districts, *see* Exh. 13-19.
[11] Exhs. 11-12.
[12] Stipulated Facts at Exh. A.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] Exh. 10;
[18] Stipulated Facts at Exh. A.
[19] *Id.*
[20] *Id.*

will continue to do so whether his school rescinds its mask mandate or not.[21] According to DSHS data and Richardson ISD data, both Plaintiff S.P.'s school and Richardson ISD have COVID-19 infection rates similar to Fort Bend ISD.[22] The impacts or injuries of which Plaintiff S.P. complains include falling behind in class (including the areas of reading, math, and socialization) as the result of attending school remotely in the previous school year.[23]

FOF #11  Plaintiff J.R. attends Bonham Academy in San Antonio ISD.[24] San Antonio ISD has a mask mandate in place.[25] Despite some activities at her school remaining mask free, Plaintiff J.R. has elected to attend school in person.[26] Plaintiff J.R.'s parents have purchased HEPA filters for her classroom.[27] Plaintiff J.R.'s concern regarding masks is not based solely on her own disabilities, but also on the asthma and autoimmune disorder diagnoses of her family.[28] If San Antonio ISD rescinds its mask mandate, Plaintiff J.R. will elect to homeschool.[29] Both DSHS data and San Antonio ISD data reflect that Plaintiff J.R.'s school and San Antonio ISD have COVID-19 infection rates similar to Fort Bend ISD.[30] The impacts or injuries of which Plaintiff J.R. complains include the loss of access to services and support that in-person school provides, and that homeschooling does not.[31]

FOF #12  Plaintiff H.M. attends River Place Elementary School in Leander ISD.[32] Leander ISD

---

[21] *Id.*
[22] Exhs. 10, 21-22.
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] Exhs. 10, 23-24.
[31] Stipulated Facts at Exh. A.
[32] *Id.*

has a mask mandate in place.[33] Plaintiff H.M. has elected to attend school in person.[34] If another classmate tests positive for COVID-19, Plaintiff H.M. will elect to attend school remotely.[35] According to DSHS data and Leander ISD data, both Plaintiff H.M.'s school and Leander ISD have COVID-19 infection rates similar to Fort Bend ISD.[36] The impacts or injuries of which Plaintiff H.M. complains include missing out on peer modeling experiences to aid his behavioral and speech development, as well as the loss of face-to-face instruction.[37]

FOF #13    Plaintiff A.M. attends Roosevelt Elementary in Edgewood ISD.[38] Edgewood ISD has a mask mandate in place.[39] Even though some activities remain mask-optional, Plaintiff A.M. has elected to attend school in-person.[40] If Edgewood ISD rescinds its mask mandate, Plaintiff A.M. will elect to attend remotely.[41] According to DSHS data, both Plaintiff A.M.'s school and Edgewood ISD have COVID-19 infection rates similar to Fort Bend ISD.[42] The impacts or injuries of which Plaintiff A.M. complains include a loss in total hours of instruction, and the achievement of substantial progress in classes, including verbalizing words.[43]

FOF #14    Plaintiff E.S. attends Skipcha Elementary School in Killeen ISD. Plaintiff E.S.'s school does not have a mask mandate in place. Plaintiff E.S. attends school in person.[44] If remote options were available, Plaintiff E.S. would consider them, but would be

---

[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] Exhs. 10, 25-26.
[37] Stipulated Facts at Exh. A.
[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] Exh. 10.
[43] Stipulated Facts at Exh. A.
[44] Stipulated Facts at Exh. A.

concerned regarding the potential loss of social interaction.[45] According to both DSHS data and Killeen ISD data, Plaintiff E.S.'s school and Killeen ISD have COVID-19 infection rates similar to those districts with mask mandates in place;[46] in fact, Plaintiff E.S.'s school has only 3 positive student cases.[47] The impacts or injuries of which Plaintiff E.S. complains include lost social interaction, loss of sufficient progress in class, and loss of "1:1 assistance."[48]

FOF #15   Defendants are Mike Morath, in his official capacity as the Commissioner of the Texas Education Agency, the Texas Education Agency; and Attorney General Ken Paxton, in his official capacity as Attorney General of Texas.

FOF #16   The Texas Education Agency ("TEA") is the state agency that oversees primary and secondary public education.

