**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

**FILED**

November 10, 2021

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____**SO**_____

DEPUTY

| | | |
|---|---|---|
| E.T., BY AND THROUGH HER | § | |
| PARENTS AND NEXT FRIENDS; D.D., | § | |
| BY AND THROUGH HER PARENTS | § | |
| AND NEXT FRIENDS; J.R., BY AND | § | |
| THROUGH HER PARENTS AND NEXT | § | |
| FRIENDS; H.M, BY AND THROUGH | § | |
| HER PARENTS AND NEXT FRIENDS; | § | |
| E.S., BY AND THROUGH HER | § | |
| PARENTS AND NEXT FRIENDS; | § | |
| M.P, BY AND THROUGH HER | § | |
| PARENTS AND NEXT FRIENDS; S.P., | § | |
| BY AND THROUGH HER PARENTS | § | |
| AND NEXT FRIENDS; AND | § | CAUSE NO. 1:21-CV-717-LY |
| A.M., BY AND THROUGH HER | § | |
| PARENTS AND NEXT FRIENDS, | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | |
| | § | |
| MIKE MORATH, IN HIS OFFICIAL | § | |
| CAPACITY AS THE COMMISSIONER | § | |
| OF THE TEXAS EDUCATION | § | |
| AGENCY; THE TEXAS EDUCATION | § | |
| AGENCY; AND ATTORNEY GENERAL | § | |
| KENNETH PAXTON, IN HIS OFFICIAL | § | |
| CAPACITY AS ATTORNEY GENERAL | § | |
| OF TEXAS, | § | |
| DEFENDANTS. | § | |

**MEMORANDUM OPINION INCORPORATING FINDINGS OF FACT AND
CONCLUSIONS OF LAW AND ORDER ON MOTION TO DISMISS**

On October 6, 2021, the court called the above-styled declaratory-judgment and injunctive

action for bench trial.[1]  Plaintiffs and Defendants appeared by counsel.  At issue is whether Texas

---

[1] Before and considered by the court are the Statement of Interest of the United States of
America filed September 29, 2021 (Doc. #47); Defendants' Trial Brief filed September 29, 2021
(Doc. #48); Defendants' Exhibit List filed September 29, 2021 (Doc. #49); Defendants' Deposition
Designations filed September 29, 2021 (Doc. #50); Plaintiffs' Witness List filed September 29, 2021
(Doc. #51); Plaintiffs' Designation of Deposition Testimony to Be Used at Trial filed September 29,

Governor Greg Abbott's Executive Order GA-38 ("GA-38") violates Title II of the Americans with Disabilities Act of 1990 ("ADA")[2] and Section 504 of the Rehabilitation Act of 1973 ("Section 504"),[3] and whether GA-38 is preempted by the ADA, Section 504, and the American Rescue Plan Act of 2021 ("ARP Act")[4].  Also before the court is Defendants' Motion to Dismiss filed September 13, 2021 (Doc. #34).  Having carefully considered the evidence presented at trial, the pleadings, the motion to dismiss, and the applicable law, the court concludes that declaratory and injunctive relief is warranted.  In so deciding, the court grants in part the motion to dismiss as to Defendants Mike Morath and the Texas Education Agency ("TEA") only and makes the following findings of fact and

---

2021 (Doc. #53); Plaintiffs' Trial Brief filed September 29, 2021 (Doc. #56); Stipulated Facts filed September 30, 2021 (Doc. #57); Brief of Amici Curiae Texas Pediatric Society and American Academy of Pediatrics in Support of Plaintiffs' Pretrial Filings and Opposition to Defendants' Motion to Dismiss filed September 30, 2021 (Doc. #60); Defendants' Response to Plaintiffs' Trial Brief filed October 4, 2021 (Doc. #62); Plaintiffs' Response to Defendants' Trial Brief filed October 4, 2021 (Doc. #63), along with Corrected Exhibit (Doc. #66); Defendants' Supplemental Exhibit List filed October 5, 2021 (Doc. #71); Defendants' Amended Proposed Findings of Fact and Conclusions of Law filed October 4, 2021 (Doc. #72); Amicus Curiae Brief of Counsel of Parents Attorneys & Advocates on the Subject of Administrative Exhaustion filed October 5, 2021 (Doc. #74); Plaintiffs' [Second] Amended Exhibit List filed October 5, 2021 (Doc. #75); Plaintiffs' Amended Proposed Findings of Fact and Conclusions of Law filed October 5, 2021 (Doc. #76); and Plaintiffs' Notice of Statutory and Regulatory Authority Relied Upon for Section 504/ADA Claims filed October 7, 2021 (Doc. #80).

Also before the court is Plaintiffs' Emergency Motion for Preliminary Injunction filed August 18, 2021 (Doc. #7).  Having considered and determined the merits of Plaintiffs' claims in this case, the court **DISMISSES** Plaintiffs' Emergency Motion for Preliminary Injunction filed August 18, 2021 (Doc. #7).

[2]  42 U.S.C. §§ 12131  12134 (1990); 28 C.F.R. § 35.130 (2016 ); 28 C.F.R. § 35.150 (2012).

[3]  29 U.S.C. § 794 (2016); 34 C.F.R. § 104.4 (2000).

[4]  Pub. L. No. 117-2, § 2001 (2021).

conclusions of law, ultimately concluding that GA-38 violates Plaintiffs' rights under the ADA and

Section 504 and is preempted by the ADA, Section 504, and the ARP Act.[5]

## I. Background

As of November 4, 2021, 6,503,629 total child COVID-19 cases have been reported in the

United States, representing more than 16.7% of the total cases in the United States.[6]  The prevalence

of pediatric COVID-19 cases has increased dramatically since the 2021-2022 school year began, with

23% of all child cases since the beginning of the pandemic diagnosed between August 13 and

September 23, 2021.[7]  This surge in child cases appears to be due to two principal factors: the

resumption of in-person schooling and the emergence of the Delta variant of COVID-19, which is

more than twice as contagious as previous variants.[8]  The Delta variant infects children at a higher

rate than previous variants and has caused higher infection rates among students than did the Alpha

variant during the previous school year.  The Delta variant also causes more serious illness and

increased fatality rates than prior COVID variants.

