# United States Court of Appeals for the Fifth Circuit

_____

No. 21-51083

_____

E.T., *by and through her parents and next friends*; J.R., *by and through her parents and next friends*; S.P., *by and through her parents and next friends*; M.P., *by and through her parents and next friends*; E.S., *by and through her parents and next friends*; H.M., *by and through her parents and next friends*; A.M., *by and through her parents and next friends*,

*Plaintiffs—Appellees*,

*versus*

Kenneth Paxton, *in his official capacity as Attorney General of Texas*,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-CV-717

_____

Before Elrod, Oldham, and Wilson, *Circuit Judges*.

Cory T. Wilson, *Circuit Judge*:

Texas Attorney General Kenneth Paxton seeks a stay pending appeal of the permanent injunction that bars him from enforcing Texas Governor Greg Abbott's Executive Order GA-38, which prohibits local governmental entities from imposing mask mandates. Mindful that "[a] stay is an intrusion

No. 21-51083

into the ordinary processes of administration and judicial review, and accordingly is not a matter of right," *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016) (internal quotation marks omitted), and having considered the factors laid out by the Supreme Court in *Nken v. Holder*, 556 U.S. 418, 426 (2009), we conclude that a stay is warranted. Specifically, the Attorney General has demonstrated a strong likelihood of success on the merits and the prospect of irreparable injury absent a stay; has shown that maintaining the *status quo ante* pending appeal will not risk substantial injury to the plaintiffs; and, finally, that the public interest favors a stay. Accordingly, we STAY the district court's permanent injunction pending resolution of this appeal on its merits.

## I.

Governor Abbott issued Executive Order GA-38 ("GA-38") on July 29, 2021. GA-38 compiled and superseded other orders issued in relation to the Governor's COVID-19 disaster proclamation of March 13, 2020. GA-38 provided, *inter alia*, that "[n]o governmental entity, including a . . . school district, . . . and no governmental official may require any person to wear a face covering or to mandate that another person wear a face covering[.]" This provision superseded "any face-covering requirement imposed by any local governmental entity or official," and it exercised the Governor's authority to suspend several Texas statutes.

Challenges to the validity of GA-38 under Texas state law were brought in various venues. On August 17, 2021, a little over two weeks after Governor Abbott issued GA-38, the parents of seven children who have Down syndrome, asthma, hypogammaglobulinemia, cerebral palsy, heart defects, bronchomalacia, bronchiectasis, spina bifida, and epilepsy, filed this action in federal district court on behalf of their children. All seven children are enrolled in Texas's public schools. Most public schools in Texas began

No. 21-51083

in-person classes for the 2021–22 school year between August 9 and August 23, 2021.

In their complaint, plaintiffs sought a declaration that enforcement of GA-38 against public school districts violates federal law, specifically the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, the Rehabilitation Act, 29 U.S.C. § 794, the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(*l*), and the American Rescue Plan Act, Pub. L. No. 117-2, § 2001 (2021). Plaintiffs alleged that enforcing GA-38 against public school districts denied them a quality education based on their disabilities. They also sought preliminary and permanent statewide injunctive relief barring Attorney General Paxton from enforcing the order.[1] The Attorney General filed a motion to dismiss, asserting that plaintiffs lacked standing and, alternatively, that plaintiffs had failed to exhaust their administrative remedies before filing suit or to state prima facie claims.

Without issuing any preliminary relief, the district court held the motion to dismiss in abeyance and conducted a bench trial on October 6, 2021. On November 10, 2021, the district court issued an opinion finding that plaintiffs had standing to sue Attorney General Paxton, and that GA-38 violated the ADA and the Rehabilitation Act and was preempted by both of those statutes as well as the American Rescue Plan Act. Based on those findings, the district court permanently enjoined the Attorney General from enforcing GA-38 against public school districts "requiring masks."

Attorney General Paxton appealed. He now seeks an emergency stay of the district court's injunction pending the resolution of the appeal.

---

[1] Initially plaintiffs also sought injunctive relief against the Commissioner of the Texas Education Agency and the Texas Education Agency itself. The district court subsequently granted a motion to dismiss the claims against both defendants.

