# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

August 16, 2022

Mr. Philip Devlin
Western District of Texas, Austin
United States District Court
501 W. 5th Street
Austin, TX 78701-0000

     No. 21-51083   E.T. v. Paxton
              USDC No. 1:21-CV-717

Dear Mr. Devlin,

Enclosed is a copy of the judgment issued as the mandate and a
copy of the court's opinion.

               Sincerely,

               LYLE W. CAYCE, Clerk

               By: _____
               Melissa V. Mattingly, Deputy Clerk
               504-310-7719

cc:
     Mrs. Christina Beeler
     Ms. Fiona A. Bell
     Ms. Linda T. Coberly
     Mr. Jeffrey B. Dubner
     Mr. Brandon W. Duke
     Mr. Brian D. East
     Mr. Jonathan Gabriel Chaim Fombonne
     Mr. William G. Fox
     Mr. John Michael Gaddis
     Mr. Eric J. Hamilton
     Mr. Daniel Alexander Harrell
     Mr. Jeffrey Justman
     Ms. Heena Kepadia
     Mr. Ryan Glen Kercher
     Mrs. Janea Lamar
     Mr. Thomas M. Melsheimer

Ms. Jessica Morton
Ms. Alisa Philo
Ms. Bonnie Ilene Robin-Vergeer
Ms. L. Kym Davis Rogers
Ms. Ellen Marjorie Saideman
Mr. Judd Edward Stone II
Mr. Scott Cashion Thomas
Mr. Michael Woodrum

# United States Court of Appeals
# for the Fifth Circuit

**FILED**
August 16, 2022
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____ JMV
DEPUTY

United States Court of Appeals
Fifth Circuit

**FILED**

July 25, 2022

Lyle W. Cayce
Clerk

No. 21-51083

E.T., *by and through her parents and next friends*; J.R., *by and through her parents and next friends*; S.P., *by and through her parents and next friends*; M.P., *by and through her parents and next friends*; E.S., *by and through her parents and next friends*; H.M., *by and through her parents and next friends*; A.M., *by and through her parents and next friends*,

> *Plaintiffs—Appellees*,

*versus*

Kenneth Paxton, *in his official capacity as Attorney General of Texas*,

> *Defendant—Appellant.*

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-CV-717

Before Davis, Willett, and Oldham, *Circuit Judges*.
Andrew S. Oldham, *Circuit Judge*:[*]

In accordance with powers vested in him by the Texas Legislature, Governor Greg Abbott promulgated Executive Order GA-38 to unify the State's response to COVID-19. Among other things, GA-38 prohibited

---

[*] Judge Willett concurs in the judgment and in parts I and II.C of the opinion.

school districts from imposing mask mandates. Some students sued. Then the district court permanently enjoined the Texas Attorney General from enforcing GA-38. We hold, however, that the district court lacked subject-matter jurisdiction. Accordingly, we vacate the district court's injunction and remand with instructions to dismiss the suit without prejudice.

I.

GA-38 provides that "[n]o governmental entity, including a . . . school district . . . , and no government official may require any person to wear a face covering or to mandate another person wear a face covering." GA-38 has "the force and effect of law." Tex. Gov't Code § 418.012.

Plaintiffs are children with disabilities attending Texas public schools. On August 17, 2021, plaintiffs filed this lawsuit in federal district court challenging GA-38 and related Public Health Guidance from the Texas Education Agency ("TEA"). The original complaint included 14 plaintiffs, who were "students with disabilities and underlying medical conditions which carry an increased risk of serious complications or death in the event that they contract COVID-19." It named as defendants Governor Abbott, the TEA, and TEA Commissioner Mike Morath.

The original complaint included three claims: (1) violation of the Americans with Disabilities Act ("ADA") against Abbott and Morath in their official capacities, (2) violation of Section 504 of the Rehabilitation Act of 1973 against all defendants, and (3) federal preemption under the American Rescue Plan Act of 2021 ("ARP Act") against all defendants. Plaintiffs requested declaratory and injunctive relief.

Plaintiffs amended their complaint twice before trial. First, on September 1, they amended their complaint to add the Attorney General as a defendant. Second, a week before trial, plaintiffs filed a second amended complaint with leave of court, adding a new claim and subtracting some

plaintiffs and a defendant. The new claim alleged the ADA and Rehabilitation Act preempted GA-38. Seven plaintiffs exited the suit, and the seven remaining plaintiffs dropped their claims against the Governor.

After denying plaintiffs' request for a temporary restraining order and preliminary injunction, the district court held a bench trial and entered a permanent injunction and final judgment against the Attorney General. The court held that plaintiffs have standing to sue. It then declared that GA-38 violates Title II of the ADA and Section 504 of the Rehabilitation Act. It further held that, insofar as it applies to school districts, GA-38 is preempted by the ADA, Section 504, and the ARP Act. The court enjoined the Attorney General from enforcing the Executive Order. The Attorney General sought a stay pending appeal, which the district court denied. But we granted the stay and expedited the appeal.

## II.

"Article III jurisdiction is always first. Here, it's also last." *Shrimpers & Fishermen of RGV v. Tex. Comm'n on Env't Quality*, 968 F.3d 419, 426 (5th Cir. 2020) (Oldham, J., concurring) (citations omitted). To invoke our jurisdiction, plaintiffs must satisfy the familiar tripartite test for Article III standing: (A) an injury in fact; (B) that's fairly traceable to the defendant's conduct; and (C) that's likely redressable by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *see also Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 968 F.3d 357, 367 (5th Cir. 2020) ("Because this case was tried, Plaintiffs needed to prove standing by a preponderance of the evidence."). All three elements are missing here.

## A.

Plaintiffs have not presented an injury in fact sufficient to satisfy Article III. To establish such an injury, plaintiffs must show they "suffered an invasion of a legally protected interest that is 'concrete and particularized'

No. 21-51083

and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). Plaintiffs haven't carried that burden here because (1) the injury they've alleged is not a cognizable injury in fact, and (2) they may not relabel their injury as something it's not.