FOF #17   On July 29, 2021, Governor Abbott issued Executive Order GA-38. This order is authorized by the Texas Disaster Act ("TDA"), the State's comprehensive set of statutes allocating powers and responsibilities during a disaster.[49] The TDA makes the Governor "responsible for meeting . . . the dangers to the state and people presented by disasters."[50] The TDA gives the Governor a broad array of powers allowing him to fulfill this responsibility.[51] Among other relevant provisions, Tex. Gov't Code § 418.012 gives the Governor the power to issue executive orders carrying "the force and effect of law."[52] The Texas Supreme Court has interpreted the TDA to allow the Governor to issue orders aimed at a variety of concerns, such as "encouraging

---

[45] *Id.*
[46] Exhs. 10, 27-28.
[47] Exh. 28.
[48] Stipulated Facts at Exh. A.
[49] *See* Tex. Gov't Code §§ 418.001 *et seq.*
[50] *Id.* at § 418.011.
[51] *Id.* at §§ 418.011–.026.
[52] *Id.* at § 418.012.

economic recovery, preserving constitutional rights, or promoting ballot integrity."[53] The scope of the Governor's emergency powers is not at issue here.

FOF #18  GA-38 bans most state and local officials from mandating the wearing of face masks and preempts any conflicting local orders on this issue.[54] GA-38 "strongly encourages" people to wear masks[55] but ultimately gives individuals the freedom to choose whether or not to wear a mask.[56] A local official or entity who imposes a mask mandate in violation of GA-38 is subject to a fine of up to $1,000.[57] Other than local officials, individuals cannot be punished under this section.[58]

FOF #19  TEA is authorized to issue Public Health Guidance pursuant to Executive Order GA-38. TEA published its Public Health Guidance on August 5, 2021. The portion of the August 5th Guidance Plaintiffs assert as relevant merely reiterates the requirements of GA-38:

> Per GA-38, school systems cannot require students or staff to wear a mask. GA-38 addressed government-mandated face coverings in response to the COVID-19 pandemic. Other authority to require protective equipment, including masks, in an employment setting is not necessarily affected by GA-38.
>
> School systems must allow individuals to wear a mask if they choose to do so.[59]

The August 5th Guidance does not specify how it will be enforced or who will enforce it.[60]

FOF #20  On August 19, 2021, TEA issued a revised Public Health Guidance, which replaced

---

[53] *Abbott v. Anti-Defamation League Austin, Sw., & Texoma Regions*, 610 S.W.3d 911, 918 (Tex. 2020).
[54] *Id.* at 3–5.
[55] *Id.* at 1.
[56] *Id.* at 3.
[57] *Id.* at 4–5.
[58] *See id.*
[59] Exh. 3 at 1.
[60] *See id.*

|   |   |
|---|---|
|   | all prior guidance. On September 2, 2021, TEA issued a revised Public Health Guidance, replacing all prior guidance.[61] On September 17, 2021, TEA issued its current Public Health Guidance, replacing all prior guidance and readopting the language used in its August 5 Guidance (quoted *supra*).[62] |
| FOF #21 | On August 17, 2021, Ken Paxton issued a letter to the Superintendent of Round Rock ISD stating that the district had "recently enacted a local policy mandating that students and faculty wear face masks at schools in your district" and stating that, unless the district rescinded its policy, it would "face legal action taken by [his] office to enforce the Governor's order and protect the rule of law." |
| FOF #22 | TEA's public health guidance lists GA-38's requirements regarding mask mandates, but does not itself impose such requirements.[63] TEA does not prohibit schools from instituting mask mandates, GA-38 does.[64] TEA's public health guidance references GA-38's mask requirements for informational purposes.[65] The intended effect of TEA's public health guidance is to provide information to the education community.[66] TEA does not have the authority to enforce GA-38, and cannot use its enforcement mechanisms against school districts requiring masks in contravention of GA-38.[67] TEA's policy is for schools to provide in-person instruction to as many students as can take advantage of it.[68] TEA does not offer guidance regarding required mitigation |

---

[61] https://tea.texas.gov/sites/default/files/covid/SY-20-21-Public-Health-Guidance.pdf
[62] Exh. 6. A copy of the September 17th Guidance is publicly available at https://tea.texas.gov/sites/default/files/covid/210917_21-22%20Public%20Health%20Guidance_final.pdf (last visited September 29, 2021).
[63] Exh. 7, 41:22-42:2.
[64] *Id.* at 42:3-7.
[65] *Id.* at 42:8-18.
[66] *Id.* at 43:22-44:2.
[67] *Id.* at 44:18-45:14.
[68] Exh. 8, 18:3-9.

strategies.[69]