---

[5]  All findings of fact contained herein that are more appropriately considered conclusions of law are to be so deemed.  Likewise, any conclusion of law more appropriately considered a finding of fact shall be so deemed.

[6]  *See Children and COVID-19: State-Level Data Report*, *Summary of Findings*, AAP, https://www.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/children-and-covid-19-state-level-data-report/(data available as of 11/04/21).

[7]  *Children and COVID-19: State Data Report* at Fig. 6, Children's Hosp. Ass'n & Am. Acad. of Pediatrics (Sept. 23, 2021), https://downloads.aap.org/AAP/PDF/AAP%20and%20CHA%20-%20Children%20and%20COVID-19%20State%20Data%20Report%209.23%20FINAL.pdf.

[8]  *See Delta Variant: What We Know About the Science*, CDC (Aug. 26, 2021), https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html.

The spread of COVID-19 poses an even greater risk for children with special health needs. Children with certain underlying conditions who contract COVID-19 are more likely to experience severe acute biological effects and to require admission to a hospital and the hospital's intensive-care unit.[9] This includes children with conditions including, Down syndrome, organ transplants, lung conditions, heart conditions, and weakened immune systems.[10]

The majority of Texas public schools began in-person classes for the 2021-2022 school year between August 9 and 23, 2021. Since that time and up to October 31, 2021, 211,788 students have tested positive for COVID-19.[11] Since the start of the 2021-22 school year, at least 45 districts in Texas have temporarily shut down due to COVID-19 outbreaks among students and staff.[12] The United States Centers for Disease Control and Prevention's ("CDC") Guidance for COVID-19 Prevention in K-12 Schools, updated on November 5, 2021, recommends universal indoor masking for all teachers, staff, students, and visitors to K-12 schools, regardless of vaccination status.[13]

---

[9] *Caring for Children and Youth with Special Health Needs During the COVID-19 Pandemic*, AAP (last updated Sept. 20, 2021), https://www.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/clinical-guidance/caring-for-children-and-youth-with-special-health-care-needs-during-the-covid-19-pandemic/.

[10] *People with Certain Medical Conditions*, CDC, (last updated October 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[11] The most recent statistics on Texas school campuses are available at https://dshs.texas.gov/coronavirus/schools/texas-education-agency/.

[12] THE TEXAS TRIBUNE, September 3, 2021, available at https://www.texastribune.org/2021/09/03/texas-covid-school-districts-shut-down/.

[13] The CDC Guidance for COVID-19 Prevention in K-12 Schools is available at https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html.

Plaintiffs are seven students enrolled in the Texas public-school system who have disabilities as defined under the ADA and Section 504.  Plaintiffs' disabilities include Down syndrome, a heart defect, asthma, immune deficiency, underlying reactive airway disease, spina bifida, chronic respiratory failure, and cerebral palsy.  Plaintiffs' medical conditions place them at increased risk of contracting COVID-19 and experiencing severe symptoms from the virus.  In addition, six of the seven Plaintiffs were under the age of 12 at the time of trial and were not eligible to receive any of the currently authorized COVID-19 vaccines.[14]

During the 2020-21 school year, Texas independent school districts ("ISDs") were granted the discretion to choose whether to implement mask mandates for in-person instruction.  However, with the issuance of GA-38 on July 29, 2021,[15] governmental entities, including public-school districts, are prohibited from imposing mask requirements and any local-government entity or official that imposes a mask mandate is subject to a fine of up to $1000.[16]  On August 5, 2021, TEA, the state agency that oversees primary and secondary public education in Texas, issued an updated "Public Health Guidance," establishing requirements for school systems during the pandemic to reflect that "[p]er GA-38, school systems cannot require students or staff to wear a mask."  TEA's Guidance has updated three times since August 5, 2021, most recently on September 17, 2021.  All

---

[14] At the time Plaintiffs filed suit on August 17, 2021, the COVID-19 vaccine had not been approved for children under the age of 12.  On October 29, 2021, the U.S. Food and Drug Administration ("FDA")  formally approved the Pfizer COVID-19 vaccine for emergency use for children aged 5-11. The FDA's news release can be found at the following link: https://www.fda.gov/news-events/press-announcements/fda-authorizes-pfizer-biontech-covid-19-vaccine-emergency-use-children-5-through-11-years-age.

[15] Governor Abbott has issued subsequent Executive Orders since GA-38, none of which modify or amend the provisions of GA-38 at issue in this case.

[16] Executive Order No. GA-38, ¶ 4.

updates  including the September 17 update  reiterate GA-38's mandate that public schools are not permitted to require students, staff, or visitors to wear masks in their facilities.

Specifically, GA-38 provides, *inter alia*, that "[n]o governmental entity, including a . . . school district . . ., and no governmental official may require any person to wear a face covering or to mandate another person wear a face covering . . . ."  Texas Governor Greg Abbott's Executive Order GA-38, ¶ 4 (July 29, 2021).

School districts in Texas have not reacted uniformly to GA-38.  A number of school districts that had previously imposed mask requirements reversed course and made masking in school optional.  Others have implemented masking measures in schools despite the ban.  The latter school districts have been identified as potential or actual enforcement targets by Texas Attorney General Defendant Ken Paxton for their failure to comply with GA-38.   In recent weeks, Paxton has sent letters threatening school districts that have or have intended to implement mask requirements with civil suits in which he will seek to enjoin the school districts' alleged violations of GA-38's mask provision.  For example, on August 17, 2021, Paxton sent a letter to the Superintendent of Round Rock ISD stating that the district had "recently enacted a local policy mandating that students and faculty wear face masks at schools in your district" and stating that, unless the district rescinded its policy, it would "face legal action taken by [his] office to enforce the Governor's order and protect the rule of law."  On September 10, 2021, Paxton filed suit against six school districts: Richardson ISD, Round Rock ISD, Galveston ISD, Elgin ISD, Spring ISD, and Sherman ISD.  Plaintiff E.T. attends Round Rock ISD, and Plaintiff S.P. attends Richardson ISD.  On September 14, 2021, Paxton filed suit against nine additional school districts: La Vega ISD, McGregor ISD, Midway ISD, Waco ISD, Diboll ISD, Lufkin ISD, Longview ISD, Paris ISD, and Honey Grove ISD.