No. 21-51083

## II.

The factors we consider in determining whether to grant a stay are by now axiomatic:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken*, 556 U.S. at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The first two factors, the likelihood of success on the merits and a showing of irreparable injury absent a stay, "are the most critical." *Id.* Because the district court issued its injunction after a bench trial, the merits panel of this court will eventually review the district court's findings of fact for clear error and its legal findings *de novo. Providence Behav. Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 455 (5th Cir. 2018) (quoting *Coe v. Chesapeake Expl., L.L.C.*, 695 F.3d 311, 316 (5th Cir. 2012)). Viewing them through that same lens, we evaluate each of the *Nken* factors in turn.

## A.

First, likelihood of success on the merits. Attorney General Paxton offers four arguments to support his likely success on appeal. As a threshold matter, he asserts that plaintiffs lack standing because they have failed to demonstrate any injury-in-fact. Next, he argues that plaintiffs' claims fail as a matter of law because plaintiffs did not exhaust their administrative remedies before filing suit as required by IDEA, *see* 20 U.S.C. § 1415(*l*); failed to state prima facie claims under either the ADA or the Rehabilitation Act; and because the American Rescue Plan Act does not provide any private right of action. Third, he disputes plaintiffs' contention that GA-38 is preempted by federal law. Finally, he contends that the district court's statewide injunction is overbroad and should, if not set aside entirely, be more narrowly tailored to provide plaintiffs relief in this case.

No. 21-51083

**1.**

Fundamentally, federal courts may only exercise jurisdiction over "'Cases' and 'Controversies.'" *Ghedi v. Mayorkas*, 16 F.4th 456, 464 (5th Cir. 2021) (citing U.S. CONST. art. III, § 2). A "case" or "controversy" only exists when a party has standing. And standing exists only when the party plausibly alleges three elements: "(1) an 'injury in fact,' (2) that is 'fairly . . . trace[able] to the challenged action of the defendant,' and (3) that is 'likely . . . redress[able] by a favorable decision.'" *Id.* (alterations in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Here, it is unlikely that the plaintiffs have standing to pursue their claims.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). An alleged injury must clear each of these hurdles to confer standing. *See id.* at 340 ("We have made it clear time and time again that an injury in fact must be both concrete *and* particularized.") (collecting cases); *Shrimpers & Fishermen of RGV v. Tex. Comm'n on Env't Quality*, 968 F.3d 419, 424 (5th Cir. 2020) ("[E]ven if a petitioner's increased-risk harms *are* particularized, they also must be actual or imminent." (citations omitted)).

Granted, plaintiffs may well allege particularized harm given that each of them alleges a disability that leaves them particularly vulnerable during the pandemic. But they likely falter in showing any concrete, or actual or imminent, injury as a result of the enforcement of GA-38. Plaintiffs assert that the injury threatened by the enforcement of GA-38 "was and is the deprivation of meaningful access to in-person school," or, as the district court characterized it, that plaintiffs "are either forced out of in-person learning altogether or must take on unnecessarily greater health and safety

risks than their nondisabled peers." But plaintiffs have not shown that they face such an "either/or" choice as a result of GA-38, and the district court's conclusion that they do was likely erroneous.

While plaintiffs disclaim that their alleged injury is "the increased risk of contracting [COVID-19] absent a mask mandate," as the Attorney General asserts in his motion, at essence, their claims—and the district court's injunctive relief—wholly rest on exactly that theory. Distilled down, their alleged harm—deprivation of access to in-person school—wholly derives from the assumption that the Attorney General's enforcement of GA-38's prohibition of local mask mandates increases plaintiffs' risk of contracting COVID-19 while attending school. Such an assumption is, after all, the only alleged basis by which the plaintiffs could be "forced out of in-person learning." But "[a] 'concrete' injury must be '*de facto*'; that is, it must actually exist.... When [the Supreme Court has] used the adjective 'concrete,' [it has] meant to convey the usual meaning of the term—'real,' and not 'abstract.'" *Spokeo*, 578 U.S. at 340 (quoting Black's Law Dictionary 479 (9th ed. 2009); Webster's Third New International Dictionary 472 (1971); Random House Dictionary of the English Language 305 (1967)).