1.

Plaintiffs' alleged injury is the increased risk they face of contracting COVID-19 in school without mask mandates and experiencing complications or severe symptoms from a COVID-19 infection. They rely on their doctors' statements that "[i]n order to decrease [plaintiffs'] risk," everyone around them "should observe strict COVID-19 safety protocols and wear a mask indoors." Plaintiffs further contend that, without mask mandates, it is "simply too dangerous" for them to attend in-person school.

To establish an injury in fact, plaintiffs must show an "invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (quotation omitted). This circuit does not "recognize the concept of probabilistic standing based on a non-particularized increased risk—that is, an increased risk that equally affects the general public." *Shrimpers*, 968 F.3d at 424 (quotation omitted). And even where increased-risk claims *are* particularized, they generally "cannot satisfy the actual or imminent requirement," which necessitates "evidence of a certainly impending harm or substantial risk of harm." *Ibid.* (quotation omitted); *see also Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 537 n.2 (5th Cir. 2019) ("[A]ny difference between 'certainly impending' and 'substantial risk' is immaterial here."). That's because "[m]uch government regulation slightly increases a citizen's risk of injury—or insufficiently decreases the risk compared to what some citizens might prefer." *Shrimpers*, 968 F.3d at 424 (quoting *Pub.*

No. 21-51083

*Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1295 (D.C. Cir. 2007)). And "[o]pening the courthouse to these kinds of increased-risk claims would drain the 'actual or imminent' requirement of meaning." *Ibid.* (quoting *Pub. Citizen*, 489 F.3d at 1295).

Plaintiffs' increased risk of contracting COVID-19 fails to satisfy these requirements. There is no way to understand plaintiffs' trial evidence as establishing COVID-19 infections are "certainly impending" in schools without mask mandates, but not in schools mandating masks. *Shrimpers*, 968 F.3d at 425. At the time of trial, two of plaintiffs' seven schools were mask-optional (in compliance with GA-38), and five mandated masks (in violation of GA-38). The two mask-optional schools had positivity rates of 1.9 and 3.0 percent. The five schools with mask mandates measured at 0.3, 1.1, 2.3, 4.9, and 5.4 percent—higher, lower, and in between the rates from the mask-optional schools. Moreover, plaintiffs did nothing to control for their schools' various other efforts to reduce COVID-19 infections, and hence did nothing to prove the relative efficacy of mask mandates in the five law-violating schools. *Cf. Dominguez v. UAL Corp.*, 666 F.3d 1359, 1363 (D.C. Cir. 2012) (concluding antitrust plaintiff's alleged injury was "speculative at best" because it failed to take into account numerous variables at play); *Finkelman v. Nat'l Football League*, 810 F.3d 187, 202 (3d Cir. 2016) (similar); *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 985 (11th Cir. 2005) (holding alleged injury did "not rise to the level of certainty required to establish an injury in fact" where injury depended on a "series of substantial variables, over which [the plaintiff] himself had utterly no control"); *cf. also Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 44 (1976) ("[U]nadorned speculation will not suffice to invoke the federal judicial power."); *United Transp. Union v. ICC*, 891 F.2d 908, 915 (D.C. Cir. 1989) ("Any one of the factors discussed above might be enough to place the petitioner's allegation in the category of unadorned speculation, and therefore to deny standing; taken together,

No. 21-51083

petitioner's claim of injury seems but a shadow in the mist." (quotation omitted)).

Plaintiffs' risks of complications from COVID-19 likewise do not satisfy Article III. Here too, plaintiffs lack evidence sufficient to show this "allegation of future injury" is "certainly impending" as a result of GA-38. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *see also Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("[W]e have said many times before and reiterate today: Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be certainly impending to constitute injury in fact." (quotation omitted)); *Shrimpers*, 968 F.3d at 424 ("[E]ven if a petitioner's increased-risk harms *are* particularized, they also must be actual or imminent."). In light of widely available vaccines and the schools' other mitigation efforts, "the odds" of any particular plaintiff contracting COVID-19 and subsequently suffering complications are "speculative," and "the time (if ever) when any such [infection] would occur is entirely uncertain." *Pub. Citizen*, 489 F.3d at 1293–94.

To be sure, "imminence" is "a somewhat elastic concept." *Lujan*, 504 U.S. at 564 n.2; *see also Ghedi v. Mayorkas*, 16 F.4th 456, 465 n.36 (5th Cir. 2021) (describing "imminence" as "an elastic concept that turns on a sufficiently high degree of likelihood of future injury" (quotation omitted)). But the concept "cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." *Lujan*, 504 U.S. at 564 n.2 (quotation omitted). And it "has been stretched beyond the breaking point where, as here, the plaintiff alleges only an injury at some indefinite future time." *Ibid.*; *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415 (2013) (rejecting standing based on "fears of hypothetical future harm that is not certainly impending").

No. 21-51083

Even the district court, which entered a permanent injunction against enforcement of the Executive Order, could not say that GA-38 creates a "certainly impending harm or substantial risk of harm" to plaintiffs. *Shrimpers*, 968 F.3d at 424. Instead, the district court excused plaintiffs from showing such proof. In the district court's words, plaintiffs need not show "enforcement of GA-38 will actually cause *any* of them to contract COVID or that they would actually contract COVID in a mask-optional school environment." That conclusion is remarkable, and it squarely conflicts with the precedents described above.

2.

Perhaps recognizing that the increased-risk claims face insurmountable roadblocks, both the district court and plaintiffs attempted to reframe the relevant injury. The district court, for example, characterized the injury as "the deprivation of *reasonable access* to in-person schooling." On appeal, plaintiffs argue they are injured by "deprivation of access to in-person schooling *on an equal basis* with their non-disabled peers." And they contend the "core" of their claimed equal-access injury is "denial of case-by-case decisionmaking." The dissent adopts this characterization. *See post*, at 5 (characterizing plaintiffs' injury as being denied "an opportunity to participate in public education . . . that is equal to that enjoyed by students without disabilities").