FOF #23   TEA does not expect that school districts will follow its Public Health Guidance, but only that the districts will seriously consider the guidance.[70] TEA does not take action if school districts do not follow its guidance.[71] School districts have not sought TEA input on whether a given policy violates GA-38.[72] TEA has not enforced GA-38.[73] TEA knows that districts will have different reactions to its public health guidance.[74] TEA is unaware of any school districts withdrawing mask mandates as a result of its public health guidance.[75] The intent of TEA's public health guidance is to clearly restate existing law.[76]

FOF #24   TEA provides information to the OAG regarding local education agencies about which TEA has received complaints regarding compliance with GA-38.[77] TEA does so at the request of the OAG.[78] The information TEA provides is public information.[79] TEA does not know how the OAG uses the information.[80] When TEA receives complaints that school districts are not in compliance with GA-38, it responds that it does not have the authority to investigate such complaints, and refers the complainant to the local grievance process.[81]

FOF #25   TEA does have the authority to make rules, which are found in the Texas

---

[69] *Id.* at 18:10-23.
[70] *Id.* at 28:3-14.
[71] *Id.* at 28:15-22.
[72] *Id.* at 30:2-11.
[73] *Id.* at 34:2-7.
[74] *Id.* at 39:2-22.
[75] *Id.* at 50:24-51:5.
[76] *Id.* at 52:18-25.
[77] Exh. 7, 19:10-16.
[78] *Id.* at 19:17-23.
[79] *Id.* at 34:19-23.
[80] *Id.* at 19:24-20:9.
[81] *Id.* at 22:3-12.

|  |  |
|---|---|
|  | Administrative Code.[82] TEA adopts such rules pursuant to the procedures required by the Administrative Procedures Act.[83] TEA's Public Health Guidance is not a rule adopted by TEA pursuant to the Administrative Procedures Act, and TEA's mechanisms for enforcing its rules do not apply to enforcing its Public Health Guidance.[84] While the Public Health Guidance contains some requirements, its discussion of masks does not constitutes requirements.[85] TEA's discussion of mask requirements in the Public Health Guidance is not subject to investigation or enforcement by TEA, and TEA has instituted no such actions regarding alleged violations of GA-38.[86] |
| FOF #26 | The Office of the Attorney General ("OAG") has issued letters to school districts regarding compliance with GA-38.[87] The intent of those letters is to give the school districts the opportunity to move into compliance with the current state of the law, with the understanding that the OAG might institute legal action to assert the supremacy of state law over local ordinances or policies.[88] That legal action includes civil lawsuits in State Court seeking injunctions against mask mandates adopted by local school districts.[89] The authority of the OAG includes seeking an injunction to get a declaration and enjoin *ultra vires* acts.[90] The OAG has instituted legal actions against school districts such as Round Rock and Richardson school districts.[91] Those lawsuits demonstrate the nature of relief contemplated by OAG letters to school |

---

[82] *Id.* at 70:14-20.
[83] *Id.* at 70:21-25.
[84] *Id.* at 71:10-18.
[85] *Id.* at 71:19-72:17.
[86] *Id.* at 72:18-25.
[87] Exh. 9, 10:14-19.
[88] *Id.* at 22:4-19
[89] *Id.* at 23:11-19.
[90] *Id.* at 19:7-12.
[91] *Id.* at 39:24-40:5.

districts.[92] The letters to school districts contemplated seeking the full range of available civil action remedies.[93] Private parties have also sued local officials for violating GA-38 based on an *ultra vires* theory.[94]

## II. CONCLUSIONS OF LAW

### A. Plaintiffs Must Have Standing to Bring Suit.

COL #1      Plaintiffs, "as the parties asserting federal subject-matter jurisdiction, bear the burden of proving that its requirements are met."[95] If Plaintiffs do not sustain their burden, or if the Court is not otherwise satisfied that it has subject-matter jurisdiction, then the court lacks "power to adjudicate the case," and it must be dismissed.[96]

COL #2      With respect to the merits of plaintiff's claims, "the burden is on the plaintiff to prove every element."[97] At a bench trial, the Court should ignore any inadmissible evidence that it may hear when making its decisions.[98] Appellate courts will "review findings of fact for clear error and conclusions of law and mixed questions of law and fact de novo" in an appeal from a bench trial.[99]

COL #3      An injury can either be "actual" or "imminent" for standing purposes.[100] An imminent injury is subject to a more stringent standing test.[101] To be legally cognizable, the threatened injury must be "certainly impending"; "allegations of *possible* future injury