Paxton has also tweeted about his willingness to sue any public entity that does not comply with GA-38. On August 26, 2021, Paxton tweeted, "BIG WIN FOR LAW & LIBERTY! @GregAbbott_TX's ban on mask mandates is clear. Dem local govts didn't care. So I sued them. Dem judges sided with local D friends. SCOTX just ruled: The Gov's exec order stands. ALL public entities must comply   or be sued and lose over and over again." On September 14, 2021, right after Paxton increased his lawsuits against public school districts to 15, he tweeted, "I filed suit against 9 more Texas schools in violation of GA-38. We will continue until we have law and order."

In addition, the Office of the Attorney General of Texas's website maintains a "List of Government Entities Unlawfully Imposing Mask Mandates"[17] that states "Attorney General Ken Paxton is committed to protecting the rights and freedoms of all Texas. Executive Order GA-38 prohibits governmental entities and officials from mandating face coverings or vaccines. This order has the force and effect of state law and supersedes local rules and regulations." The list has been updated several times, the most recent update being on October 5, 2021. As of October 5, there are 102 school districts, schools, and counties listed as noncompliant, including but not limited to the following school districts in which some of the Plaintiffs are enrolled: Edgewood ISD, San Antonio ISD, Round Rock ISD, Leander ISD, and Richardson ISD. There are 40 school districts and counties listed as "previously not in compliance" but "now in compliance," including but not limited to the following school districts in which some of the Plaintiffs are enrolled: Killeen ISD and Fort Bend ISD. The list indicates which school district or county is both "currently not in compliance" and has been sent a letter by the Attorney General's Office.

_____

[17] The List of Government Entities Unlawfully Imposing Mask Mandates is available at the following link: https://www.texasattorneygeneral.gov/covid-governmental-entity-compliance.

On August 17, 2021, Plaintiffs sued, alleging that GA-38 violates the ADA and Section 504 because GA-38 denies Plaintiffs equal access to in-person school and prohibits schools from considering mask mandates as a reasonable accommodation for students with disabilities who are at greater risk of contracting COVID-19 or suffering severe illness as a result of the virus, and that GA-38 is preempted by the ARP Act.  The ARP Act has allocated over $11 billion dollars in funding to Texas public schools to implement safety protocols in an effort to promote in-person instruction for the 2021-2022 school year.  Plaintiffs allege that GA-38 is preempted by the ADA and Section 504.  Plaintiffs seek to enjoin Defendants from enforcing GA-38 insofar as it prohibits Plaintiffs' school districts from considering whether to implement mask requirements as part of their COVID-19 mitigation strategies.  In response, Defendants assert that (1) Plaintiffs lack standing based on Plaintiffs' failure to show both imminent injury and Paxton's authority to enforce GA-38; (2) Defendants are entitled to sovereign immunity as to Plaintiffs' ARP Act and ADA claims; (3) Plaintiffs have failed to exhaust their administrative remedies; (4)  Plaintiffs' ADA and Section 504 claims fail because Plaintiffs have not established that some exposure to COVID-19 constitutes exclusion; and (5) the ARP Act does not create an express or implied private cause of action.

## II.  Jurisdiction

Plaintiffs assert that the court has subject-matter jurisdiction in this case.  "[A]s the parties asserting federal subject-matter jurisdiction, [Plaintiffs] bear the burden of proving that its requirements are met."  *Willoughby v. U.S. ex rel. U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013).  "A plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction."  *Cell Science Sys. Corp. v. La. Health Serv.*, 804 F. App'x 260, 264 (5th Cir. 2020)

8

(quoting *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)).   Moreover, courts "have an independent obligation to determine whether subject-matter jurisdiction exists." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006).   A plaintiff's failure to meet its burden, removes the court's "power to adjudicate the case." *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

### *Sovereign Immunity–Enforcement*

A state's sovereign immunity can be overcome in three ways: (1) a clearly stated waiver or consent to suit by the state; (2) a valid abrogation by Congress; or (3) the *Ex parte Young* exception. *See Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990); *Ex parte Young*, 209 U.S. 123 (1908).   Plaintiffs argue that Defendants' sovereign immunity has been waived for the Section 504 claim, an issue Defendants do not dispute at this stage.   With regard to Plaintiffs' claims under the ADA and the ARP Act, Plaintiffs argue that the *Ex parte Young* exception applies.   To be entitled to this exception, "the plaintiff at least must show the defendant has 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'" *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1124 (2021) (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2004)).

### *Defendants Morath and TEA*

Defendants argue that Plaintiffs lack standing against TEA and Commissioner Mike Morath because Morath and TEA have never enforced or threatened to enforce GA-38 against any person or entity.   The court agrees.

9

A motion to dismiss filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to challenge the subject-matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Id*. (citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995)).

TEA is authorized to issue Public Health Guidance pursuant to GA-38. Germane to GA-38 is TEA's August 5, 2021 Guidance that provides in relevant part:

> Per GA-38, school systems cannot require students or staff to wear a mask. GA-38 addressed government-mandated face coverings in response to the COVID-19 pandemic. Other authority to require protective equipment, including masks, in an employment setting is not necessarily affected by GA-38.
>
> School systems must allow individuals to wear a mask if they choose to do so.

The August 5, 2021 Guidance does not specify how it will be enforced or who will enforce it. The Guidance and subsequent superseding versions have never been enforced against a school district or an individual student or staff member.