The risks of contracting COVID-19 for these plaintiffs are certainly real, but the alleged injury to plaintiffs *from the enforcement of GA-38* is, at this point, much more abstract. This is so because the binary choice envisioned by the district court—either stay home or catch COVID-19—is a false one: it wholly elides the various accommodations available to the plaintiffs (e.g., distancing, voluntary masking, class spacing, plexiglass, and vaccinations) to

ensure a safer learning environment, regardless of GA-38's prohibition of local mask mandates.[2]

Beyond whether plaintiffs allege a "concrete" injury, they also likely fail to show any actual or imminent injury as a result of the enforcement of GA-38. This is so because "[i]ncreased-risk claims—even when they are particularized—often cannot satisfy the 'actual or imminent' requirement." *Shrimpers & Fishermen of RGV*, 968 F.3d at 424. Indeed,

> Much government regulation slightly increases a citizen's risk of injury—or insufficiently decreases the risk compared to what some citizens might prefer. . . . Opening the courthouse to these kinds of increased-risk claims would drain the "actual or imminent" requirement of meaning [and] expand the "proper—and properly limited"—constitutional role of the Judicial Branch beyond deciding actual cases or controversies. . . .

*Id.* (quoting *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1295 (D.C. Cir. 2007) (Kavanaugh, J.)) (cleaned up). As noted above, given the other preventative measures available to plaintiffs and the schools they attend, any injury-in-fact arising from the enforcement of GA-38 appears speculative or tentative, not actual or imminent. *Cf. Ghedi*, 16 F.4th at 465 (concluding that the alleged injury was "real and immediate" and thus conferred standing).

―――――――――――

[2] Even assuming that plaintiffs' alleged injury is the deprivation of access to in-person public education, on the record before us, any deprivation also appears to be attributable to choices made by plaintiffs, not Attorney General Paxton. In other words, any injury alleged by plaintiffs would be "self-inflicted," as the Attorney General contends, and thus insufficient to confer standing. GA-38 does not bar plaintiffs' physical access to school or require them to resort to virtual learning. Nor do Attorney General Paxton's actions in enforcing GA-38 hinder access, given the other available accommodations discussed above the line.

No. 21-51083

Lastly, Plaintiffs may lack standing to assert their claims against the Attorney General because they cannot show that any injury "is 'likely . . . redress[able] by a favorable decision.'" *Id.* at 464 (quoting *Lujan*, 504 U.S. at 560–61). If GA-38 remains enjoined, neither plaintiffs nor Attorney General Paxton has the authority to impose mask mandates in particular schools. Plaintiffs allege that their schools would do so, but nothing in the relief afforded by the district court would require the schools to remedy plaintiffs' alleged injury via local mask mandates.

For these reasons, plaintiffs have likely failed to demonstrate standing.

**2.**

Beyond the question of plaintiffs' standing, their claims likely fail on the merits as a matter of law. The record indicates that the plaintiffs have not exhausted their administrative remedies under IDEA. *See* 20 U.S.C. § 1415(*l*). Reviewing this issue *de novo*, we conclude, contrary to the district court, that the plaintiffs were likely required to do so before bringing their ADA or Rehabilitation Act claims in court.

When a plaintiff "seeks redress for a school's failure to provide a [free appropriate public education]" IDEA applies, even if the complaint is "not phrased or framed in precisely that way." *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 755 (2017). IDEA requires that "before the filing of a civil action under [the ADA and the Rehabilitation Act] seeking relief that is also available under this subchapter, [administrative] procedures . . . shall be exhausted[.]" 20 U.S.C. § 1415(*l*). The plaintiffs' arguments that GA-38 denies them an appropriate in-person state-sponsored education in violation of the ADA and the Rehabilitation Act likely fall under the auspices of the IDEA's administrative exhaustion requirements.

To determine if IDEA applies, courts generally must answer two questions: "First, could the plaintiff have brought essentially the same claim

if the alleged conduct had occurred at a public facility that was *not* a school . . . [a]nd second, could an *adult* at the school—say, an employee or visitor— have pressed essentially the same grievance?" *Fry*, 137 S. Ct. at 756. If both questions can be answered in the negative, IDEA and its administrative exhaustion requirements apply.