There are at least four problems with this approach. First, arguments in favor of jurisdiction can be forfeited. *Ctr. for Biological Diversity*, 937 F.3d at 542. At successive stages of this litigation, plaintiffs have changed their standing theory from "increased risk" to "reasonable access" to "equal access." The forfeiture rules—which apply to arguments in favor of standing as they do to other arguments in federal litigation, *see ibid.*—prohibit such efforts to move the goalposts.

No. 21-51083

Second, federal courts must consider plaintiffs' actual injury—not the labels plaintiffs put on that injury. As the leading treatise observes, the law of standing is fraught with the danger that plaintiffs will engage in "artful pleading" to make an end-run around the strictures of Article III. *See* R. Fallon, J. Manning, D. Meltzer & D. Shapiro, Hart and Wechsler's The Federal Courts and the Federal System 124–25 (7th ed. 2015); *Clapper*, 568 U.S. at 401 (expressing concerns about attempts to "manufacture standing" where injuries are otherwise too speculative to satisfy Article III); *see also* Cass R. Sunstein, *Standing and the Privatization of Public Law*, 88 Colum. L. Rev. 1432, 1464–65 (1988) ("The central problem . . . is how to characterize the relevant injury . . . . [Once] recharacterized, [otherwise-speculative] injuries are not speculative at all.").

Third, plaintiffs misunderstand the relevant legal question. What matters for Article III is whether plaintiffs "suffered an invasion of a *legally protected interest*." *Spokeo*, 578 U.S. at 339 (emphasis added) (quotation omitted). Neither the ADA nor Section 504 creates a legally protected interest in equality *simpliciter*. Rather, those statutes legally protect *reasonable access* to covered facilities and benefits. And they require covered entities to facilitate such access by way of reasonable accommodations. So ADA plaintiffs aren't necessarily injured every time their method of access differs from that of their non-disabled peers—they're injured when they are denied the reasonable access the statutes protect.

It's no answer to say, as plaintiffs do, that they prefer one accommodation to all others. It's well settled that *defendants*—not plaintiffs—get to choose between reasonable accommodation(s), and plaintiffs' preferences between reasonable accommodation(s) are irrelevant. *See, e.g.*, *Cadena v. El Paso Cnty.*, 946 F.3d 717, 725 (5th Cir. 2020) ("[An ADA defendant] is not required to acquiesce to [a plaintiff's] choice of

No. 21-51083

accommodations . . . . But it is required to provide her with reasonable accommodations that give meaningful access to the benefit." (quotation omitted)). Take, for example, plaintiffs' analogy to "a student who must rely on a wheelchair." In that situation, the school might accommodate the student in a number of ways: it might install a lift, a ramp, or something else. It can choose any reasonable one. The fact that a particular student prefers a lift to a ramp is irrelevant, so long as the school picks a reasonable accommodation that provides meaningful access.

So too here. All agree that plaintiffs have a legally protected interest in reasonable access to their schools. And the schools, in turn, have numerous alternatives for mitigating the risks of COVID-19 so plaintiffs have such access. The schools can adopt policies regarding vaccines, plexiglass, hand sanitizer, social distancing, and more. Plaintiffs have not even attempted to show that one or any combination of these accommodations is insufficient to mitigate the risks of COVID-19 to a level low enough that plaintiffs can attend school. They have simply said that they prefer one accommodation—masks—to all others. Therefore, they cannot show that they have suffered an invasion of the legal interest the relevant statutes protect.[1]

Fourth, there's no basis for plaintiffs' claim that GA-38 denies them something the ADA guarantees—namely, the right to "individualized" or "case-by-case decisionmaking." It's true that the ADA entitles disabled students who inform their school of a disability to an "individualized assessment" of their needs. It's also irrelevant because the record contains no evidence that any of these plaintiffs ever requested an accommodation from anyone. *See Windham v. Harris Cnty.*, 875 F.3d 229, 236–37 (5th Cir.

---

[1] To the extent holding plaintiffs to their jurisdictional burden implicates the merits of their ADA claims, the merits are relevant only insofar as they are "intertwined" with plaintiffs' theory of injury. *See Brownback v. King*, 141 S. Ct. 740, 749 (2021).

No. 21-51083

2017) ("[B]ecause the ADA does not require clairvoyance, the burden falls on the plaintiff . . . to request an accommodation in direct and specific terms." (quotation omitted)). Moreover, the record supplies no reason to think any student would be denied such case-by-case determinations if plaintiffs in fact requested them. Nor does GA-38 in any way prevent case-by-case decisionmaking. It simply eliminates one option—a mask mandate—and retains all others. It is plainly within the State's power to remove one possible accommodation from consideration, so long as other reasonable options remain. And it is transparently wrong to equate the State's course of action with "[d]enying the children individualized assessment of their needs."

Here, all agree plaintiffs have physical access to their classrooms. All agree all seven schools take a multi-pronged approach to COVID-19 mitigation. All agree plaintiffs, their classmates, and their teachers are welcome to wear masks and ask those around them to wear masks. All agree plaintiffs presented zero evidence that anyone—let alone "individual[s] working constantly with a disabled child," *post*, at 1 n.1—would refuse a request to wear a mask or take comparable safety measures while working closely with a vulnerable student. And all agree at least some of the plaintiffs are committed to attending in-person classes, whether or not their schools mandate masks. Therefore, even if plaintiffs could recharacterize their injury as denial of reasonable access to schools, plaintiffs failed to show they have suffered or certainly will suffer such an injury.

B.