---

[92] *Id.*
[93] *Id.* at 40:11-15.
[94] *See, e.g.,* Order at 3, *Scribner, et al. v. Treger, et al.*, No. 02-21-00277-CV (Tex.App.—Fort Worth, Sept. 13, 2021) (publicly available at https://tinyurl.com/2ndCOAOrder02-21-00277.
[95] *Willoughby v. U.S. ex rel. U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013).
[96] *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)) (cleaned up).
[97] *Miraglia v. Bd. of Sup'rs of La. State Museum*, 901 F.3d 565, 573 (5th Cir. 2018) (quoting *Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016)) (cleaned up).
[98] *See Harris v. Rivera*, 454 U.S. 339, 346 (1981).
[99] *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 294 (5th Cir. 2009).
[100] *See, e.g.*, *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013) (hereinafter "*Amnesty International*").
[101] *See id.*

are not sufficient."[102]

COL #4      Under Fifth Circuit and Supreme Court precedent, requests for equitable relief implicate the standing test for "imminent" injuries.[103] To prove imminent injuries, Plaintiffs must show a "substantial risk that they will suffer the potential future injury absent the requested relief."[104]

COL #5      Plaintiffs have failed to prove that their injuries meet the standing test for "imminent" injuries.

COL #6      The Fifth Circuit set forth a two-step test for analyzing whether an injury is too speculative to confer standing. First, identify the core injury at issue.[105] If the injury is self-inflicted, the focus is on "the catalyst" for that self-inflicted injury—i.e. the harm the plaintiffs sought to avoid.[106] Second, "identify each contingency prompting" the injury.[107] "Each link in the chain of contingencies must be 'certainly impending' to confer standing."[108]

COL #7      Plaintiffs have not met the two-step requirement in *Glass v. Paxton* required to prove they have suffered a certainly impending injury that is fairly traceable to the Challenged Orders.

COL #8      Plaintiff's injury for purposes of standing is their concern about contracting COVID-

---

[102] *Id.* (brackets and quotations omitted).
[103] *See, e.g.*, *Stringer v. Whitley*, 942 F.3d 715, 721 (5th Cir. 2019); ("[P]laintiffs seeking injunctive relief must show a continuing or threatened future injury to themselves."); *Deutsch v. Annis Enterprises, Inc.*, 882 F.3d 169, 173 (5th Cir. 2018) (noting that the "standing requirements for equitable relief" require the plaintiff to "show that 'there is a real and immediate threat of repeated injury'") (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)); *Machete Productions, L.L.C. v. Page*, 809 F.3d 281, 288 (5th Cir. 2015) ("In the context of prospective injunctive and declaratory relief, past exposure to illegal conduct, by itself, does not evince a present case or controversy and thus cannot establish standing.") (citing *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)).
[104] *Stringer*, 942 F.3d at 721. The "substantial risk" standard is likely synonymous with—or at least not meaningfully distinguishable from—the "certainly impending" standard. *See Amnesty International*, 568 U.S. at 414 n.5).
[105] *Glass v. Paxton*, 900 F.3d at 239.
[106] *Id.*
[107] *Id.*
[108] *Id.*

|       |       |
|-------|-------|
|       | 19 due to the Challenged Orders, and an alleged injury of increased risk-of-harm cannot confer standing, particularly given that Plaintiffs have not established that this alleged injury is certainly impending.[109] |
| COL #9 | Plaintiff's alleged injury is too conjectural to confer standing because the injury's existence depends on the decisions of third parties, like the non-party school districts.[110] |
| COL #10 | Plaintiffs are not the object of the government action being challenged, and therefore Plaintiffs lack standing. The Challenged Orders do not require Plaintiffs to do (or not do) anything.[111] |
| COL #11 | For over 100 years, courts have applied *Ex parte Young* to find "that the defendant state official must have some enforcement connection with the challenged statute."[112] |
| COL #12 | In *California v. Texas*, the Supreme Court stated: "[O]ur cases have consistently spoken of the need to assert an injury that is the result of a statute's actual or threatened *enforcement*, whether today or in the future."[113] In *Whole Woman's Health v. Jackson*, the Supreme Court vacated an injunction to Texas's Senate Bill (S.B.) 8 on jurisdictional grounds.[114] In doing so, the Court framed the issue in terms of "enforcement," noting the State's "represent[ation] that neither it nor its executive employees possess the authority to enforce the Texas law either directly or indirectly" and the private defendant's sworn statement "that he has no present intention to enforce the law."[115] The Court explained: "[F]ederal courts enjoy the power to enjoin individuals tasked |