Moreover, the Guidance is not a rule promulgated by TEA pursuant to the Texas Administrative Code.[18] Thus, TEA's mechanisms for enforcing its rules do not apply to the

---

[18] The Texas Administrative Code is a compilation of all Texas state-agency rules and is published by the Office of the Secretary of State. The Texas Administrative Code is divided into titles and parts to represent subject categories and related state agencies. The State Board of Education and Commissioner of Education rules are codified in the Texas Administrative Code. *See*

Guidance, and the Guidance's discussion of mask requirements is not subject to investigation or enforcement by TEA.  Because Plaintiffs cannot show the threat of future enforcement from Morath or TEA, the court concludes that Plaintiffs lack standing to challenge GA-38 against Morath and TEA.  Therefore, the court will dismiss Plaintiffs' claims against Morath and TEA for lack of subject-matter jurisdiction.

*Defendant Paxton*

Defendants assert that a court order enjoining Paxton from enforcing GA-38 will not redress Plaintiffs' injuries "as he does not enforce GA-38 in the first place."  Defendants argue that the GA-38 is akin to a criminal statute and therefore can only be enforced by other officials such as local district attorneys.  Diverting the court to several Fifth Circuit and United States Supreme Court cases, Defendants argue that Plaintiffs have failed to show Paxton's "enforcement connection" to GA-38 because Paxton has not demonstrated a willingness to exercise a duty to enforce GA-38.  *See Tex. Democratic Party*, 978 F.3d at 179.  However, unlike this case, in the cases cited by Defendants, the officials involved were not or could not actively enforce the statute at issue.[19]

The Supreme Court in *Ex Parte Young* held that

---

19 Tex. Admin. Code, Part 2 (Tex. Edu. Agency Rules).

   [19] *City of Austin*, 943 F.3d 993; *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467  69 (5th Cir. 2020); *Morris v. Livingston*, 739 F.3d at 745  46; *Okpalobi v. Foster*, 244 F.3d 405, 414  16 (5th Cir. 2001).  *See also Tex. Democratic Party v. Hughs*, 2021 WL 2310010, at *3 (5th Cir. June 4, 2021) (press release announcing a requirement contained no specific threat of enforcement); *Tex. Democratic Party*, 978 F.3d at 180 (Governor's suspension of primary election and extension of early voting period were not sufficient connection to enforcement of challenged election code provision regarding mail-in voting, and Attorney General Paxton's statements that distributing mail-in ballots was illegal were not specific threats of enforcement); *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020) (Attorney General's press release stating that challenged law would be enforced did not contain specific threats of enforcement), *cert. granted, judgment vacated sub nom. Planned Parenthood Ctr. for Choice v. Abbott*, 141 S. Ct. 1261, (2021).

individuals, who, as officers of the State, are clothed with *some* duty in regard to the enforcement of the laws of the State, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action.

209 U.S. at 155 56 (emphasis added).  For the purpose of injunctive relief, the state officer "must have some connection with the enforcement of the act."  *Id*. at 157.

The evidence presented to the court shows that Paxton has some authority to enforce GA-38, and that he has a willingness to enforce and has successfully enforced GA-38 against numerous school districts.  The record before the court contains sufficient evidence of Paxton's active enforcement as well as continued threat of enforcement  a willingness to exercise his duty to enforce GA-38.  Paxton has filed lawsuits against at least 15 school districts    including districts that some Plaintiffs attend    alleging that they have violated GA-38 by requiring masking and asking for injunctive relief compelling those school districts to discontinue their mask mandates.  He has also sent letters to at least 98 school districts    including districts that some Plaintiffs attend    accusing them of violating GA-38 by requiring masking, demanding that the school districts discontinue their mask mandates, and threatening them with litigation.

Additionally, Paxton has  made public threats that he will sue other school districts to enforce GA-38, has tweeted about his litigation campaign against school districts who seek to require masking, and has posted on his official website a list of school districts    including all school districts Plaintiffs attend    that he claims are in violation of GA-38.

"[T]he use of the name of the state to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of, and one which does not affect, the state in its sovereign or governmental capacity."   Instead, [i]t is simply an illegal act upon the part of a state

12

official in attempting . . . to enforce," and "[t]he state has no power to impart to him any immunity from responsibility to the supreme authority of the United States." *Id*. at 159 60.  By actively engaging in the enforcement of GA-38, Paxton not only has demonstrated that he believes that he has the power to enforce GA-38, but also "by virtue of his office" he is "sufficiently connected []  with the duty of enforcement to make him a proper party." *Id*. at 161.

### *Standing–Imminent Injury*

Article III of the Constitution limits a federal court's jurisdiction to cases or controversies.  In other words, a plaintiff must have standing for a district court to have jurisdiction over the case.  There are three constitutional standing requirements identified by the Supreme Court: injury in fact, causation, and redressability.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 61 (1992).

Defendants challenge whether the injuries alleged by Plaintiffs are redressable.  The Supreme Court has made clear that the redressability standing requirement must be satisfied prior to entering federal court.  *See, e.g., Allen v. Wright*, 468 U.S. 737 (1984).  The standard is not whether the proposed remedy is an absolute solution, but rather, whether it will "be 'likely,' as opposed to merely 'speculative,' " to redress the plaintiff's injury.  *Lujan*, 504 U.S. at 561; *see also Uzuegunam v. Preczewski*, _____ U.S. ___, 141 S. Ct. 792, 797 (2021) (emphasizing ability to effectuate partial remedy satisfies redressability requirement).

The injury requirement "helps to ensure that the plaintiff has a 'personal stake in the outcome of the controversy.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  In addition to existing injuries, "imminent" injuries meet the injury requirement.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (stating that "an injury

must be 'concrete, particularized, and actual or imminent'") (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).  An injury is sufficiently imminent to confer standing if there is a "'substantial risk' that the harm will occur." *Driehaus*, 573 U.S. at 158 (quoting *Clapper*, 368 U.S. at 414 n. 5).

Defendants argue that Plaintiffs' injury claims are speculative, characterizing them as follows: "(1) becoming infected with COVID-19 if they attend school in person or (2) being forced to stay home to avoid getting COVID-19," and Defendants list several contingencies that they assert demonstrate the speculative nature of these injuries.  In response, Plaintiffs assert that their injury is the deprivation of reasonable access to in-person public schooling; that the evidence shows that some Plaintiffs are currently suffering that injury and that others will imminently face it;  that the evidence shows that Paxton's conduct has deprived Plaintiffs of reasonable access to in-person public school; and that the evidence shows that the injunction Plaintiffs seek would redress their injuries. Thus, Plaintiffs argue, they do not have to show that Paxton's enforcement of GA-38 will actually cause any of them to contract COVID or that they would actually contract COVID in a mask-optional school environment.  The court agrees.