The district court framed the *Fry* questions around plaintiffs' physical access to their schools, concluding that IDEA's administrative exhaustion requirements were not antecedent to plaintiffs' claims because they could have brought "essentially the same claim" against another public facility, and an adult at the school could "have pressed essentially the same grievance." *See id.* Setting aside the logical import of the district court's analysis— namely, that any plaintiff could insist upon a mask mandate at any public facility or assert an ADA or Rehabilitation Act claim based on the entity's failure to impose one—the court's analysis misapprehends the gravamen of plaintiffs' claims. Plaintiffs do not really center their claims on a deprivation of physical access, even though they focus on in-person education at school.

Instead, the plaintiffs at base allege something very particular: the deprivation of an in-person state-sponsored education because of their risk of contracting COVID-19 without a mask mandate. Could such a claim be brought against "a public theater or library?" *Id.* Arguably no, as the plaintiffs seek to enjoin GA-38 in order to allow their schools to impose mask mandates, which they contend are necessary for them to receive an in-person education on par with other students. The essential aspect of plaintiffs' claims, access to in-person learning, could not be levied against "a public facility that was *not* a school." *Id.* As to the second question, a non-student adult at the school could obviously not press the same grievance because he or she would not be at the school to access in-person learning. Because IDEA likely applies, and because nothing in the record establishes that plaintiffs

pursued any administrative remedies before filing suit, the district court likely lacked jurisdiction over their claims for this reason as well.

Even if a failure to exhaust remedies does not bar plaintiffs' claims, the record is devoid of evidence that plaintiffs have made any requests for reasonable accommodation under the ADA or the Rehabilitation Act. Glossed over in both plaintiffs' briefing and the district court's opinion is any acknowledgment that plaintiffs are not entitled to their preferred accommodation, but only a reasonable accommodation, and that "[i]t is the plaintiff's burden to request reasonable accommodations." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007). The district court's analysis rests on the faulty premise that the *only* accommodation available to plaintiffs is their schools' ability to impose mask mandates. But as discussed above, there are any number of other ways schools could accommodate plaintiffs' disabilities without traversing either GA-38 or federal law.

Regardless, a request for reasonable accommodation is generally a part of a prima facie case for relief under the ADA and Rehabilitation Act. *E.g.*, *Smith v. Harris Cnty.*, 956 F.3d 311, 317–18 (5th Cir. 2020) (citing *Windham v. Harris Cnty.*, 875 F.3d 229, 237 (5th Cir. 2017)). Without evidence that they requested some reasonable accommodation, plaintiffs would have to demonstrate that the reasonable accommodation they proposed to the court, a mask mandate, was necessary and obvious. *Id.* (quoting *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996)). Given the availability of vaccines, voluntary masking, and other possible accommodations—options barely acknowledged by either plaintiffs or the district court—the record before us likely does not support the conclusion that a mask mandate would be both *necessary* and *obvious* under the ADA or the Rehabilitation Act. Plaintiffs thus likely fail to make out a prima facie case under either statute.

No. 21-51083

**3.**

Next, the Attorney General disputes the district court's conclusion that the ADA, the Rehabilitation Act, and the American Rescue Plan Act preempt GA-38. Federal law can preempt state actions in three situations: first, Congress may expressly preempt state actions; second, Congress can so comprehensively legislate in an area that States have no ability to supplement Congress's enactments; and third, state actions can directly conflict with federal action. *City of Morgan City v. S. La. Elec. Co-op. Ass'n*, 31 F.3d 319, 322 (5th Cir. 1994) (citing *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 203–04 (1983)). State action can directly conflict with federal action if "a provision of state law may be incompatible with a federal statute such that compliance with both is a 'physical impossibility[,]' . . . [or] if its application would disturb, interfere with, or seriously compromise the purposes of the federal statutory scheme." *Id.* (quoting *Pac. Gas & Elec. Co.*, at 204, 220–21).