Even if plaintiffs could show injury in fact, they could not carry their burden to establish traceability. Article III requires them to show "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not

10

No. 21-51083

the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (quotation omitted); *see also Ctr. for Biological Diversity*, 937 F.3d at 542. So plaintiffs must show a causal connection between the Attorney General's enforcement of GA-38 (the challenged action) and their increased risk of contracting COVID-19 and suffering complications (their asserted injury).[2]

Where a suit challenges a government action regulating someone *other* than plaintiffs themselves, it is "ordinarily substantially more difficult" to establish the needed causal connection. *Lujan*, 504 U.S. at 562 (quotation omitted). That's because when the "asserted injury arises from the government's allegedly unlawful regulation . . . of *someone else*," causation will "ordinarily hinge on the response of the regulated (or regulable) third party . . . and perhaps on the response of others as well." *Ibid.* That makes it plaintiffs' burden to show—with the same "manner and degree of evidence required at the successive stages of the litigation"—that those regulated third parties' "choices have been or will be made in such a manner as to produce causation." *Id.* at 561–62.

---

[2] Plaintiffs wrongly contend that it's the *Attorney General's* responsibility to raise traceability. "As the party invoking federal jurisdiction, the *plaintiffs* bear the burden of demonstrating that they have standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207 (2021) (emphasis added). That means "arguments *in favor* of standing, like all arguments in favor of jurisdiction, can be forfeited or waived." *Ctr. for Biological Diversity*, 937 F.3d at 542 (emphasis added). But the same cannot be said for arguments *against* jurisdiction: Our court, like every federal court, "has a continuing obligation to assure itself of its own jurisdiction, *sua sponte* if necessary." *Green Valley Special Utility Dist. v. City of Schertz*, 969 F.3d 460, 468 (5th Cir. 2020) (en banc) (quotation omitted); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93 (1998). That means even if the Attorney General had said not a single word about traceability at any point in this case, we would be nonetheless obligated to ensure plaintiffs have established the "irreducible constitutional minimum of standing." *Lujan*, 504 U.S. at 560–61. The dissent also misplaces the jurisdictional burden. *See post*, at 10.

11

No. 21-51083

This case demonstrates how heavy that burden is. Plaintiffs must show, by a preponderance of the evidence, that the Attorney General's enforcement of GA-38 caused their injury. *See Env't Tex. Citizen Lobby*, 968 F.3d at 367. But because GA-38 doesn't regulate plaintiffs—it regulates the school districts—plaintiffs must make an additional showing. Plaintiffs must show (1) the Attorney General's enforcement of GA-38 caused the school districts to drop their mask mandates, and (2) plaintiffs' increased-risk injuries resulted from the school districts' elimination of mask mandates. *See Lujan*, 504 U.S. at 562; *see also Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979) ("A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury *as a result of* the statute's operation or enforcement." (emphasis added)).

Plaintiffs cannot come close to that showing. On the first point, it's undisputed the Attorney General's enforcement activity did not cause five of the seven plaintiffs' schools to eliminate their masking requirements. As the parties stipulated at the time of trial, those schools maintained their mask mandates despite the Governor's issuance of GA-38, despite receiving "threatening letter[s]" from the Attorney General, and despite the Attorney General actually suing some school districts. So at least with respect to five of the plaintiffs' schools, plaintiffs cannot establish the first link in the causal chain: Their school districts refused to eliminate mask mandates, regardless of what the Attorney General said or did.

But even if the Attorney General's enforcement of GA-38 caused plaintiffs' schools not to mandate masks, plaintiffs *still* could not trace their increased-risk injuries back to the Executive Order. As discussed in Part II.A, *supra*, plaintiffs failed to identify any increased risk of contracting COVID-19 resulting from the prohibition on mask mandates, and any increased risk of suffering complications from a hypothetical COVID-19 infection is even more attenuated. But even assuming plaintiffs could show those increased

No. 21-51083

risks, they could be attributed to any number of variables that have nothing to do with mask mandates. Those include innumerable differences in the way plaintiffs' schools—each an independent actor—have chosen to address COVID-19. *See Clapper*, 568 U.S. at 414 & n.5 (holding the uncontrollable actions of independent third-parties make it difficult or impossible to trace plaintiffs' injuries to defendants' conduct); *see also id.* at 417 n.7 ("To the extent that [plaintiffs' predictions about how third parties will react] are based on anything other than conjecture . . . they do not establish injury that is fairly traceable [to the government's action]."). Plaintiffs have done nothing to control those independent variables.

All of this presumably explains why the entirety of the district court's factual finding on this point is this: "the use of masks *may* decrease the risk of COVID infection in group settings."[3] That finding fails to support plaintiffs' contention that mask mandates are the only way they can adequately reduce the risks of COVID-19. It says nothing about allowing but not requiring masks. It says nothing about masks' relative efficacy vis-à-vis other mitigation measures. And it says nothing about school environments generally or plaintiffs' schools specifically. It therefore warrants no weight. *See Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 999 F.3d 257, 268 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 2752 (2022) (mem.).

---

[3] The dissent takes pains to "emphasize that this case was tried to the bench, and the district court . . . entered detailed findings of fact." *Post*, at 4. But neither the dissent nor the plaintiffs identified factual findings other than this one, let alone multiple "detailed" factual findings. *See* Oral Arg. at 24:40–26:35 (responding to request to identify relevant factual findings in the district court opinion, plaintiffs' counsel pointed to the court's finding that "the use of masks may decrease the risk of COVID infection in group settings").

No. 21-51083

## C.

Even if plaintiffs could meet their burden on injury in fact and traceability, they still would not be able to show their injuries are likely redressable by a favorable decision.

As with traceability, when an asserted injury arises from the government's regulation of someone other than the plaintiffs, "redressability [will] ordinarily hinge on the response of the regulated (or regulable) third party." *Lujan*, 504 U.S. at 562. And that makes a plaintiff's choice of defendant especially important. Because if they don't sue the regulated third party, they leave redressability to turn on "the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or predict." *Ibid.* (quotation omitted). And whether or not they bring the regulated parties before the court, plaintiffs' redressability burden remains the same: They must at least show that the regulated parties "will likely react in predictable ways." *California v. Texas*, 141 S. Ct. 2104, 2117 (2021) (quotation omitted). "Plaintiffs cannot rely on speculation" about the choices the regulated parties might make. *Clapper*, 568 U.S. at 414 n.5 (quoting *Lujan*, 504 U.S. at 562).