---

[109] *Shrimpers &Fisherman of RGV v. Tex. Comm'n on Envtl. Quality,* 68 F.3d 419, 424 (5th Cir. 2020); *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013); *Glass v. Paxton*, 900 F.3d 233 (5th Cir. 2018).
[110] *Hotze v. Burwell*, 784 F.3d 984, 995 (5th Cir. 2015).
[111] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992).
[112] *Okpalobi v. Foster*, 244 F.3d 405, 415 (5th Cir. 2001).
[113] 141 S. Ct. 2104, 2114 (2021) (citing cases).
[114] 21A24, 2021 WL 3910722, at *1 (U.S. Sept. 1, 2021).
[115] *Id.*

with enforcing laws, not the laws themselves."[116]

COL #13     Plaintiffs have not shown that Attorney General Paxton has an enforcement connection to the TEA Health Guidance. Thus, they lack standing to sue him over this order.

COL #14     Plaintiffs have not shown that Attorney General Paxton has the requisite enforcement connection to Governor Abbott's emergency orders.[117] Plaintiffs also have not shown that Attorney General Paxton's threatened enforcement of a law creates an Article III injury.[118] Thus, they lack standing to sue General Paxton over GA-38.

COL #15     Plaintiffs have failed to prove that the TEA Defendants have authority to enforce GA-38 or that the TEA Health Guidance enforces GA-38. Thus, they lack standing to sue the TEA Defendants over GA-38 or the TEA Health Guidance.

## B. Defendants Are Entitled to Sovereign Immunity as to Plaintiffs' American Rescue Plan Act and Americans with Disabilities Act Claims.

COL #16     A state's sovereign immunity can be overcome in three ways: (1) a clearly stated waiver or consent to suit by the state; (2) a valid abrogation by Congress; or (3) the *Ex parte Young* exception.[119]

COL #17     To be entitled to the *Ex parte Young* exception, "the plaintiff at least must show the defendant has 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'"[120] As detailed above, Plaintiffs have not shown that Defendants had the requisite enforcement connection with the

---

[116] *Id.* (citing *California v. Texas*, 141 S. Ct. at 2123).
[117] *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020), *cert. granted, judgment vacated sub nom. Planned Parenthood Ctr. for Choice v. Abbott*, 141 S. Ct. 1261 (2021) (holding that "the Attorney General ... lacks the required enforcement connection to GA-09 and may not be sued for injunctive relief under the Eleventh Amendment.").
[118] *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 158 (2014).
[119] *See Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990); *Ex parte Young*, 209 U.S. 123 (1908).
[120] *Tex. Democratic Party*, 978 F.3d at 179 (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)).

        Challenged Orders.[121]

COL #18        Plaintiffs' American Rescue Plan Act and Americans with Disabilities Act claims are barred by sovereign immunity.

### C. Section 504

COL #19        To establish a *prima facia* case for disability discrimination under Section 504, a plaintiff must show: (1) a qualifying disability; (2) that the plaintiff is being excluded from participation in, denied the benefits of, or otherwise discriminated against by a covered entity; and (3) such discrimination is solely by reason of the plaintiff's disability.[122] "Discrimination includes a failure to make accommodations."[123] To establish a *prima facie* reasonable accommodation claim under Section 504, the plaintiff must have either (1) identified his disability and resulting limitation and requested an accommodation in direct and specific terms, or (2) his disability, the resulting limitation, and the necessary reasonable accommodation must have been "open, obvious, and apparent" to the entity's relevant agents.[124]

COL #20        Plaintiffs must exhaust dispute-resolution procedures set out in the Individuals with Disabilities Education Act ("IDEA") even if they do not bring suit under IDEA because Plaintiff's claims seek redress for the school's alleged failure to provide a free appropriate public education via an individualized education plan that provides their child with meaningful access to education.[125] Plaintiffs have failed to exhaust their

---

[121] *Supra* at pgs. 14-23.
[122] *Francois v. Our Lady of the Lake Hospital, Inc.*, 8 F.4th 370, 378 (5th Cir. 2021) (citing *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 574 (5th Cir. 2018)); *Smith v. Harris Cnty., Tex.*, 956 F.3d 311, 316 (5th Cir. 2020) (discussing the difference between the Rehabilitation Act "solely by reason of" causation standard and the ADA "by reason of" causation standard).
[123] *Campbell v. Lamar Institute of Tech.*, 842 F.3d 375, 380 (5th Cir. 2016).
[124] *Id.* (citing *Smith v. Harris Cnty.*, 956 F.3d 311, 317 (5th Cir. 2020) and *Windham v. Harris Cnty.* 875 F.3d 229, 236 (5th Cir. 2017)).
[125] *McMillen v. New Caney Indep. Sch. Dist.*, 939 F.3d 640, 645 (5th Cir. 2019); *S.C. v. Round Rock Indep. Sch. Dist.*, No. A-19-CV-1177-SH, 2020 WL 1446857(W.D. Tex. Mar. 25, 2020).

remedies, barring their Section 504 claim.