The court concludes that Plaintiffs have standing to challenge GA-38 in this court because they allege a concrete and particularized injury that is redressable.  During the 2020  2021 school year, several school districts around the state adopted, implemented, and enforced mask mandates for students, staff, and teachers.  Paxton has a willingness to enforce and is actively enforcing GA-38 by both his words and his actions, and the court finds that Paxton's actions create an enforcement connection sufficiently connected with his duty to enforce.  If GA-38 were not enforced, school districts would have the discretion to implement a mandatory mask policy on school grounds without

violating GA-38 and risking a lawsuit by Paxton.  Therefore, it is not merely speculative that enjoining enforcement of GA-38 will redress Plaintiffs' alleged injuries.

### *Administrative Exhaustion*

The Individuals with Disabilities Education Act ("IDEA")[20] ensures that physically or intellectually disabled students receive necessary special education services by requiring states to provide a free appropriate public education ("FAPE").  "Under the IDEA, an 'individualized education program,' called an IEP for short, serves as the 'primary vehicle' for providing each child with the promised FAPE."  *Fry v. Napoleon Cmty. Schs.*, ____ U.S. ____, 137 S. Ct. 743, 749 (2017).  Congress permits a plaintiff to bring claims for the denial of a FAPE under the IDEA so long as the plaintiff first exhausts his or her administrative remedies under the IDEA.  20 U.S.C. § 1415(l) .

However, when "the remedy sought is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required."  *Fry*, 137 S. Ct. at 754.  To determine whether the relief sought falls under the IDEA,  the court must look to the "gravamen" of the plaintiff's complaint.  *Id.* at 755.

> That inquiry makes central the plaintiff's own claims, as § 1415(l) explicitly requires. The statutory language asks whether a lawsuit in fact "seeks" relief available under the IDEA   not, as a stricter exhaustion statute might, whether the suit "could have sought" relief available under the IDEA (or, what is much the same, whether any remedies "are" available under that law) . . . .  A court deciding whether § 1415(l) applies must therefore examine whether a plaintiff's complaint   the principal instrument by which she describes her case   seeks relief for the denial of an appropriate education. But that examination should consider substance, not surface. The use or (non-use) of particular labels and terms is not what matters.

---

[20]   20 U.S.C. §§ 1400  1482 (2017).

*Id*.  In other words, Section 1415(l) "requires exhaustion when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way." *Id*.

The court first asks whether "the plaintiff [could] have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school." *Id.* at 756.  Second, the court must ask "could an *adult* at the school . . . have pressed essentially the same grievance?" *Id.*  If the answer to both questions is "yes," the claim is not one for the denial of a FAPE under the IDEA and there is no exhaustion requirement.  *Id.*

Applying the *Fry* analysis, the court finds that the gravamen of Plaintiffs' claims seek relief for disability discrimination, not for denial of a FAPE.  Plaintiffs seek redress for GA-38's prohibiting school districts from mandating masks in public schools in Texas.  Plaintiffs contend that universal mask mandates should be required in their public schools to prevent them from physical injury, hospitalization, perhaps even death, all of which fall outside that IDEA.  Defendants assert that Plaintiffs' claims are grounded in relief that is available through the IDEA.  The court's review of Plaintiffs' live complaint, however, reveals that it does not allege what Defendants contend.

Defendants assert that Plaintiffs' claim that GA-38 effectively excludes them as disabled children from receiving an education necessarily alleges a denial of a FAPE.  Defendants' argument confuses quality of education with access to school.  As the Supreme Court recognized in *Fry*, "even when the suit arises directly from a school's treatment of a child with a disability    and so could be said to relate in some way to [the child's] education"    the "school's conduct toward [the] child . . . might injure [the child] in ways unrelated to a FAPE." 137 S. Ct. at 754.  Although Plaintiffs' claims relate to their education, Plaintiffs do not seek the type of special-education services that the

16

IDEA guarantees. Rather, Plaintiffs seek to allow their public-school districts the discretion to impose mask mandates and provide children with "non-discriminatory access to public institutions" under the ADA and Section 504. *Id.* at 756. Plaintiffs allege they have been excluded from participating in or denied the benefits of the programs, services, or activities of a public entity based upon their disabilities. Therefore, Plaintiffs' claims are properly brought under the ADA and Section 504, and there is no requirement for them to exhaust the IDEA's administrative process.

Additionally, Plaintiffs could bring their claims for the alleged discriminatory conduct at another public facility, such as a library. An adult, including teachers or a staff members at a public school, could also bring the claims alleged by Plaintiffs. Thus, the gravamen of Plaintiffs' claims is not for the denial of a FAPE, and the IDEA's exhaustion requirement is not applicable in this case.

### III.  Discussion and Analysis

Plaintiffs allege that they are students with disabilities whose medical conditions carry an increased risk of serious complications or death in the event that they contract COVID-19, and that because of these conditions GA-38 has or will prevent them from returning to in-person classes without serious risk to their health and safety. Plaintiffs assert that there are no practicable education alternatives for students with disabilities who cannot safely return to school in person; thus, GA-38 has the effect of "placing children with disabilities in imminent danger or unlawfully forcing those children out of the public school system" in violation of the ADA and Section 504. Plaintiffs further assert that GA-38 is preempted under the Supremacy Clause of the Constitution because GA-38 directly conflicts the with ADA and Section 504, and because it conflicts with the ARP Act by not following certain conditions imposed for the receipt of COVID-related funding under the terms of the act.