The district court's holding that the ADA and the Rehabilitation Act preempt GA-38 is seemingly based on the premise that application of GA-38 would make it impossible for schools to comply with the ADA or the Rehabilitation Act, or would interfere with the purposes of those federal laws, because a mask mandate would be the only way to provide plaintiffs an in-person public education. But, as outlined above, and bearing in mind that IDEA's exhaustion requirement may well bar this argument from the outset, that does not appear to be the case. Other means exist to control the spread of COVID-19 in school settings like vaccination, social distancing, plexiglass, and voluntary mask wearing. Plaintiffs are not entitled to their preferred accommodation under the ADA and Rehabilitation Act if other reasonable accommodations are available. Accordingly, it does not appear that GA-38 renders it a "physical impossibility" for schools to comply with the ADA or the Rehabilitation Act, or that GA-38 "would disturb, interfere with, or

seriously compromise the purposes of" either law. *Id.* Therefore, it was likely erroneous for the district court to hold that GA-38 was preempted by either the ADA or the Rehabilitation Act.

Further, to the extent this argument is even properly before us,[3] we do not read the American Rescue Plan Act to preempt GA-38's prohibition of local mask mandates, as the district court did. The district court based its conclusion on excerpts from the Department of Education's rule of April 22, 2021, relating to use of American Rescue Plan Act funds by local educational agencies. That rule provides that funds can be used "for a wide variety of activities related to educating students during the COVID-19 pandemic . . . including universal and correct wearing of masks[.]" American Rescue Plan Act Elementary and Secondary School Emergency Relief Fund, 86 Fed. Reg. 21,195–96 (Apr. 22, 2021). The rule further clarifies that a local education agency must include a plan publicly maintained on its website that states "how it will maintain the health and safety of students . . . and the extent to which it has adopted policies, and a description of any such policies, on each of the CDC's safety recommendations including: Universal and correct wearing of masks[.]" *Id.* at 21,200–01.

Rather than requiring local educational agencies to adopt universal masking, the American Rescue Plan Act requires local educational agencies to *communicate* with the public regarding what requirements, if any, it maintains regarding masking, and why. GA-38 does not interfere with this responsibility, other than removing localized mask mandates from the range

---

[3] The plaintiffs' argument that the American Rescue Plan Act provides a private cause of action is tenuous at best. And the district court's bald invocation of the Supremacy Clause and its equitable jurisdiction fails to fill the gap. We discern no language in the act, and plaintiffs point us to none, that appears to create such an action. For this additional reason, plaintiffs' claims, to the extent they are based on the American Rescue Plan Act, likely fail as well.

of policies and practices for safe operation of schools, so it was likely error for the district court to conclude that GA-38 was preempted on this ground.

**4.**

Finally, assuming that plaintiffs' claims are otherwise viable, at a minimum, the district court's blanket injunction prohibiting the enforcement of GA-38 in all public schools across the State of Texas is overbroad. Injunctions must be narrowly tailored within the context of the substantive law at issue to address the specific relief sought. *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016) (quoting *Doe v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004)). This means that an injunction cannot "encompass more conduct than was requested or exceed the legal basis of the lawsuit." *Id.* at 214 (citing *Veneman*, 380 F.3d at 819). First, the injunction could have been tailored to address only the seven plaintiffs in this action, as well as their school districts. More generally, the district court's injunction could also have been tailored to require only individualized accommodations by schools, on a case-by-case basis, while leaving GA-38's general ban on mask mandates in place. Imposing a broad-brush injunction to prohibit enforcement of GA-38 in all schools in Texas was likely erroneously overbroad.

For all these reasons, Attorney General Paxton has made the requisite showing of a likelihood of success on the merits of his appeal, favoring a stay pending appeal.

**B.**

The other *Nken* factors also favor a stay pending appeal. We briefly address each of them.