Here, plaintiffs rely wholly on speculation about the unfettered choices made by actors not before our court. Plaintiffs chose not to sue their school districts. The school districts have the unfettered choice—with or without GA-38, and with or without any involvement by the Attorney General—to drop their mask mandates at any time. And indeed they have. None of plaintiffs' schools require masks today. And we could not enjoin those schools to impose mask mandates if we wanted to because plaintiffs did not sue them. That alone proves that plaintiffs' claims are not redressable.

No. 21-51083

Plaintiffs chose instead to sue the Attorney General. And what does the Attorney General have to do with plaintiffs' increased risks from COVID-19? Nothing. He does not set masking policies. Nor can he order the school districts to adopt masking policies (as evidenced by several schools' refusals to abide by GA-38 or the Attorney General's threatened enforcement of it). And even if we affirmed the district court's permanent injunction against the Attorney General, the school districts could drop (and as noted above, have dropped) their mask mandates anyway. That would expose plaintiffs to the exact same risks they otherwise impute to GA-38, and no amount of equitable relief against the Attorney General will redress anything.

Plaintiffs effectively concede this point by arguing not that an injunction against the Attorney General would redress their injuries, but rather that an injunction would "clear[] the way" to allow *third parties* (namely, their schools) to redress their injuries.[4] But that's not how redressability works. For example, in *Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (en banc), abortionists sought a declaration that a provision of Louisiana law was unconstitutional because it authorized private suits in violation of the Fourteenth Amendment. We held that plaintiffs' purported injuries could not be redressed by an order against defendants—the Governor and the Attorney General—who had no power over the third parties who might bring suits. *See id.* at 426–27. It was irrelevant there, as here, that an order in plaintiffs' favor might clear the way for them to vindicate their rights against non-parties. *See id.* at 453 (Parker, J., dissenting).

---

[4] At trial, plaintiffs argued that "but for GA-38, these seven schools would have a universal mask mandate." Plaintiffs have not made that argument on appeal.

No. 21-51083

It is no answer to say, as plaintiffs do, that a permanent injunction against the Attorney General *partially* redresses their injuries and hence satisfies the Article III minimum. It's true that a partial remedy is constitutionally sufficient. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021) (recognizing nominal damages as sufficient to satisfy redressability requirement despite not providing "full redress"). It's also irrelevant here. Even with the district court's robust injunction against the Attorney General, all seven of the plaintiffs' schools could—and in fact did—eliminate their mask mandates. Thus the injunction is not a partial remedy of their alleged injuries; it's no remedy at all.

*          *          *

Finally, a word about the scope of plaintiffs' theory of injury and the limitlessness of the dissent. According to plaintiffs and our esteemed colleague in dissent, Article III of the Constitution gives plaintiffs standing to demand court-created mask-mandate bubbles. This case involves schools. But plaintiffs' theory, shared by the dissent, would reach every property covered by the ADA and Section 504. Restaurants, movie theaters, libraries, hotels, grocery stores, you name it. It would require federal courts to enforce mobile mask mandates that go where plaintiffs go and require everyone around them to wear masks.

That theory of standing is equal parts sweeping and unprecedented. Today we reject it. The district court's injunction is VACATED, and the case is REMANDED with instructions to DISMISS the case for lack of jurisdiction.

No. 21-51083

W. Eugene Davis, *Circuit Judge*, dissenting:

The parents of seven severely disabled children, highly susceptible to contracting COVID-19, brought this straightforward disability discrimination lawsuit against defendant-appellant, Texas Attorney General Kenneth Paxton ("Paxton"). They sought to enjoin Paxton's aggressive enforcement of Executive Order GA-38 which on its face prohibited the school districts from imposing even a limited mask mandate as an accommodation under Section 504 of the Rehabilitation Act ("RA" or "Section 504") and Title II of the Americans with Disabilities Act ("ADA" or "Title II") to protect these children. The injunction issued by the district court does not require the school districts to impose a mask mandate; it simply gives them the power to do so if they find plaintiffs (or any of them) are unable to attend in-school classes without even a limited mask mandate.[1] Based on GA-38 and Paxton's enforcement of it, plaintiffs contend that they are effectively excluded from in-school classes because of their disabilities and the dire consequences they face if they contract COVID-19. More specifically, based on unchallenged evidence, they established that without some type of mask mandate, they cannot attend classes during the pandemic, and they are unfairly deprived of the valuable benefit of attending school, in violation of Section 504 and the ADA. Because the district court found uncontradicted evidence that the defendant's enforcement of GA-38 was the only impediment to a school district's granting a modification required by Section 504 and Title II to allow plaintiffs to attend school safely, the injunction was appropriate.

---

[1] To be clear, the sweeping order prevents the school districts from granting a modification, for example, to require an individual working constantly with a disabled child to wear a mask. Similarly, a mask mandate limited to staff members working in one room or wing of the school with disabled children would violate GA-38.

No. 21-51083

The majority found plaintiffs had no standing based in part on their erroneous assumption that plaintiffs had brought a simple "fear of COVID-19" case rather than the disability discrimination case that they pled and tried. In my view, plaintiffs proved each element of standing, and I strongly disagree with the majority's contrary conclusion.  Further, I conclude that the district court correctly issued the injunction against the defendant's enforcement of GA-38.

## I.

Plaintiffs-appellees, E.T., J.R., S.P., M.P., E.S., H.M., and A.M., are children with disabilities who attend public schools in Texas. The children's disabilities include Down syndrome, asthma, hypogammaglobulinemia, CD 19 deficiency, growth hormone deficiency, attention deficit hyperactivity disorder, bronchiectasis, spina bifida, epilepsy, heart defects, and cerebral palsy. Because of their disabilities and based on the testimony of their personal physicians, the district court found that because of their heightened susceptibility of contracting COVID-19 and, if contracted, a heightened risk of severe illness or death from it, the children could not safely attend school where they would be in close proximity to unmasked students or staff members.