COL #21    No Plaintiff can establish that he/she has been excluded from participation in, denied the benefits of, or otherwise discriminated against by any of the Defendants or that such discrimination is solely by reason of the plaintiff's disability. Some risk of exposure to COVID-19 is not exclusion, and no Plaintiff can establish exposure to unreasonably high levels of COVID-19.

### D. ADA Claim

COL #22    Section 504 and ADA claims are generally analyzed under the same standard.[126] Plaintiffs' ADA claim fails for the same reasons as their Section 504 claim.[127]

### E. American Rescue Plan Act

COL #23    The ARPA does not create an express or implied private cause of action.[128] Thus, Plaintiffs have failed to establish they have a private right of action to bring a claim pursuant to ARPA.[129]

COL#24    The Supremacy Clause does not provide for a private right of action, and a claim of preemption therefore does not provide a right of action under which Plaintiffs can seek relief.[130]

COL#25    Even if a cause of action for injunctive relief under ARPA existed, Plaintiffs fail to establish that ARPA preempts the Challenged Orders.[131]

---

[126] ECF 7 at 16.
[127] This includes Plaintiffs' failure to exhaust administrative remedies under the IDEA (*see, e.g., Logan v. Morris Jeff Cmty. Sch.*, No. 21-30258 (5th Cir. Sep. 28, 2021)).
[128] *Anthony Lamar ADC #120479 v. ASA Hutchison, et al.*, No. 4:21-CV-00529, 2021 WL 4047158 at * 6, n. 47 (E.D. Ark. Sep. 3, 2021).
[129] *Webb v. Texas Higher Education Coordinating Bd.*, Co. EP-14-CV-00345-FM, 2014 WL 12594193, at *12 (W.D. Tex., Dec. 12, 2014) (dismissing claim under Rule 12(b)(6) where statutory provision provided no private right of action).
[130] *Armstrong v. Exceptional Child Center, Inc.,* 575 U.S. 320 (2015).
[131] *Pac. Gas & Elec. Co. v. State Energy Resources Conservations & Development Com'n*, 461 U.S. 190 (1983)

## **PROPOSED DISPOSITION OF PLAINTIFFS' CLAIMS**

The Court **DISMISSES** Plaintiffs' claims under the Americans with Disabilities Act;

The Court **DISMISSES** Plaintiffs' claims under Section 504 of the Rehabilitation Act of 1973;

The Court **DISMISSES** Plaintiffs' preemption claims under the American Rescue Plan Act of 2021;

The Court **DISMISSES** Plaintiffs' preemption claims under the Americans with Disabilities Act;

**FURTHER,**

The Court **DENIES** Plaintiffs' request for attorneys' fees;

The Court **DECLINES** to assume jurisdiction over Plaintiffs' claims;

The Court **DENIES** Plaintiffs' request for declaratory relief; and

The Court **DENIES** Plaintiffs' request for preliminary and permanent injunction.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief - General Litigation Division

/s/ *Ryan G. Kercher*
RYAN G. KERCHER
Texas Bar No. 24060998
TAYLOR GIFFORD
Texas Bar No. 24027262
CHRISTOPHER HILTON
Texas Bar No. 24087727
TODD DICKERSON

Texas Bar No. 24118368  
Assistant Attorneys General  
Office of the Attorney General  
P.O. Box 12548, Capitol Station  
Austin, Texas 78711-2548  
Phone: 512-463-2120  
Fax: 512-320-0667  
Ryan.Kercher@oag.texas.gov  
Taylor.Gifford@oag.texas.gov  
Christopher.Hilton@oag.texas.gov  
Todd.Dickerson@oag.texas.gov  
***Counsel for Defendants***

## CERTIFICATE OF SERVICE

I certify that on October 5, 2021, a true and correct copy of the foregoing document was served via the Court's CM/ECF system to all counsel of record.

          */s/ Ryan G. Kercher*  
RYAN G. KERCHER  
Assistant Attorney General