17

*Preemption*

The Supremacy Clause makes clear that a state statute is preempted to the extent it conflicts with federal law.  *See* U.S. CONST. art. VI, cl. 2.  State law conflicts with federal law either (1) when it is impossible to comply with both state and federal law or (2) "where 'under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Crosby* v. *Nat'l Foreign Trade Council*, 530 U.S. 363, 372  73 (2000) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

These principles apply to state laws that interfere with the ability to comply with federal prohibitions on disability discrimination.[21]  A state or local government cannot deny a modification for a person with a disability solely on the basis that it would violate state law.  *See, e.g., Crowder* v. *Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996) (concluding Hawaii's animal quarantine law, as applied to guide dogs, interfered with state's compliance with ADA); *Barber* v. *Colo. Dep't of Revenue*, 562 F.3d 1222, 1232  33 (10th Cir. 2009) (emphasizing proposed accommodation under ADA not unreasonable simply because might require defendants to violate state law); *Astralis Condo. Ass'n  v. HUD*, 620 F.3d 62, 69  70 (1st Cir. 2010) (defendant could not rely on Puerto Rico law to refuse accommodation required under Fair Housing Act for person with disability).

The court concludes that GA-38 conflicts with federal law to the extent that it interferes with local school districts' ability to satisfy their obligations under the ADA and Section 504 and their

---

[21]  ADA and Section 504 claims are governed by the same legal standards.  *Bennet-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005) (citing *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 287  88 (5th Cir. 2005)).  "The remedies, procedures, and rights available under the Rehabilitation Act parallel those available under the ADA." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020*), citing *Delano-Pyle v. Victoria Cty*., 302 F.3d 567, 574 (5th Cir. 2002).  "Thus, '[j]urisprudence interpreting either section is applicable to both.' " *Id.* (quoting *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000)*).

implementing regulations.  Under these circumstances, Texas has an obligation to make "reasonable modifications" to its ban on school-masking requirements to avoid subjecting students with disabilities to unlawful discrimination.  *See* 28 C.F.R. § 35.130(b)(7)(i).  The clear intent of Congress is to place the authority with local school districts to decide by what means to comply with their obligations under the ADA and Section 504.  GA-38 ignores that intent, removing that authority from local school districts and placing all authority state wide with the Governor.

Moreover, GA-38 conflicts with the ADA and Section 504 because it excludes disabled children from participating in and denies them the benefits of public schools' programs, services, and activities to which they are entitled, "stand[ing] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines*, 312 U.S. at 67.  The Supremacy Clause requires that federal law prevail over a conflicting state law.  The court concludes that to the extent that school districts cannot comply with GA-38's ban on mask requirements and at the same time meet their obligations under the ADA and Section 504, the ADA and Section 504 supersede any conflicting provisions of GA-38.

The ARP Act was enacted to address the impact of the COVID-19 pandemic and facilitate recovery from its health and economic effects.  *See* Pub. L. No. 117-2.  The act provides nearly $121 billion in Elementary and Secondary School Emergency Relief funding in order to "help schools return safely to in-person instruction maximize in-person instructional time, sustain the safe operation of schools, and address the academic, social, emotional, and mental health impacts of the COVID-19 pandemic on the Nation's students."  American Rescue Plan Act Elementary and Secondary School Emergency Relief Fund, 86 Fed. Reg. 21195, 21196 (Apr. 22, 2021).  Local school districts in Texas have been allocated over $11 billion in funding to address those needs. U.S.

Dep't of Education, American Rescue Plan Elementary and Secondary School Emergency Relief Fund   Methodology for Calculating Allocations (Revised June 25, 2021) at 3.

A key purpose of the school funding is to assist schools in achieving a "safe return to in-person instruction." Pub. L. No. 117-2, § 2001(I).  Thus, the ARP Act requires local school districts receiving funding to develop and make publicly available a "plan for the safe return to in-person instruction and continuity of services."  *Id.*  at § 2001(i)(1).  Although the act does not require local school districts to adopt CDC guidance on universal masking, it does require that each school district's safe-return plan describe "the extent to which it has adopted policies, and a description of any such policies, on each of the following safety recommendations established by the CDC . . . ," specifically including "universal and correct wearing of masks."  86 Fed. Reg. 21195, 21200.

Plaintiffs argue that because the ARP Act requires school districts to create a plan and GA-38 inhibits the school districts'   who have been granted the authority alone under the act to create a plan   discretion to create that plan, GA-38 conflicts with federal law to the extent that it interferes with local school districts' ability to satisfy their obligations under the act.  Defendants argue that the act does not create a private cause of action, nor does the Supremacy Clause create any federal rights.  *See Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 626 (5th Cir. 2017).

The failure of the Supremacy Clause to confer a right of action does not diminish the significant role that courts play in assuring the supremacy of federal law.  *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015).  When a case or controversy is properly before the court, the court is bound by federal law.  *Id.*  Thus, "a court may not hold a civil defendant liable under state law for conduct federal law requires."  *Id.* (internal citations omitted).  "[I]f an individual

claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Id.* (citing *Ex parte Young*, 209 U.S. at 155  56).

When a federal-funding statute expressly gives local authorities discretion over how to spend federal money, any state law that  purports to restrict that discretion is preempted.  *See Lawrence County v. Lead-Deadwood School Dist.*, 469 U.S. 256, 260  61 (1984).  Congress choice to vest that discretion with local school districts rather than state governments is a valid exercise of Congress' power under the Spending Clause of the Constitution[22] to impose conditions on the receipt of federal funds and thus does not raise federalism concerns.  *Id.* at 269  70.

Plaintiffs assert that because GA-38 expressly prohibits local schools from implementing any mask requirements, GA-38 is in direct conflict with the ARP Act and is preempted as contrary to federal law because GA-38 "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *See Felder v. Casey*, 487 U.S. 131, 138 (1988).  Thus, Plaintiffs' claim for preemption under the act is properly before this court not because of any private right of action under the act, but based on the equitable power of federal courts to enjoin unlawful actions by state officials.  *See Armstrong*, 575 U.S. at 327 (2015) ("[W]e have long held that federal courts may in some circumstances grant injunctive relief against state officers who are violating, or planning to violate, federal law.");  *Ex parte Young*, 209 U.S. at 150  51.