As for irreparable injury absent a stay, the second *Nken* factor weighs in favor of the Attorney General because "[w]hen a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest

in the enforcement of its laws." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (citing *Maryland v. King*, 567 U.S. 1301, 1303–04 (2012) (Roberts, C.J., in chambers); *Walters v. Nat'l Ass'n of Radiation Survivors*, 468 U.S. 1323, 1324 (1984) (Rehnquist, J., in chambers)). While this case centers on an executive order issued by the Governor under his emergency authority rather than enforcement of a statute enacted by the plenary legislative authority of the people, the same reasoning applies. *See* Tex. Gov't Code § 418.012 (The Governor's "[e]xecutive orders, proclamations, and regulations have the force and effect of law."). In our "system of federal courts representing the [n]ation, subsisting side by side with 50 state judicial, legislative, and executive branches, appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief." *Rizzo v. Goode*, 423 U.S. 362, 379 (1976) (citing *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928 (1975)). Here, those principles counsel acknowledgement that Texas's public officials are charged with carrying out Texas's public policy, and enjoining those officials and that policy injures the state. *See Mi Familia Vota v. Abbott*, 834 F. App'x 860, 864 (5th Cir. 2020) (per curiam) (granting stay to Texas; noting that an executive order has "the force and effect of law," so the State "suffers the irreparable harm of denying the public interest in the enforcement of its laws"); *accord Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 243 (5th Cir. 2020) (holding that an injunction requiring exercises of authority by the Texas Secretary of State irreparably harmed Texas (quoting *Veasey*, 870 F.3d at 391)).

Next, in considering whether issuance of a stay pending appeal will substantially injure the other party, "the maintenance of the status quo is an important consideration in granting a stay." *Barber*, 833 F.3d at 511 (internal quotation marks omitted) (quoting *Dayton Bd. of Educ. v. Brinkman*, 439 U.S. 1358, 1359 (1978)). GA-38 has been in effect since July 29, 2021. Since the plaintiffs filed this action on August 17, 2021, they have not requested

No. 21-51083

emergency relief, and the district court never entered any preliminary relief, despite plaintiffs' request for a preliminary injunction in their complaint. That procedural posture, coupled with the tenuous and speculative nature of the injury alleged by plaintiffs to result from GA-38's prohibition of local mask mandates, tends to establish that preservation of the *status quo ante* will not substantially injure plaintiffs. Thus, this factor favors a stay, i.e., maintaining the status quo by leaving GA-38 in effect, pending appeal.

Finally, where the public interest lies. Our analysis of the fourth *Nken* factor follows much of our analysis of the second factor. As Attorney General Paxton argues, when "the State is the appealing party, its interest and harm merge with that of the public." *Veasey*, 870 F.3d at 391 (citing *Nken*, 556 U.S. at 435). For this reason, the fourth factor also weighs in favor of a stay.

## IV.

For well over a year and a half now, every American has grappled with navigating the safest course through an unpredictable pandemic and its continuing effects on our nation in the face of risk, disruption, and shifting guidance. None of our above discussion should be taken to suggest that plaintiffs—and their parents—do not have legitimate concerns about the pandemic or the risks they face from COVID-19. But, at least at this preliminary stage, it is unclear that plaintiffs have stated any injury-in-fact sufficient to confer standing, or that either GA-38, or Attorney General Paxton's actions in enforcing it, result in any cognizable deprivation of plaintiffs' access to in-person public education.

Because we conclude the *Nken* factors weigh in favor of granting a stay pending the resolution of this appeal on its merits, Attorney General Paxton's emergency motion is GRANTED, and the district court's injunction prohibiting the enforcement of GA-38 in Texas public schools is hereby STAYED pending appeal.

# *United States Court of Appeals*

### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130

December 01, 2021

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

      No. 21-51083   E.T. v. Paxton
                 USDC No. 1:21-CV-717


Enclosed is an order entered in this case.


                      Sincerely,

                      LYLE W. CAYCE, Clerk

                      By: _____
                      Nancy F. Dolly, Deputy Clerk
                      504-310-7683

Ms. Jeannette Clack
Ms. Linda T. Coberly
Mr. Brandon W. Duke
Mr. Brian D. East
Mr. William G. Fox
Mr. John Michael Gaddis
Mr. Eric J. Hamilton
Mr. Ryan Glen Kercher
Mr. Thomas M. Melsheimer
Ms. L. Kym Davis Rogers
Mr. Judd Edward Stone II
Mr. Scott Cashion Thomas