On July 29, 2021, Texas Governor Greg Abbot issued GA-38, which bars any state entity, including school districts, from requiring that any individual wear a mask. After Governor Abbott issued GA-38, Paxton undertook a campaign against Texas's independent school districts ("ISDs") threatening to enforce the Order. His office sent at least 98 letters to different ISDs, filed 15 separate lawsuits, and made public statements on Twitter expressing his willingness to continue litigating against non-compliant ISDs. Further, under Paxton's instructions, the Texas Education

No. 21-51083

Authority ("TEA"), maintained a public list of non-compliant ISDs on its website.

Plaintiffs filed a complaint in district court on August 17, 2021. They alleged that GA-38 prevents school districts from imposing mask mandates as a reasonable modification for plaintiffs and other students with disabilities who are at greater risk of contracting COVID-19 and suffering severe illness or death as a result of the disease. They asserted disability discrimination claims under Title II of the ADA and Section 504 of the RA. Plaintiffs contend that Paxton directly discriminated against them on the basis of their disabilities, and/or indirectly caused their ISDs to discriminate against them on the basis of their disabilities. Plaintiffs sought declaratory and injunctive relief to bar Paxton's enforcement of GA-38.

After a bench trial, the district court concluded, as relevant here, that GA-38 is preempted "to the extent that it interferes with local school districts' ability to satisfy their obligations under the ADA and Section 504 and their implementing regulations." The court recognized that the ADA and Section 504 impose "an affirmative obligation [on public entities] to make reasonable modifications in their policies, practices, or procedures when necessary to avoid discrimination on the basis of disability, unless they can show that so doing would fundamentally alter the nature of the service, program, or activity."[2] The court found that GA-38 prohibits the use of mask mandates, including targeted and limited ones, even when a school district determines that "requiring masks is a reasonable modification necessary to enable a student with disabilities to have equal access to a safe, integrated, in-person learning environment."

---

[2] *See* 28 C.F.R. 35.130(b)(7)(i).

No. 21-51083

Accordingly, the district court concluded that "to the extent that school districts cannot comply with GA-38's ban on mask requirements and at the same time meet their obligations under the ADA and Section 504, the ADA and Section 504 supersede any conflicting provisions of GA-38." To that end, the court issued a final judgment declaring, in relevant part, that GA-38's ban on mask mandates as applied to school districts is preempted by Title II and Section 504, and enjoining Paxton and his office from enforcing GA-38 as applied to school districts.

## II.

At the outset, I emphasize that this case was tried to the bench, and the district court, based on essentially uncontradicted evidence, entered detailed findings of fact. The plaintiffs produced evidence from their personal physicians attesting to plaintiffs' severe disabilities and giving their strong opinions that, because of their disabilities, they should not attend classes where students and staff they were near were not wearing masks. They testified that when the action was filed and tried, the plaintiffs were not eligible for vaccinations against COVID-19 and that in any event no option except requiring staff and students in contact with them to wear masks would give plaintiffs adequate protection from COVID-19 given the dire consequences plaintiffs could suffer. Plaintiffs also produced evidence that the schools they attended had mask mandates in place until GA-38 was issued, and the defendant began aggressively threatening the ISDs with lawsuits and fines if they required students and staff to wear masks.

The majority holds that plaintiffs failed to establish standing. Judge Oldham, the writing judge, concluded that plaintiffs established none of the elements of standing: injury, traceability, and redressability. Judge Willett agreed their injury is not redressable; in effect, finding that plaintiffs should

No. 21-51083

have sued the ISDs, not Paxton. In my view, plaintiffs alleged and proved each element of standing.

## A.

As an initial matter, the writing judge mischaracterized plaintiffs' claimed injury as an "increased risk of contracting COVID-19."[3] This characterization of plaintiffs' claimed injury ignores the claim alleged and tried: that Paxton's conduct caused disability discrimination. Plaintiffs' theory has always been that Paxton's enforcement of GA-38 qualifies as disability discrimination that is prohibited by the ADA and RA.

Plaintiffs proved that they have been, or imminently will be, injured by GA-38's ban of mask requirements, because that ban denies them an opportunity to participate in public education—in which they have a legally protected interest[4]—that is equal to that enjoyed by students without disabilities. While all students bear some health risks by attending school in person during the ongoing pandemic, the district court found, and it is undisputed, that these plaintiffs face a much higher risk to their health because of their disabilities. Plaintiffs presented evidence that they each require mask mandates to remain safe while they are indoors, and defendant neither challenged that evidence nor offered credible evidence of another effective option that would protect them.[5] Despite this, defendant is aggressively enforcing GA-38, which forbids school districts from requiring masks as a reasonable modification—no matter the circumstances—and

---

[3] To support his conclusion that this is a "fear of COVID-19" case, the writing judge relies on *Shrimpers & Fishermen of RGV v. Texas Comm'n on Env't Quality*, 968 F.3d 419, 424 (5th Cir. 2020) (per curiam).

[4] *See Goss v. Lopez*, 419 U.S. 565, 574 (1975).

[5] The only evidence the defendant offered was a mass of raw data showing COVID-19 positivity rates in Texas public schools.

No. 21-51083

instead relegates plaintiffs to taking their classes remotely, rather than accepting a greater risk to their health and safety by going to school.

Two plaintiffs have already suffered this injury: both M.P. and E.S. are enrolled in schools that rescinded their masking requirements in response to GA-38, although at time of filing their ISDs had not rescinded their mask mandates. The remaining five plaintiffs' injuries were imminent. Their injuries were "certainly impending"— that is, that there was a "substantial risk that the harm [would] occur."[6] And although several of plaintiffs' school districts had mask mandates in place at the time of trial, they were vulnerable to the sting of civil sanctions defendant threatened them with.[7] Plaintiffs have sufficiently demonstrated a substantial risk of injury.