Plaintiffs' ARP Act preemption claim also falls within this court's jurisdiction under Section 1331 of Title 28 of the United States Code because the language of the act does not purport to remove that jurisdiction.  *See Verizon Md., Inc. v. Public Serv. Comm'n of Md.,* 535 U.S. 635, 643 (2002) (holding that telecommunications carrier could assert preemption claim under court's

---

[22]  *See* U.S. CONST. art. I, § 8, cl. 1.2.

equitable power because nothing in federal Telecommunications Act purported to bar or restrict such claims). Plaintiffs may invoke this court's equitable jurisdiction because the act does not expressly or impliedly indicate that Congress intended to preclude enforcement by such means. *See Armstrong*, 575 U.S. at 327 28.

It cannot be more clear that Congress intends that the local school district receiving ARP Act funds be the ultimate decider of the requirements of the safe return to in-person instruction of students within that district.

### *Violation of ADA and Section 504*

The Texas state constitution establishes that "it shall be the duty of the Legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of public free schools." TEX. CONST. art. VII, § 1. The ADA ensures that state and local governments, in fulfilling this constitutional function, include children with disabilities equally within their ambit. Specifically, the ADA prohibits disability discrimination by state and local governments, including in "[a]ll programs, services, and regulatory activities relating to the operation of elementary and secondary education systems[.]" 28 C.F.R. § 35.190(b)(2). The focus of both the ADA and Section 504 is prohibiting discrimination for those with disabilities. 29 U.S.C. § 701(a)(3)(F) (Rehabilitation Act) (Congress found that individuals with disabilities should "enjoy full inclusion and integration in the economic, political, social, cultural, and educational mainstream of American Society."); 42 U.S.C. § 12101 (ADA) (Congress found that individuals with disabilities should be assured "equality of opportunity, full participation, independent living, and economic self-sufficiency."). Both the ADA and Section 504 also prohibit exclusion from participation, denial of benefits, or other kinds of discrimination. 42 U.S.C. § 12132; *Wilson v. City of Southlake,* 936 F. 3d

326, 330 (5th Cir. 2019). Therefore, the court's application of the ADA and its provisions in this case will apply equally to Plaintiffs' Section 504 claims.

On its face, GA-38 does not provide an exception even where a local school decides, based on an individualized assessment, that a mask mandate is necessary to comply with its ADA obligations; and Defendants did not indicate that Texas will interpret the GA-38 to allow for such an exception. Plaintiffs assert that there are no practicable education alternatives for students with disabilities who cannot safely return to school in person. Consequently, Plaintiffs allege, GA-38 has the effect of "placing children with disabilities in imminent danger or unlawfully forcing those children out of the public school system."

"The ADA is a 'broad mandate' of 'comprehensive character' and 'sweeping purpose' intended 'to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American life.'" *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011) (citations omitted). Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a). An individual with a disability is "qualified" if, with or without reasonable modifications to rules, policies, or practices, the individual meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by the public entity. 42 U.S.C. § 12131(2). Public education is a quintessential governmental service, program, or activity, and Plaintiffs, all of whom are enrolled or eligible for Texas's public education system, are qualified to participate in and receive the benefits of that service, program, or activity.

The Department of Justice has issued regulations to implement the ADA's mandate.  *See* 42 U.S.C. § 12134 (charging Attorney General to issue implementing regulations).  These regulations, codified at 28 C.F.R. Part 35, are entitled to deference.  *See Frame*, 657 F.3d at 225.  The regulations address the many different forms that disability discrimination can take, including discrimination that results from a public entity's implementation of facially neutral policies.  *See generally* 28 C.F.R. § 35.130.  Discrimination against individuals with disabilities results not just from intentional exclusion, but also from segregation; the failure to make modifications to existing practices; relegation to lesser services, programs, activities, benefits, or other opportunities; and exclusionary qualification standards and criteria.  *See* 42 U.S.C. § 12101(a)(5).

The ADA regulations prohibit public entities from utilizing "criteria or methods of administration" that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability or that have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the public entity's program with respect to individuals with disabilities.  28 C.F.R. § 35.130(b)(3)(i) and (ii).  In this context, "[t]he phrase 'criteria or methods of administration' refers to official written policies of the public entity and to the actual practices of the public entity."  28 C.F.R. pt. 35, app. B, § 35.130.  Thus, GA-38 is an official policy of a public entity and is subject to the prohibitions of Section 35.130(b)(3)(i) and (ii).

The ADA prohibits denying students with disabilities the "opportunity to participate in or benefit from" a school's aid, benefits, or services that is "equal to that afforded others";[23] denying students with disabilities "the opportunity to participate in services, programs, or activities that are

---

[23]   28 C.F.R. § 35.130(b)(1)(i) and (ii).

not separate or different" from those provided to non-disabled students;[24] and denying students with disabilities the opportunity to receive a school's "services, programs, and activities in the most integrated setting appropriate to the needs" of students with disabilities.[25]  Public entities have an affirmative obligation to make reasonable modifications in their policies, practices, or procedures when necessary to avoid discrimination on the basis of disability, unless they can show that so doing would fundamentally alter the nature of the service, program, or activity. 28 C.F.R. § 35.130(b)(7)(i).

The evidence presented to the court establishes that GA-38 forbids and Paxton's enforcement of GA-38 forcefully prohibits school districts from adopting a mask mandate of any kind, even if a school district determines after an individual assessment that mask wearing is necessary to allow disabled students equal access to the benefits that in-person learning provides to other students. Denying students with disabilities the equal opportunity to participate in in-person learning with their non-disabled peers means that they are being "excluded from participation in or be[ing] denied the benefits of the services, programs, or activities of a public entity."  42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).  Such a policy is unlawful because it "ha[s] the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability."  28 C.F.R. § 35.130(b)(3).   As Plaintiffs allege and the evidence proves, the "policy" in this case prevents local school districts from satisfying their ADA obligations to provide students with disabilities the "opportunity to participate in or benefit from" in-person instruction that is "equal to that afforded others," that is "not separate or different" from that provided to non-disabled students, and that is "in the most integrated setting appropriate."  28 C.F.R. § 35.130(b)(1), 35.130(b)(2), and 35.130(d).