All these vulnerable students are suffering (or are at substantial risk of suffering) an injury sufficient to confer standing: if they choose in-person school, they are compelled to accept a far higher risk to their health than is required of students without disabilities.[8] These students need not prove that access to school is impossible; it is enough that GA-38 removes the tool that

---

[6] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation and internal quotation marks omitted).

[7] *See Brackeen v. Haaland*, 994 F.3d 249, 371 n.17 (5th Cir. 2021) (en banc), *petition for cert. pending*, Nos. 21-380, 21-376, 21-378 (filed Sept. 8, 2021).

[8] This injury is obviously concrete. The Supreme Court has instructed that, to determine whether an injury is concrete, courts must ask whether the asserted injury has "a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). And, this injury could not be more personal—it prevents each plaintiff from attending school with their classmates, a recognized harm.

No. 21-51083

the record shows would afford them an opportunity to participate in in-person schooling equal to that enjoyed by students without disabilities.[9]

In short, plaintiffs have satisfied Article III's injury requirement. The discriminatory denial of equal access to education is a concrete harm, is particularized to each plaintiff, and has actually materialized.

**B.**

Paxton did not challenge traceability in his brief to this Court, for good reason; plaintiffs clearly established traceability. Under this element, plaintiffs must show "a causal connection between the injury and the conduct complained of—the injury has to be *fairly traceable* to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."[10] But Article III requires only "*de facto* causation."[11]

At trial, plaintiffs introduced uncontroverted evidence that establishes traceability for at least one plaintiff, which is all that is required for standing.[12] Specifically, M.P. attends school in Fort Bend ISD ("FBISD"), which dropped its mask mandate by the time trial occurred. Plaintiffs submitted an affidavit by Dennetta Williams, an elected member of FBISD's Board of Trustees, who attested that "[t]he FBISD mask mandate would remain in place but for [Paxton's] enforcement of GA-38." This

---

[9] *See* 28 C.F.R. § 35.130(b)(1)(i)-(iii).

[10] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (emphasis added and cleaned up).

[11] *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2566 (2019).

[12] *See McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 471 (5th Cir. 2014) ("It is well settled that once we determine that at least one plaintiff has standing, we need not consider whether the remaining plaintiffs have standing to maintain the suit.").

No. 21-51083

evidence is sufficient to establish that Paxton's enforcement efforts were the *de facto* cause of M.P.'s injury.

Moreover, even though five ISDs had not yet lifted their mask mandates on the day of the trial, it was manifestly predictable that they would. Paxton, the State's highest law enforcement authority, exerted extraordinary pressure on the non-compliant ISDs. As discussed, Paxton sent threatening letters, made threatening tweets, and filed lawsuits against 15 different ISDs to enforce GA-38. The "predictable effect" of Paxton's enforcement activity was that ISDs would drop their mask mandates.[13] Indeed, as of now, none of the seven ISDs have mask mandates.

Based on Williams' affidavit and the predictable effect of Paxton's enforcement efforts on non-compliant ISDs, I would affirm the district court's finding that plaintiffs' injuries are fairly traceable to Paxton's conduct.

## C.

To establish the final element of standing, redressability, plaintiffs must show that it is "likely, as opposed to merely speculative, that a favorable decision will redress" their injury.[14] The redressability requirement is met when "a favorable decision will relieve a discrete injury" to the plaintiffs.[15] They "need not show that a favorable decision will relieve [their] *every* injury."[16] Plaintiffs satisfied these requirements.

---

[13] *Dep't of Com.*, 139 S. Ct. at 2566.

[14] *Dep't of Texas, Veterans of Foreign Wars of U.S. v. Texas Lottery Comm'n*, 760 F.3d 427, 432 (5th Cir. 2014) (quoting *S. Christian Leadership Conference v. Supreme Court of State of La.*, 252 F.3d 781, 788 (5th Cir.2001)).

[15] *Id.* (quoting *K.P. v. Leblanc*, 627 F.3d 115, 123 (5th Cir. 2010)).

[16] *Id.* (emphasis in original).

No. 21-51083

First, plaintiffs sued Attorney General Paxton, the official who was actively enforcing GA-38, to get the relief they required. Also, contrary to what the majority says, plaintiffs do not rely on "speculation" that school districts will impose mask mandates if Paxton is enjoined. Instead, plaintiffs submitted uncontroverted evidence establishing that at least one ISD would immediately reinstate its mask mandate if Paxton is enjoined. In particular, plaintiffs rely on the affidavit by Williams, who attested that "if [Paxton] stopped enforcing GA-38, or there is an order barring enforcement of GA-38, the FBISD mask requirement would immediately go back into effect."

The unchallenged evidence also reflected that all the districts had mask mandates in place when GA-38 issued. The defendant produced no evidence that any of the school districts ever had opposition to the mask mandates in place. It was only after GA-38 issued and Paxton's enforcement activity began that school districts began yielding to those threats and began lifting their mandates. If this Court affirms the district court's injunction and holds that Section 504 and Title II required that school districts be allowed to exercise their discretion as to each individual plaintiff and provide an appropriate modification, it is completely predictable that the school districts would comply with the law by imposing some type of mask mandate. GA-38 does not permit the school districts to do this. As the Supreme Court explained in *Department of Commerce v. New York*, plaintiffs can properly rely on the "predictable effect of government action on the decisions of third parties" as an element of their standing.[17]

Based on this evidence, if this Court upholds the injunction against Paxton (which was stayed after three weeks by a motions panel of this

---

[17] 139 S. Ct. at 2566; *see Franklin v. Massachusetts*, 505 U.S. 788, 790–91 (1992) (finding redressability prong satisfied where actors who were not parties to the lawsuit could be expected to amend their conduct in response to a court's declaration).

No. 21-51083

Court[18]), FBISD and the other school districts would likely reimpose their mask mandates as necessary to grant a modification so that plaintiffs could safely attend school with their classmates. As a result, plaintiffs would no longer face the Hobson's choice of either taking inadequate virtual classes, or attending school without a mask mandate despite the medical advice of their doctors.