---

[24]   28 C.F.R. § 35.130(b)(2).

[25]   28 C.F.R. § 35.130(d).

Moreover, the evidence further establishes that even if a school were to determine based on an individualized assessment that requiring masks is a reasonable modification necessary to enable a student with disabilities to have equal access to a safe, integrated, in-person learning environment, the school would be prohibited from providing that accommodation under GA-38.  GA-38 expressly prohibits a school district from requiring "any person to wear a face covering," clearly forbidding such a reasonable modification no matter the scope of a local school's mask mandate.  Thus, GA-38 not only prohibits school districts from implementing universal masking in schools in accordance with CDC guidelines, but also from imposing limited mask requirements, such as in one wing of a school building or in one classroom, or by requiring an individual aide to wear a mask while working one-on-one with a student who is at heightened risk of serious illness or death from COVID-19.

A public entity may avoid having to modify its program, service, or activity if it "can demonstrate that making the modifications would fundamentally alter the nature of the program, service, or activity."  28 C.F.R. § 35.130(b)(7)(i).  However, Defendants have failed to present any evidence that would support a claim that mask requirements fundamentally alter the educational programs of local school districts.

Defendants also argue that GA-38 does not violate the ADA or Section 504 because GA-38 does not ban Plaintiffs from attending school in-person.   Although GA-38 does not ban Plaintiffs from attending in-person instruction, the ADA requires more than mere access to programs, services, or activities; it prohibits denying individuals with disabilities the benefits of services, programs, or activities on the basis of their disability.  42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).  Even where an individual "is not wholly precluded from participating in [a] service, if he is at risk of incurring

serious injuries each time he attempts to take advantage of [the service], surely he is being denied the *benefits* of this service." *Allah v. Goord*, 405 F. Supp. 2d 265, 280-81 (S.D.N.Y. 2005).

In *Allah*, an inmate with partial paralysis brought an ADA claim against prison officials for allegedly providing unsafe transportation to and from medical appointments. *See id.* at 269-70.  The district court denied the prison officials' motion to dismiss, holding that the plaintiff had pleaded sufficient allegations to establish a violation of the ADA where the plaintiff had alleged that prison officials "knew or should have known of the dangers" that inmates with disabilities are "exposed to when they are transported in an unsafe vehicle" but took no steps to make that environment safe. *Id.* at 279.  *Allah* illustrates the proposition that an ADA violation can arise where a public entity provides a service or benefit to all participants but effectively excludes people with disabilities by failing to account for or take steps to remedy the ways in which that service may place participants with disabilities at increased risk of harm.  *See also Gorman v. Bartch*, 152 F.3d 907, 913 (8th Cir. 1998) (arrestee stated claim where post-arrest transportation was provided but was unsafe for arrestee using wheelchair).

And the Fourth Circuit has instructed that the district court consider the increased risk of harm to a plaintiff from a defendant's actions. *J.D. v. Colonial Williamsburg Found.*, 925 F.3d 663, 673  74 (4th Cir. 2019).  The plaintiff, who had a severe gluten allergy, was on a school trip with classmates and sought a reasonable modification to the restaurant's rule that patrons could not bring in their own food.  The restaurant argued that, because the menu included a gluten-free option, the plaintiff could order from the menu like his peers and no accommodation was necessary or required. The circuit court reversed the district court's grant of summary judgment in favor ot the restaurant in part because the district court "incorrectly overlooked the testimony that J.D. repeatedly became

sick after eating purportedly gluten-free meals prepared by commercial kitchens." *Id.*  The circuit court  held that the district court erred in finding as a matter of law that J.D. could have an experience "equal to that of his classmates" if not accommodated. *Id.*  at 674.

Plaintiffs here have alleged that the use of masks by those around them is a measure that would lower their risk of contracting the virus and thus make it safer for them to return to and remain in an in-person learning environment.  The evidence here supports that the use of masks may decrease the risk of COVID infection in group settings.  Plaintiffs here are at higher risk of contracting COVID that their non-impaired peers.  But because GA-38 precludes mask requirements in schools,  Plaintiffs are either forced out of in-person learning altogether or must take on unnecessarily greater health and safety risks than their nondisabled peers.  The evidence presented by Plaintiffs establishes that Plaintiffs are being denied the benefits of in-person learning on an equal basis as their peers without disabilities.  The court concludes that GA-38 violates the ADA and Section 504.[26]

## IV.  Conclusion

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss filed September 13, 2021 (Doc. #34) is **GRANTED IN PART AND DENIED IN PART AS FOLLOWS**: Plaintiffs'

---

[26]   Several federal district courts have examined the actions of other states that have prohibitions similar to GA-38 and granted preliminary-injunctive relief based upon the ADA and Section 504, although no ruling on the merits has been rendered by any such court as of the date of this opinion. *See  G.S. v. Lee*, ___ F. Supp.3d ___, 2021 WL 4942871 (W.D. Tenn. Sept. 3, 2021) (granting temporary restraining order); *Arc of Iowa v. Reynolds*, ___ F. Supp.3d ___, 2021 WL 4166728 (S.D. Iowa Sept. 13, 2021) (granting temporary restraining order); *Disability Rights South Carolina v. McMaster*, ___ F. Supp.3d ___, 2021 WL 4444841 (D.S.C. Sept. 28, 2021) (granting temporary restraining order and preliminary injunction); *Arc of Iowa v. Reynolds*, ___ F. Supp.3d ___, 2021 WL 4737902 (S.D. Iowa Oct. 8. 2021) (granting preliminary injunction); *R.K. v. Lee*, ___ F. Supp.3d ___, 2021 WL 4942871 (M.D. Tenn. Oct. 22, 2021) (granting preliminary injunction).

claims against Defendants Mike Morath and the Texas Education Agency are **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction. In all other respects, the motion is **DENIED**.

Having concluded that GA-38 violates and is preempted by federal law, the court will permanently enjoin Paxton from enforcing or giving any effect to the provisions of GA-38 prohibiting school districts from requiring masks.

SIGNED this *10th* day of November, 2021.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE

29