The district court recognized that ISDs could refuse to impose mask mandates if such mandates "fundamentally alter[ed]" the nature of school programs.[19] But, as the district court correctly noted, Paxton "failed to present any evidence that would support a claim that mask requirements fundamentally alter the educational programs of local school districts."[20] Paxton had an opportunity to challenge the reasonableness of mask mandates—or show the availability of other measures—but he utterly failed to do so. In fact, during the proceedings below, Paxton submitted a single piece of evidence: a mass of raw data showing COVID-19 infection numbers in Texas public schools. He did not even provide an expert opinion to assist the district court or this Court in interpreting the data. Paxton's decision not to produce evidence should be fatal to his arguments. Thus, on the facts before this Court, federal law obligates ISDs to impose the mask mandates that GA-38 forbids. It is therefore certain, not speculative, that an injunction against Paxton would remedy plaintiffs' harm.

---

[18] *See E.T. v. Paxton*, 19 F.4th 760, 763 (5th Cir. 2021).

[19] Under the ADA's implementing regulations, a public entity need not provide a modification, even if it is "reasonable," when it "fundamentally alters" the nature of the service, program, or activity. 28 C.F.R. § 35.130(b)(7)(i).

[20] *E.T. v. Morath, No.* 1:21-CV-717, 2021 WL 5236553, at *13 (W.D. Tex. Nov. 10, 2021).

No. 21-51083

In sum, the disability discrimination plaintiffs suffered is a sufficient injury. Paxton's enforcement activity was the *de facto* cause of this discrimination, and an injunction would remedy the injury. For these reasons, I am satisfied that plaintiffs established each element of standing.[21]

### III.

As to the merits, I would affirm the district court's injunction to the extent it bars Paxton's enforcement of GA-38 against plaintiffs' ISDs and prevents the ISDs from granting even a limited mandate that would allow plaintiffs to attend school.

As the district court recognized, Title II and Section 504 and their implementing regulations place an "affirmative obligation" on public entities to make reasonable modifications in their policies and practices when necessary to avoid discrimination because of disability.[22] Texas school districts are subject to Title II and Section 504 as public entities that receive

---

[21] In a Rule 28(j) letter to this Court, defendants cite *Arc of Iowa v. Reynolds*, 33 F.4th 1042, 1044 (8th Cir. 2022), in which the Eighth Circuit found that a similar case was moot because of the lessened severity of the COVID-19 pandemic. However, as plaintiffs argue in a different Rule 28(j) letter, the Center for Disease Control ("CDC") continues to recommend that people around vulnerable individuals, like plaintiffs, wear masks. Based on the ongoing nature of the pandemic, and that the CDC continues to recommend masking around vulnerable individuals, this case is not moot.

[22] *See Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 445-55 (5th Cir. 2005), *cert. denied*, 547 U.S. 1098 (2006); *see also Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 281 (3d Cir. 2012) (requiring students to wash their hands before and after meals to protect on student in their classroom with severe food allergies); *Alboniga v. School Bd. of Broward Cnty.*, 87 F. Supp. 3d 1319, 1323, 1344-45 (S.D. Fla. 2015) (allowing a service animal to accompany a student with a seizure disorder); *K.N. v. Gloucester City Bd. of Educ.*, 379 F. Supp. 3d 334, 352 (D.N.J. 2019) (providing a one-to-one aide supported by a special education teacher to assist a student with autism).

No. 21-51083

federal funding.[23] GA-38 bars a school district from imposing even a limited mask requirement and must fall.[24]

Plaintiffs established and the district court found from unchallenged evidence that voluntary masking does not adequately protect plaintiffs. There is no basis from this record that vaccination, social distancing, and/or plexiglass can adequately substitute for masking to protect plaintiffs. Uncontradicted evidence supports the district court's finding that masks are necessary.

However, I agree with Paxton that the district court's injunction is overbroad. An injunction "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs."[25] Plaintiffs' injuries would be remedied by a narrow injunction that prohibits Paxton from enforcing GA-38 against the seven ISDs in which plaintiffs attend schools to the extent that GA-38 bars the school districts from granting an accommodation under Section 504 and Title II by requiring some form of mask mandate. The injunction should be limited accordingly.

For the foregoing reasons, I would affirm the district court's decision to enjoin Paxton's enforcement of GA-38. However, because the injunction is overbroad, I would vacate the injunction and remand so that the district court can modify the injunction to bar Paxton from enforcing GA-38 against the seven ISDs plaintiffs attend but limit it to the extent that it precludes school districts the authority to grant a limited mask mandate to allow the

[23] 42 U.S.C. § 12131(1)(B); 29 U.S.C. § 794(b)(2)(B).

[24] *See Mary Jo C. v. New York State & Loc. Ret. Sys.*, 707 F.3d 144, 163 (2d Cir 2013); *see also North Carolina State Bd. Of Educ. v. Swann*, 402 U.S. 43, 45 (1971).

[25] *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994).

No. 21-51083

plaintiffs to attend school safely. Therefore, for these reasons, I respectfully dissent.

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 25, 2022

Lyle W. Cayce
Clerk

_____

No. 21-51083

_____

E.T., *by and through her parents and next friends*; J.R., *by and through her parents and next friends*; S.P., *by and through her parents and next friends*; M.P., *by and through her parents and next friends*; E.S., *by and through her parents and next friends*; H.M., *by and through her parents and next friends*; A.M., *by and through her parents and next friends*,

*Plaintiffs—Appellees*,

*versus*

Kenneth Paxton, *in his official capacity as Attorney General of Texas*,

*Defendant—Appellant.*

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-CV-717

_____

Before Davis, Willett, and Oldham, *Circuit Judges*.

# JUDGMENT

This cause was considered on the record on appeal and was argued by counsel.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is VACATED, and the cause is REMANDED to the

No. 21-51083

District Court for further proceedings in accordance with the opinion of this Court.

IT IS FURTHER ORDERED that Appellees pay to Appellant the costs on appeal to be taxed by the Clerk of this Court.